Douglas J. Serdahely (Alaska Bar No. 7210072)
**PATTON BOGGS LLP**
601 West 5th Avenue, Suite 700
Anchorage, AK  99501
(907) 263-6310; (907) 263-6345 (fax)
dserdahely@pattonboggs.com

*Attorneys for Plaintiffs The American Dental
Association and Dr. T. Howard Jones*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA DENTAL SOCIETY, THE AMERICAN DENTAL ASSOCIATION, DR. T. HOWARD JONES, DR. MICHALE BOOTHE, DR. PETE HIGGINS and DR. GEORGE SHAFFER, <br><br> Plaintiffs, <br><br> vs. <br><br> THE ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and DOES 1 through 8, <br><br> Defendants. | Case No. 3:06-cv-00039 (TMB) <br><br> **PLAINTIFFS THE AMERICAN DENTAL ASSOCIATION'S AND DR. JONES' OPPOSITION TO MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs The American Dental Association and Dr. T. Howard Jones (collectively "ADA"), through counsel, Patton Boggs LLP, hereby submit their Opposition to Defendants' Motion to Dismiss (Standing) (hereafter "Motion").  As demonstrated below, the ADA has individual and/or associational standing to bring this suit on its behalf and on behalf of plaintiff Jones and other members of the American Dental Association.  In addition, the ADA has a private cause of action to enforce the provisions of the Alaska dental licensing statutes.

48504v3

## **PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff the American Dental Association ("ADA") is a non-profit organization that has been in existence since 1859. The ADA is a professional association of dentists, whose primary object is to "encourage the improvement of the health of the public and to promote the art and science of dentistry." ADA Constitution, Article II; Affidavit of Dr. T. Howard Jones ("Jones") submitted herewith. The ADA has more than 166,000 members (approximately 75% of the nation's licensed dentists), 53 constituent members (state-territorial), and 545 component (local) dental societies. It is the largest and oldest national dental association in the world. Id.

The ADA Commission on Dental Accreditation is recognized by the U.S. Department of Education as the national accrediting body for dental, advanced dental and allied dental education programs in the United States.[1] Plaintiff Jones is a licensed dentist, a current ADA member, and a former president and officer of the ADA, and he is currently Chair of the ADA Dental Workforce Taskforce, which Taskforce has recommended a new mid-level provider. As such, he has a direct stake in upholding the mission and purposes of the ADA in general and as they pertain to this action in particular.

Preserving the public's confidence in the training, skills and education of dentists and the integrity of the profession is of paramount interest to the ADA. In addition to the Commission, the ADA provides to the public and its members, information and activities involving the following:[2]

Access Prevention and Interprofessional relations: The Council on Access, Prevention and Interprofessional Relations ("CAPIR") is a primary ADA agency dedicated to broadening

---

[1] See http://ada.org/ada/about/history/ada_background.asp

[2] See ADA Constitution and Bylaws at 57-64, Exhibit A hereto.

the scope of oral health care within the health care system, promoting preventive dentistry as a cornerstone of oral healthcare and advancing the delivery of oral healthcare to the public. CAPIR recommends policy, develops resources and formulates programs in the areas of: access to oral health services; community health activities; community water fluoridation and other preventive health activities; and health care facilities and interprofessional affairs.

Dental Education and Licensure:  The Council on Dental Education and Licensure is the ADA agency dedicated to promoting high quality and effective processes of dental education, dental licensure and credentialing in the United States.

Scientific Affairs:  The ADA's Council on Scientific Affairs serves the public and the profession as the primary resource on the science of dentistry. The CSA provides recommendations to the ADA's policy-making bodies on scientific issues. The Council also promotes and conducts studies on scientific matters.

Dental Practice:  The mission of the Council on Dental Practice is to recommend policies and provide resources to empower our members to continue development of the dental practice, and to enhance their personal and professional lives for the betterment of the dental team and the patients they serve.

Joint Commission on Dental Examinations:  The Commission provides and conducts written examinations for the purpose of assisting state boards in determining qualifications of dentists who seek licensure to practice in any state, district or dependency of the United States, which recognizes the National Board Examinations.

The facts in this case are largely undisputed.[3] The State of Alaska prohibits "the practice, or attempt to practice, dentistry without a license and a current certificate of registration." AS 08.36.100. To obtain such a license, an applicant must provide certification to the board that the applicant, among other qualifications:

> (A) Is a graduate of a dental school that at the time of graduation is accredited by the <u>Commission on Accreditation of the American Dental Association</u>; and
>
> (B) holds a certificate from the <u>American Dental Association Joint Commission on National Dental Examinations</u> that the applicant has successfully passed the written examinations given by the commission.

AS 08.36.110 (emphasis added).

Defendant Alaska Native Tribal Health Consortium ("ANTHC") is a non-profit corporation comprised of several Alaska Native organizations formed to provide health services to Alaska Natives through use of federal grants and monies. ANTHC developed and implemented a Dental Health Aide Program whereby it permits and directs Dental Health Aide Therapists ("DHATs") to engage in the practice of dentistry without a State of Alaska license, without the direct supervision of a licensed dentist, and in direct violation of Alaska law. Further, the scope of practice of DHATs goes beyond the bounds allowed under the federal

---

[3] On a Motion to Dismiss for lack of standing, the court reviews the sufficiency of the pleadings, and "must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff." <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d. 478, 483 (3d Cir. 1998).

Community Health Aide Program Certification Board's dental health initiative, which certifies community health aides including DHATs.[4]

At the present time, ANTHC has hired at least four DHATs who "practice" in Bethel and Kotzebue. Defendants admit that the DHATs have performed procedures that constitute the "practice of dentistry" under Alaska law, specifically the extraction of teeth, pulpotomies, restorations and therapeutic treatments. See AS 08.36.360. Defendants, however, contend that they are not required to comply with the State of Alaska licensing requirements notwithstanding the Alaska State Dental Board's determination that DHATs and the services they provide constitute the unlawful practice of dentistry.

Defendants have moved to dismiss Plaintiffs' complaint on the basis that they have failed to establish the requisite constitutional or prudential standing requirements. As demonstrated below, however, the ADA has met the requirements for both individual and associational standing, and in addition, has a private cause of action under State law to enforce the provisions of the Alaska dental licensing statutes.

## DISCUSSION

"Standing," as an outgrowth of the "case or controversy" requirement of Article III of the constitution, is the determination of whether a specific person is the proper party to bring a particular matter to the Court for adjudication. See Erwin Chemerinsky, *Federal Jurisdiction*, § 2.3.1 (1989). In order to invoke the jurisdiction of a federal court, a plaintiff must have a personal stake in the outcome of an otherwise justiciable controversy. Warth v. Selden, 422 U.S. 490. 498-99 (1976). Under Article III, a plaintiff must establish that 1) it has suffered an actual

---

[4] Community Health Aide Program Certification Board, Standards and Procedures (November 26, 2002 and January 31, 2005).

or threatened injury, and 2) that the injury is causally related to the alleged conduct of the defendant, and 3) that the injury is redressable by judicial action. <u>Valley Forge Christian College v. Americans United for Separation of Church and State</u>, 454 U.S. 464, 472 (1982). Though the elements of the test are well-settled, their application is not. Indeed, courts have recognized that the whole of a standing analysis "is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." <u>Wyoming v. Lujan</u>, 969 F.2d 877, 882 (10th Cir. 1992).

    1.    **<u>Individual Standing</u>.**

    A.    **<u>Plaintiff ADA Has Suffered A Direct Injury</u>.**

Defendants contend that Plaintiffs have failed to allege an injury in fact sufficient to confer standing under the first requirement for Article III standing. The Supreme Court has defined the injury in fact requirement as: "an invasion of legally protected interest which is a) concrete and particularized, and b) imminent, not conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). On a motion to dismiss, a court should "presume that general allegations embrace those specific facts that are necessary to support a claim." <u>Id</u>. at 561.

The types of injuries sufficient to confer Article III standing are not limited to only those economic or physical injuries. <u>Association of Data Processing Service v. Camp</u>, 397 U.S. 150 (1970). In some instances, harm to the "aesthetic and environmental well being" has constituted a sufficient "injury," if the party seeking review is among the injured. <u>United States v. Students Challenging Regulatory Agency Procedures (SCRAP)</u>, 412 U.S. 669, 685 (1973). Harm to an organization's ability to attract members, raise revenues, or fulfill its purposes may also constitute a sufficient injury. <u>See</u> Chemerinsky, *supra*, at § 2.3.7, *citing* Havens Realty Corp, *infra*. Finally, a drain on an organization's resources in order to counteract illegal behavior has

also been sufficient injury under the Article III requirements of "injury in fact." Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). As the Court stated in Havens:

> If, as broadly alleged, petitioners' [racial] steering practices have perceptibly impaired HOME's [an advocate organization for equal housing opportunities] ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests . . . we therefore conclude, as did the Court of Appeals, that in view of HOMES's allegations of injury it was improper for the District Court to dismiss for lack of standing the claims of the organization in its own right.

Id.

The ADA is an association of over 160,000 members that has been in existence for nearly 150 years. One of the ADA's primary goals is to vindicate the rights of both the public and those in its profession. See Affidavit of Jones. For example, part of the ADA's Mission Statement is "leading a unified profession through initiatives in advocacy, education, research and the development of standards." Id. In furtherance of its mission and its strong commitment to professional standards, the ADA Commission on Dental Accreditation is recognized by the U.S. Department of Education as the national accrediting body for dental, advanced dental and allied dental education programs in the United States. Id.

The ADA has already suffered tangible injury as a result of the DHATs' unlicensed practice of dentistry under the supervision of the ANTHC. Over two years ago, the ADA first became aware that Defendants were violating the state Dental Practices Act by allowing minimally trained DHATs who, under the Community Health Aide Program Certification Board Standards and Procedures, need only possess sixth grade math and reading skills and attend an 18 month vocational course in New Zealand. Recognizing the dire consequences of failing to act to protect the Alaskan public, the ADA has since devoted significant resources, both time and

monetary, to communicate with various Alaskan officials including the Attorney General in an attempt to warn and educate state officials as to the illegal and dangerous practices that are taking place with respect to Alaskan Natives. See Affidavit of Jones.

The ADA has since committed even more of its resources to bringing this legal action in order to halt the unauthorized practice of dentistry, as set forth more directly in the Complaint. This diversion of ADA resources from other causes or issues that advance the ADA's mission and primary object (the improvement of the health of the public) constitutes a sufficient "injury in fact" in and of itself, under Article III. Havens Realty, *supra* at 379.

In addition to the diversion of resources, the ADA can also demonstrate injury in fact as a result of the damage it will suffer in its decreased ability to attract members, the commensurate decrease in its ability to raise revenues, and the resulting inability to fulfill its mission and purposes.[5] See Chemerinsky, Havens Realty, *supra*. Currently, all ADA members, including Plaintiff dentists herein, recognize the importance of ADA membership in upholding high standards of professionalism and patient safety through education, accreditation, testing and discipline actions. If the ADA's accreditation function is effectively undercut, untrained and unlicensed practitioners who are "practicing" dentistry,[6] will result in the perception that the ADA is no longer capable of fulfilling an important facet of its mission. No doubt many dentists will then be less inclined to view ADA membership as an important commitment of resources, monetary and otherwise. Fewer members equates to decreased revenue which will have a direct

---

[5] Under the first prong of the Article III test, showing an imminence of injury, though not its precise extent, will suffice. Lujan v. Defenders of Wildlife, 504 U.S. 555, 564-65 (1992).

[6] Other than the DHATs presently "practicing" in Alaska under ANTHC, there are no other known state or federal programs that authorize the performance of dental procedures by untrained and unlicensed practitioners.

and real impact on the ADA's ability to carry out its mission and purposes—the protection and improvement of public health.

### B. Plaintiffs' Injuries Are Caused By The Defendant's Conduct.

Defendants contend that Plaintiffs cannot satisfy the causation requirement for standing because the conduct complained of is attributable principally to the U.S. Department of Health and Human Services' CHAP Board rather than Defendants. As set forth in the Complaint, however, it is Defendant ANTHC that has developed and implemented the Dental Health Aide Program which presently employs the DHATs, and more specifically, Defendants DOES 1- through 8. ANTHC and the Dental Health Aid Program hire, direct, and supervise DHATs and therefore presumably hired, directed and supervised DOES 1 through 8. Therefore, ANTHC has a direct involvement in the hiring, training and supervising of DOES 1 through 8, in addition to other DHATs. Consequently, the ANTHC and DOES 1 through 8 are the direct cause of ADA's present diversion of resources along with the consequent negative impacts on its membership.

### C. Plaintiffs' Injuries Will Be Redressed By The Requested Relief.

Defendants contend that a declaration or an injunction enjoining ANTHC or DOES 1 through 8 from the unlicensed practice of dentistry will not redress Plaintiffs' injuries. To the contrary, enjoining ANTHC from permitting unlicensed practitioners to practice dentistry, and enjoining DOES 1 through 8 will immediately cease the dangerous practices the ADA and dentists seek to enjoin as described in the Complaint. Though the CHAP board "could" obtain alternate staffing and somehow continue with the current illegal practices, there is no evidence or suggestion that that would occur, especially in the face of a federal court order declaring such practices violative of State law.

### 2.     The ADA Also has Associational Standing.

Under certain circumstances, an organization whose own legal rights and interests may not have been injured may seek redress on behalf of its members.  E.g., Public Interest Research Group of New Jersey, Inc. et al. v. Powell Duffryn Terminals, Inc. 913 F.3d 64, 70 (3d Cir. 1990), *cert. den*. 498 U.S. 1109 (1991).  Such representational standing is appropriate where 1) the organization's members would have standing to sue on their own, 2) the interest the organization seeks to protect are germane to its purpose, and 3) neither the claim asserted nor the relief requested requires individual participation.  Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333 (1977); *see also*, Oregon Advocacy Center v. Mink, 322 F.3d. 1101 (9th Cir. 2003); *see also;*  National Motor Freight Assn. V. United States, 372 U.S. 246 (1963).  Associational standing is in part granted because the Supreme Court has recognized that one of the reasons people join an organization is to create an effective vehicle for vindicating interests that they share with others.  Int'l. Union, United Auto, Aerospace & Agric. Implement Workers v. Brock, 477 U.S. 274, 290 (1986).

Under the first prong, an association may have standing to sue on behalf of its members when there is a specific injury to a member in the absence of injury to the association itself.  Hunt, *supra*, 432 U.S. at 343.  The association must allege that its member(s) is suffering immediate or threatened injury as a result of the challenged actions of the sort that would make out a justiciable case had the members themselves brought suit.  Id.

Plaintiffs Jones, Boothe, Higgins and Shaffer are all licensed dentists and longstanding ADA members.[7] As discussed above, these Plaintiffs have invested considerable time and money over the years in the form of membership dues to the ADA. By payment of ADA dues, and active participation in the governance of the ADA—indeed Plaintiff Jones is a former president and officer of the ADA—these Plaintiffs have a vested interest in the ADA's fulfillment of its purposes and missions. Plaintiffs have expected and have received the benefits of the ADA's work over the years. These include the ADA's work in furthering its goals and missions to encourage the "improvement" of the health of the public and to uphold the highest level of professional standards through its national accreditation and educational functions. With the advent of unlicensed dental practitioners such as Defendants, the dentist Plaintiffs already have and will continue to suffer injuries in a "decline" in the public's dental health, a decline in the level of professional standards, and more importantly, a decline in the public's confidence that the ADA will adequately fulfill its mission to ensure only the highest standards of dental care. The Plaintiffs' loss of their investment in the ADA, its mission and goals, over the years is a sufficient injury under the first prong of Hunt.

Under the second prong of Hunt, the interests Plaintiffs are seeking to protect in this suit are clearly germane to the purpose of the ADA. As stated above, the primary object of the ADA is to "encourage the improvement of the health of the public and to promote the art and science of dentistry." The ADA's stated mission is to be the "professional association of dentists committed to the public's oral health, ethics, science and professional advancement; leading a

---

[7] In addition, all members of the Alaska Dental Society are also members of the ADA. Thus, ADA members in Alaska will be and are being affected by the actions of the DHATs because ADA members will be forced to correct (to the extent possible) inadequate treatment performed by the DHATs.

unified profession through initiatives in advocacy, education, research and the development of standards." Upholding the profession through education, accreditation, licensing and discipline is not only "germane" to the ADA's purpose, but is an integral purpose of its existence. Consequently, Plaintiffs have established the second prong of Hunt.

The third prong requires that neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. Hunt, supra, 432 U.S. at 343. It is well recognized that, where members seek declaratory and prospective relief rather than money damages, the individual members do not need to participate directly in the litigation. *See, e.g.*, The Alaska Fish and Wildlife Federation and Outdoor Council, Inc. v. Dunkle, 829 F. 2d. 933, 938 (9th Cir. 1986); Associated Gen'l Contractors of California, Inc. v. Coalition for Economic Equity, et. al., 950 F.2d 1401, 1408 (9th Cir. 1991). The Plaintiffs herein seek only declaratory and injunctive relief. Thus, Plaintiffs have established the third prong of Hunt.

Because the ADA has established that its members would have standing to sue on their own, the interest the organization seeks to protect are germane to its purpose, and neither the claim asserted nor the relief requested requires individual participation, the ADA has associational standing to sue on behalf of its members.[8]

---

[8] Plaintiffs believes that the Complaint, when construed under the liberal construction standards applied to Motions to Dismiss, encompasses the allegations of injury set forth herein Lujan v. Defenders of Wildlife, supra at 561 ("at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") If, however, this Court does not so find, Plaintiffs request leave to amend the complaint to assert with more particularity the allegations of these kinds of injuries. See Civil Rule 15 (leave to amend shall be freely given, particularly in the early stages of a proceeding).

### 3. ADA Has An Implied Right Of Private Enforcement Under State Law.

Alaska Statute 08.36.100 (requiring a license and current certificate of registration to practice, or attempt to practice, dentistry) does not expressly provide that a dentist or any other aggrieved party may bring a private action to enforce its provisions. There is, however, a provision within the Dental licensing statutes, AS 08.36. *et. seq.*, which requires the Board of Dental Examiners to "hold hearings and order the disciplinary sanction of a person who violates this chapter, AS 08.32, or a regulation of the board." AS 08.36.070(a)(4).[9] Despite the April 2005 Alaska State Dental Board determination that DHATs and the services they provide constitute the unlawful practice of dentistry, neither the Board nor any other State authority, has taken further action to enforce its licensing requirements and regulations. Absent any enforcement of the State's licensing requirements, the ADA may be allowed an implied private cause of action to seek the law's enforcement.

In Peter v. Schumacher Enterprises, Inc., 22 P.2d 481 (Alaska 2001), a young boy was struck by a car on the way to school and suffered brain damage as a result. The driver had insurance, but the amount was inadequate to cover the boy's damages. The boy's parents, Donita and Samuel Peter ("Peter"), had uninsured/underinsured motorist coverage, but it also was insufficient in amount. Peter alleged that the insurance company and his insurance agent violated AS 21.89.020(c)[10] by failing to offer the Peters optional higher limits of coverage, and

---

[9] If the Board conducts a hearing, the board may also impose a fine not to exceed $25,000 for each violation of the chapter.

[10] AS 21.89.020(c) requires insurance companies to offer in automobile liability policies UM/UIM coverage with minimum limits of $50,000 per person and $100,000 per accident. AS 21.89.020(c)(2) requires that optional higher limits be offered up to $1,000,000/$2,000,000.

violated AS 21.89.020(e)[11] by failing to obtain a waiver in writing of optional higher limit coverage. Id. at 484. The superior court ruled that the Peters had no private cause of action under AS 21.89.020 (c) & (e), and the Peters appealed.

Like the Dentistry statutes, AS 21.89.020 does not expressly provide that an insured or other person could bring a private action to enforce its provisions. Title 21 (insurance code) does contain a general enforcement provision which provides that for any violation of Title 21 a civil penalty of not more than $2,500 may be imposed by the state after an administrative hearing. Id. at 488; AS 21.90.020. In determining whether a party has an implied cause of action to enforce a statute, the Alaska Court looked to the following factors:

> The nature of the legislative provision—is it clear and specific or broad and general? 2) The adequacy of existing remedies—are they sufficient to accomplish the policy of the provision or do they require supplementation? 3) Will allowing an implied tort action based on the statutory provision interfere with statutory remedies or supplement existing means of enforcement? 4) The significance of the purpose of the legislative provision. 5) The extent of the change in tort law that permitting an implied cause of action would bring about. 6) The burden the new implied tort cause of action will place on judicial machinery.

Id. at 489, citing Restatement (Second) Torts, § 874A.

In analyzing these factors, the Peter court found with respect to the first factor that AS 21.89.020 was both clear and specific. With respect to the second factor, the court found that the $2,500 penalty was relatively modest and noted that the enforcement resources of the Division of Insurance were necessarily limited. Without a tort remedy (the third factor), the court found it likely that many violations of the statute would go unredressed. Id. Concerning the fourth (significance factor), the court observed that the legislature had a high level of concern over the rising toll of motor vehicle accidents and the suffering and loss cause by the financial loss

---

[11] AS 21.89.020(e) provides that "the coverage required under (c) . . . may be waived in writing by the insured in whole or in part."

inflicted upon injured motorists.  Id.  With respect to the extent of the change in tort law, permitting a private action based on this statute would not make a drastic change, nor would the burden on the courts be a factor as the statutory requirements were specific and not difficult to apply.  Id. at 489-90.

Similarly, the Alaska Supreme Court would likely find that Plaintiffs have a private cause of action to enforce the provisions of the State dental licensing statute, AS 08.36.100.  The provisions of AS 08.36.100 are clear and specific:  a person may not practice or attempt to practice dentistry without a license and current certificate of registration.  The existing remedies are clearly not adequate as the Alaska State Dental Board has declared that DHATs are engaging in the unlawful practice of dentistry, have actual knowledge that DHATs are continuing to engage in the unlawful practice of dentistry but have taken no action whatsoever to enforce the statutory licensing requirements.  Without an implied tort remedy here, the violations will likely continue to be unredressed.  There can be no question that the State has a vital and significant interest in protecting its citizens from substandard dental practitioners and dental care.  Finally, it is unlikely that permitting a private action will bring an extensive change in tort law because there will not likely be a large number of persons attempting to practice dentistry without a valid license, and the burden on the judicial machinery will thus not be great.

As in Peter v. Schumacher, all factors used to decide whether a private remedy is implied by a statute favor implication.  Plaintiffs would, under state law, have a private cause of action against Defendants for violation of AS 08.36.0100, and should be entitled to pursue such a cause of action.  If, however, this Court has any doubt as to whether such a cause of action exists, it

should certify the question to the Alaska Supreme Court for such determination, this being an important question of state law and one of first impression.[12]

## CONCLUSION

Plaintiff ADA will suffer a direct injury in that it has a highly distinct and long-standing interest in the accreditation, testing and discipline of dentists in order to regulate the profession, uphold minimum standards and protect public health.  To this end, the ADA has devoted significant resources to its efforts to ensure that these high professional standards are not further compromised by the substandard care being rendered by the DHATs, who have only minimum training, and no license or certification whatsoever.  The practice of dentistry by those with little to no specialized education and training will no doubt result in increased problems and thus an overall decrease in public safety and public confidence in the dentistry profession.  This will in turn impede the ADA's ability to attract members, to raise revenues, and to fulfill its mission and purposes.  Finally, the ADA has a private cause of action under state law to enforce the provisions of the Alaska dental licensing statutes.

For the foregoing reasons, Plaintiffs ADA and Jones respectfully request that Defendants' Motion to Dismiss be denied in its entirety.

DATED at Anchorage, Alaska this 28th day of April, 2006.

                                                  s/Douglas J. Serdahely
Douglas J. Serdahely
PATTON BOGGS LLP
601 West Fifth Avenue, Suite 700
Anchorage, Alaska  99501
Phone: (907) 263-6310
Fax:  (907) 263-6345
Email:  dserdahely@pattonboggs.com
Alaska Bar No. 7210072

---

[12] See Rules of Appellate Procedure 407.

48504v3
PLAINTIFFS THE AMERICAN DENTAL ASSOCIATION'S AND
DR. JONES' OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:06-cv-00039 (TMB)
PAGE 16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2006, a copy of the Plaintiffs The American Dental Association's And Dr. Jones' Opposition To Motion To Dismiss was served electronically on:

| | |
|---|---|
| **Thomas V. Van Flein** | **Aaron M. Schutt** |
| Usdc-anch-ntc@cplawak.com | aaron@sonosky.net |
| | |
| **Myra M. Munson** | **Richard D. Monkman** |
| myra@sonoskyjuneau.com | dick@sonoskyjuneau.com |

By:     s/Nina E. Bingham
          Nina E. Bingham, Legal Secretary
          PATTON BOGGS LLP