SONOSKY, CHAMBERS, SACHSE
  MILLER & MUNSON LLP
Myra M. Munson
Richard D. Monkman
dick@sonoskyjuneau.com
318 Fourth Street
Juneau, Alaska 99801
Tel:  907-586-5880
Fax:  907-586-5883
Counsel for Defendant
Alaska Native Tribal Health Consortium

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| THE ALASKA DENTAL SOCIETY, THE AMERICAN DENTAL ASSOCIATION, DR. T. HOWARD JONES, DR. MICHALE BOOTHE, DR. PETE HIGGINS and DR. GEORGE SHAFFER, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:06-CV-0039 (TMB) Filed Electronically |
| v. | ) ) | |
| THE ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and DOES 1 through 8, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND**

Plaintiffs seek to halt a critically important federal public health dental program for rural Alaska Natives.  This action, although "artfully pled," seeks to enjoin a federal agency and federal officers – the Indian Health Service's Community Health Aide Program Certification

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 1 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

Board ("CHAP Certification Board"), its members and its staff – from certifying dental health

aide therapists in accordance with its mandate under the Indian Health Care Improvement Act,

25 U.S.C. § 1616*l*.  Instead of suing the Government, however, plaintiffs sued the Alaska Native

Tribal Health Consortium ("ANTHC"), which provides administrative and training support to the

Community Health Aide Program, and eight unnamed individuals who provide dental services as

part of the Community Health Aide Program ("CHAP").  All the conduct about which plaintiffs

complain is authorized by federal law: the Indian Self Determination Education and Assistance

Act, 25 U.S.C. § 450 *et seq*., and the Indian Health Care Improvement Act, 25 U.S.C. § 1616*l*,

and involves federal programs that ANTHC carries out pursuant to the Alaska Tribal Health

Compact and ANTHC's Funding Agreement with the Secretary of Health and Human Services.

ANTHC removed this matter from the Superior Court for the Third Judicial District of Alaska

pursuant to, *inter alia*, 28 U.S.C. §§ 1441 (federal question removal) and 1442(a) (federal officer

or agency removal).  Dkt. 1, *Notice of Removal*.

## STANDARD FOR REMOVAL

     **1.  Federal Question Removal.**  This action may be removed under 28 U.S.C. §

1441(b), as it "aris[es] under the Constitution, treaties or laws of the United States . . . ."  28

U.S.C. § 1331.  As the Supreme Court observed just last term, federal law has "recognized for

nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims

that implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Engig &

Mfg.*, 125 S.Ct. 2363, 12366 (2005); *see, Hopkins v. Walker*, 244 U.S. 486 (1917).  The Court

noted that "[t]he ['arising under'] doctrine captures the commonsense notion that a federal court

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND     Page 2 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues . . . ." *Grable*, 125 S.Ct. at 2367.   In applying the "arising under" doctrine, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state jurisdictional responsibilities." *Id.* at 2368.

      **2.  Federal Officer Removal**.  This action may independently be removed under 28 U.S.C. § 1442(a) because the conduct complained of is part of ANTHC's administrative and technical support for the CHAP Certification Board, an agency of the Indian Health Service, pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450 -  et seq.  As to the conduct complained of, ANTHC acts under direction and control of the federal Board.  Dkt. 1, Ex. A, *Complaint*, ¶¶ 8, 10.  State court cases against "[t]he United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may be removed to the district courts.  28 U.S.C. § 1442(a) (emphasis added); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 342 F.Supp.2d 147, 154 (S.D.N.Y. 2004); *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975).   The Supreme Court instructs that the federal officer removal statute is "not narrow or limited" and "should not be frustrated by a narrow, grudging interpretation."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (citation omitted); *accord*, *Durham v. Lockheed Martin Corp.*, No. 04-15243, 2006 WL 1084340, at *4

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND      Page 3 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

(9th Cir. Apr. 26, 2006) ("We take from th[e] history [of section 1442] a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.")

Both grounds for removal – 28 U.S.C. § 1441(b) "arising under" federal question removal and 28 U.S.C. § 1442(a) "federal officer" removal – are discussed below, following ANTHC's *Statement of the Case*.

## STATEMENT OF THE CASE

Plaintiffs have an unfortunate misunderstanding of the facts. They apparently do not understand the Indian Health Service's Community Health Aide Program nor the role of the CHAP Certification Board, and do not understand the ANTHC's role in providing administrative, training and technical support for the CHAP Certification Board. An accurate understanding of the facts is necessary to evaluate plaintiffs' request for remand.

**1.0     ANTHC.** ANTHC may be a non-profit corporation, as plaintiffs assert, but more importantly it is the "tribal organization controlled by the tribes and tribal organizations in the State of Alaska," created pursuant to a specific direction for Alaska Native tribal groups to establish a statewide tribal entity to contract with the Indian Health Services by Congress to carry out the Indian Health Service's program under Title V of the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, as amended. § 325 of Pub. L. No. 105-83. ANTHC is a party to government-to-government agreements with the Secretary of the Department of Health and Human Services, of the United States to perform certain federal "programs, functions, services, or activities [of] the Department . . ." Ex. A, *Funding*

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 4 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

*Agreement between the Alaska Native Tribal Health Consortium and the Secretary of the Department of Health and Human Services of the United States of America, Fiscal Year 2004*, at 1, ("Funding Agreement").

Under the Alaska Tribal Health Compact and its Funding Agreement with the Secretary, ANTHC provides community health aide training, technical assistance and administrative support for the CHAP Certification Board as part of the Indian Health Service. Ex. C, Affidavit of Paul Sherry, ¶¶ 5, 8; Ex. A, ANTHC *FY 2004 Funding Agreement,* at 10 – 11, §§ 3.1.32, 3.1.3.6, 3.1.3.8 ("Community Health Services"). Contrary to plaintiffs' assertions, ANTHC does not employ any dental health aides or dental health aide therapists, and it never has. Ex. C, Affidavit of Paul Sherry, ¶ 8. ANTHC does not supervise dental health aides' or dental health aide therapists' practices. *Id*.

**2.0 CHAP Certification Board.** The CHAP Certification Board is a regulatory agency of the federal government within the Indian Health Service, created by Congress. 25 U.S.C. § 1616*l*. The Board promulgates certification standards, prescribes curriculum, sets training standards and otherwise regulates the practice of community health aides, including dental health aide therapists, but it does not employ them. 25 U.S.C. § 1616*l*; Ex. B, *Community Health Aide Program Certification Board Standards and Procedures* (2005 ed.) ("*Standards and Procedures*"); Ex. D, Affidavit of Dorothy Hight, ¶¶ 2 – 3.

**3.0 The Community Health Aide Program (CHAP).** The CHAP Certification Board is part of the Community Health Aide Program, which was developed in the 1950s and 1960s by the Indian Health Service, Alaska Area Native Health Service, in response

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 5 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

to the tuberculosis epidemic, high infant mortality rate, and high rate of injuries and early deaths in rural Alaska.  *Alaska Community Health Aide/Practitioner Manual* (rev. 1998 ed.), at 1 (David Schraer, M.D., Acting Director, Alaska Native Health Service).  The CHAP has placed federally-certified community health aides and practitioners in nearly two hundred Alaska villages.  They are the backbone of health care in rural Alaska, the first level health care providers for almost all village Alaskans.  The CHAP remains a federal program: "[t]he Indian Health Service … maintains overall responsibility for the Community Health Aide Program for Indian Health Service beneficiaries in Alaska."  *Id.*

The CHAP is authorized by the Act of November 2, 1921, 25 U.S.C. § 13, popularly known as the Snyder Act, and has been implemented through numerous circulars and directives of the United States Department of Health and Human Services, the Public Health Service, the Indian Health Service and the Alaska Area Native Health Service.  Most recently, the program was specifically established by Congress through the Indian Health Care Improvement Act, 25 U.S.C. § 1616*l*, (94-437, § 121, as amended):

> **(a) Maintenance of Program.**  Under the authority of section 13 of this title, the Secretary shall maintain a **Community Health Aide Program in Alaska** under which the Service —
>> **(1)** provides for the training of Alaska Natives as health aides or community health practitioners;
>> **(2)** uses such aides or practitioners in the provision of health care, health promotion, and disease prevention services to Alaska Natives living in villages in rural Alaska;  and
>> **(3)** provides for the establishment of teleconferencing capacity in health clinics located in or near such villages for use by community health aides or community health practitioners.
>
> **(b) Training; curriculum; certification board.**  The Secretary, acting through the Community Health Aide Program of the Service, shall—

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 6 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

(1) using trainers accredited by the Program, provide a high standard of training to community health aides and community health practitioners to ensure that such aides and practitioners provide quality health care, health promotion, and disease prevention services to the villages served by the Program;

(2) in order to provide such training, develop a curriculum that–

(A) combines education in the theory of health care with supervised practical experience in the provision of health care;

(B) provides instruction and practical experience in the provision of acute care, emergency care, health promotion, disease prevention, and the efficient and effective management of clinic pharmacies, supplies, equipment, and facilities; and

(C) promotes the achievement of the health status objectives specified in section 1602(b) of this title;

(3) establish and maintain a Community Health Aide Certification Board to certify as community health aides or community health practitioners individuals who have successfully completed the training described in paragraph (1) or can demonstrate equivalent experience;

(4) develop and maintain a system which identifies the needs of community health aides and community health practitioners for continuing education in the provision of health care, including the areas described in paragraph (2)(B), and develop programs that meet the needs for such continuing education;

(5) develop and maintain a system that provides close supervision of community health aides and community health practitioners; and

(6) develop a system under which the work of community health aides and community health practitioners is reviewed and evaluated to assure the provision of quality health care, health promotion, and disease prevention services.

**4.0   Dental Health Crisis in Rural Alaska.**  The CHAP Certification Board's certification of dental health aide therapists to perform certain dental health procedures is a critical element of the Indian Health Service-funded public health initiative to improve the dental health of Alaska Natives.  The initiative is aimed at combating the undisputed epidemic of dental disease in rural Alaska.  Changes of diet over the decades have led to a huge increase in dental

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 7 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

problems among Alaska Natives.[1]  Difficulties in providing regular and preventative dental care

in rural areas have exacerbated these problems.  Ex. E, Affidavit of Dr. Mark Kelso, D.D.S., ¶¶ 2

– 3.  As the State of Alaska's former Department of Health and Social Services Commissioner

Joel Gilbertson noted,

> [m]ore that 100,000 people live in rural Alaska.  For decades they
> have faced serious problems obtaining dental care.  Most rural
> villages see a visiting dentist once or twice a year. Children get
> priority for care, but even their needs are not fully met.  Adults
> rarely get to see a dentist except in emergencies.  The oral caries
> (decay) rate for Alaska Natives is 2 ½ times the national average.
> It has been increasingly difficult for Alaska's rural health centers to
> attract and retain full time dentists.  There are fewer graduates
> from U.S. dental schools, and more Alaska dentists are reaching
> retirement age.[2]

Community health aides have provided modest levels of preventative and

interventive dental care in Alaska's villages since the inception of the program – primarily

emergency care.  Ex. D, Affidavit of Dorothy Hight, ¶ 4.[3]   The community health aides and

---

[1]  Data from the 1999 Indian Health Service Oral Health Survey in dental clinics indicate the following for Alaska Native children using dental clinic services:

·       77% of 2-4 year olds have dental caries experience in their primary teeth.
·       95% of 6-8 year olds have dental caries experience in their primary or permanent teeth.
·       83% of 15 year olds have dental caries experience in their permanent teeth.
·       60% of 2-4 year olds have **untreated dental caries** in their primary teeth.
·       66% of 6-8 year olds have **untreated dental caries** in their primary or permanent teeth.
·       67% of 15 year olds have **untreated dental caries** in their permanent teeth.

*Healthy Alaskans 2010 - Volume 1*, 13-4 (emphasis added).

[2] Former DHSS Commissioner Joel Gilbertson and Diane Kaplan, *Give Dental Aide Plan a Chance to Work*, Anchorage Daily News, Feb. 24, 2005, B6.

[3] The *Community Health Aide Manual("CHAM")* contains roughly twenty pages of medical instruction relating to dental care and care for injuries and diseases affecting the mouth, including general

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 8 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

practitioners are, however, medical care providers and are not extensively trained in dental health matters.  Dental care in the villages is a matter of infrequent visits by public health dentists to fill teeth and perform extractions, with travel to the regional centers or Alaska Native Medical Center required for more complex treatment.  Ex. H, Affidavit of Dr. Edwin Allgair, D.D.S., ¶ 3.

    **5.0  Congressional Goals.**  Congress established specific dental health care goals for the Indian Health Service in the IHCIA, 25 U.S.C. § 1602(b)(20) – (26):

**(20)**   Reduce dental caries (cavities) so that the proportion of children with one or more caries (in permanent or primary teeth) is no more than 45 percent among children aged 6 through 8 and no more than 60 percent among adolescents aged 15.

**(21)**   Reduce untreated dental caries so that the proportion of children with untreated caries (in permanent or primary teeth) is no more than 20 percent among children aged 6 through 8 and no more than 40 percent among adolescents aged 15.

**(22)**   Reduce to no more than 20 percent the proportion of individuals aged 65 and older who have lost all of their natural teeth.

**(23)**   Increase to at least 45 percent the proportion of individuals aged 35 to 44 who have never lost a permanent tooth due to dental caries or periodontal disease.

**(24)**   Reduce destructive periodontal disease to a prevalence of no more than 15 percent among individuals aged 35 to 44.

**(25)**   Increase to at least 50 percent the proportion of children who have received protective sealants on the occlusal (chewing) surfaces of permanent molar teeth.

**(26)**   Reduce the prevalence of gingivitis among individuals aged 35 to 44 to no more than 50 percent. [4]

---

information, prevention and identification of dental disease, instructions for putting in temporary fillings, prevention and identification of periodontal disease, initial treatment of toothache, and instructions on when to consult a dentist. Ex. D, Affidavit of Dorothy Hight, ¶ 5; *CHAM* (1998 ed.), at 595 – 614.

[4] Pub. L. No. 102-573, Sec. 3(b), Oct. 29, 1992, 106 Stat. 4526.  The IHCIA provides: "The Congress hereby declares that it is the policy of this Nation, in fulfillment of its special responsibilities and legal obligation to the American Indian people, to assure the highest possible health status for Indians and urban Indians."  25 U.S.C. § 1602(a)

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                 Page 9 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

Achieving these Congressional goals in rural Alaska through the "State-licensed dentist" health care delivery model favored by plaintiffs is simply impossible. There is an acute dentist shortage in the Alaska public sector. Ex. F, Affidavit of Dr. Ron Nagel, D.D.S., ¶ 3; Ex. H, Affidavit of Dr. Edwin Allgair, D.D.S., ¶ 4; *cf.*, Jay W. Friedman, *Response to "Comments on the Proposed Pediatric Oral Health Therapist"* Journal of Public Health Dentistry, 66:1 (Winter 2006) at 74 – 75 (describes dentist shortages across United States); *accord*, U.S. Department of Health and Human Services. *Oral Health in America: A Report of the Surgeon General.* Rockville, Maryland: U.S. Department of Health and Human Services, National Institute of Dental and Craniofacial Research, National Institutes of Health (2000) at 235-41. There are only a handful of private dentists practicing in the regional centers of rural Alaska and none, to defendant ANTHC's knowledge, in the villages. Ex. F, Affidavit of Dr. Ron Nagel, D.D.S., ¶ 4; Ex. E, Affidavit of Dr. Mark W. Kelso, D.D.S, ¶ 12. More than half of Alaska's private dentists refuse to treat Medicaid patients, effectively denying dental care to the vast majority of rural Alaska Natives. Ex. F, Affidavit of Dr. Ron Nagel, D.D.S., ¶ 4. While a handful of private dentists have volunteered to work with the rural Tribal health dental clinics, a week or two at a time, their overall contribution to solving the dental health crisis is insignificant. *Id.*, ¶ 5. The time, expense and difficulty required to place volunteers in rural areas outweighs any benefit accruing from their efforts, however well-intentioned. Ex. H, Affidavit of Dr. Edwin Allgair, D.D.S., ¶ 5.

      **6. Adoption of the *Standards*.** In the late 1990's, ANTHC and the other Alaska Tribal health providers participating in the CHAP explored other alternatives for providing

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND      Page 10 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

dental health care in rural Alaska.  Among the models examined was the "dental therapist" model used successfully in northern Canada, New Zealand, Australia and 35 other countries around the globe.   Ex. F, Affidavit of Dr. Ron Nagel, D.D.S., ¶ 7; *see also*, Kiley, D., "*The Dental Health Aide Experience in Other Countries and Implications for Alaska*," Institute of Social and Economic Research and Institute for Circumpolar Health Studies, University of Alaska Anchorage (2005).

In 2002, the CHAP Certification Board – as noted, *supra*, an agency of the Indian Health Service – adopted amendments to its *Standards and Procedures* to incorporate certification of dental health aides and therapists.  This was an essential step to achieve the Congressional goals of 25 U.S.C. § 1602(b)(20) – (26) and the Congressional mandate to use community health aides to provide "health care, health promotion, and disease prevention services to Alaska Natives living in villages in rural Alaska." 25 U.S.C. § 1616*l*(a)(2).   The CHAP Certification Board found:

> (10) This Board and the Alaska Area Native Health Service, together with Alaska tribal health organizations, have agreed that improvements in dental health among Alaska Natives requires health providers dedicated to dental preventive and acute care and that specialized training under the community health aide program of community health aides, who will be called dental health aides and who will limit their practice to dental care, is required to improve dental health status in rural Alaska.

Ex. B, *Standards and Procedures*, § 1.40.010(10).  The CHAP Certification Board promulgated criteria for certification of four new classes of community health aides: dental health aides, expanded function dental assistants, dental health aide hygienists, and dental health aide

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 11 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

therapists.   Ex. F, Affidavit of Dr. Ron Nagel, D.D.S., ¶ 9; Ex. B, *Standards and Procedures*, Chapters 2 – 3.

The CHAP Certification Board's amendments to the *Standards and Procedures* were based on lengthy consultation with national and international dental health experts, the Indian Health Service, the State of Alaska, and practicing public and private dentists.   Ex. F, Affidavit of Dr. Ron Nagel, ¶ 8.   The result is detailed, thorough and comprehensive.   The *Standards and Procedures* provide federal certification of the four classes of dental health aides and therapists.   *Id.*; *see also*, Ex. B, *Standards and Procedures*, Chapter 2.   The scope of each individual's authorized practice varies depending on the level of that person's training and certification.   *Id.*   All prospective dental health aides and dental health aide therapists obtain training in the United States. *Id.*   Prospective dental heath aide therapists receive additional, intensive, multi-year training at Otago University in Dunedin, New Zealand.  *Id.*, chapter 7.[5]

As noted, *supra*, the CHAP Certification Board does not itself train dental health aides or dental health aide therapists nor does it employ them.  The CHAP Certification Board (1) approves training, curriculum and continuing education for community health aides, including dental health aides and dental health aide therapists; (2) examines the credentials of applicants for certification; (3) measures those credentials against the *Standards and Procedures*; (4) issues certificates to practice; (5) takes disciplinary actions when warranted, including revocation of certificates, and (6) updates the *Standards and Procedures* as appropriate.  *See generally*, Ex. B *and* Ex. G, Affidavit of Victorie Heart, ¶ 2.  The *Standards and Procedures*

---

[5]  University of Otago (visited Apr. 27, 2006)  http://www.otago.ac.nz/subjects/dthe.html

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                Page 12 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

provide an administrative hearing process before the CHAP Certification Board takes disciplinary action. Ex. B, Chapters 4, 8. The CHAP Certification Board's certificates are signed by the Indian Health Service's Alaska Area Native Health Service Director. Ex. G, Affidavit of Victorie Heart, at ¶ 3. The CHAP Certification Board authorizes dental health aide therapists to practice only while employed by the federal government or by a Tribal health organization providing health care to Alaska Natives and American Indians under an ISDEAA Compact with the federal government. Ex. B, § 2.10.010(a)(6) and (7). All CHAP Certification Board certified dental health aide therapists – including the "Does 1 to 8" named in the *Complaint* – must limit their practice to the scope for which they are certified and are under conditions of supervision by a dentist applicable to that scope. Dkt. 1, Ex. A, *Complaint*; *Id.*, § 2.10.010(a)(8) and (9).[6]

ANTHC's current Funding Agreement with the Secretary specifies that it will provide administrative support for the CHAP Certification Board and "Dental Health Aide training, supervision and services under the *Standards and Procedures*":

> **3.1.3.2     Dental Consultation**. Provides technical assistance, continuing education services, and training for [Alaska Native Medical Center] and other tribal dental programs Area-wide, including Dental Health Aide training, supervision and services under the *Standards and Procedures* approved by the CHAP Certification Board; develops dental health promotion programs; assists with dental professional recruitment; and participation [sic] in local, state and national meetings. . . .

---

[6] The dental health practices of the "Does 1 to 8," which plaintiffs seek to enjoin, are carried out wholly within the scope of the Community Health Aide Program and under the *Standards and Practices*, and thus are entirely under the direction of a federal agency, the Indian Health Service's CHAP Certification Board.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 13 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

**3.1.3.6     Community     Health     Aide/Practitioner Certification**.     Provides     support     for     the     operations     of     the Community     Health     Aide     Program     (CHAP)     Certification Board. . . .

**3.1.3.8     Community     Health     Aide/Practitioner Training     Center**.     [P]rovides     community     health aide/practitioner     training     and     ongoing     support     to     candidates from     throughout     the     State     consistent     with     the     *Community Health Aide Program Standards and Procedures* adopted by the CHAP Certification Board[.]

Ex. B. at 9 – 10.

The responsibility and duty to authorize and regulate the practice of dental health aide therapists lies with the Indian Health Service's CHAP Certification Board and the Alaska Area Native Health Service Director, not with ANTHC.  *Id*.  The CHAP Certification Board adopts the *Standards and Procedures*; ANTHC carries them out.

## ARGUMENT

Plaintiffs advance four arguments for remand: (A) lack of federal question jurisdiction, (B) primacy of State police power over "the practice of dentistry," (C) lack of federal agency or officer jurisdiction and (D) abstention.   These arguments are addressed *seriatim*.

### A.  Federal Question.

As noted above, p. 2, removal from state court is authorized by 28 U.S.C. § 1441(b) for cases presenting "federal questions," *i.e.*, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States. . . ."  ANTHC asserted in its *Notice of Removal* that federal

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 14 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

question removal was proper, *inter alia*, because "[]plaintiffs' claims are founded upon federal law and necessarily depend on resolution of substantial questions of federal law," "[p]laintiffs' claims, properly framed, are claims arising under the Constitution and laws of the United States," and "federal law completely controls the case." Dkt. 1, ¶¶ 1– 3.[7]

Plaintiffs argue that removal under 28 U.S.C. §§ 1331 and 1441(b) is only appropriate where "Congress [has] explicitly or implicitly confine[d] jurisdiction to the federal courts." Dkt. 14, at 7. This is simply not so. The Supreme Court ruled just last term that removal may be appropriate even where there is no express or implied federal cause of action. *Grable,* 125 S.Ct. 2363 (2005). Plaintiffs further concede that the federal and state "courts enjoy concurrent jurisdiction over all classes of cases and controversies enumerated in Article III … except those to which the United States is a party," and additionally concede that federal jurisdiction is appropriate where plaintiffs are "seeking [a] remedy based on federal law." Dkt. 14, at 7-8. A single claim over which federal question jurisdiction exists is sufficient to allow removal. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 125 S.Ct. 2611, 2623, (2005); 28 U.S.C. § 1367 ("Supplemental Jurisdiction"); 28 U.S.C. § 1441(c) (allows removal of entire case when "otherwise non-removable claims or causes of action" are joined with a federal question).

---

[7] ANTHC does not argue "complete preemption" for purposes of removal. *See*, Inf. Op. Att'y Gen. (Sept. 8, 2005; 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) ("State Licensure of Federal Dental Health Aides") (25 U.S.C. § 1616*l* "preempts state dental licensure laws as to dental health aides certified by the federal board under the Community Health Aide Program" only to the extent that "treatment performed by [dental health] aides or authorized by the federal board … fairly fall[s] within the scope of the congressional objectives"). Dkt. 1, Ex. B, at 15.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND              Page 15 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

**A.1** *Grable* **Test.** Plaintiffs admit, as they must, that Counts 3 and 4 of their *Complaint* pose federal questions, *i.e.*, "whether the dental services provided by the Defendant's [sic] dental health aide therapists … fall outside the scope of the Congressional objectives … allegedly authorized by federal law." Dkt. 14, at 5. Plaintiffs cite *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813, (1986) for the proposition that, nonetheless, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson,* Dkt. 14, at 6. This is an oft-repeated truism, but inaccurate. The proper question is "… does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable* 125 S.Ct. at 2368.

Plaintiffs' claims inescapably depend on the Court's interpretation of 25 U.S.C. §1616*l*. Plaintiffs do not discuss *Grable*, the leading and most recent Supreme Court decision on removal of cases which present "state-law claims that implicate significant federal issues." 125 S.Ct. at 2366 – 2367. *Grable* distinguished plaintiffs' principal case, *Merrell Dow,* and affirmed removal in circumstances similar to those presented here. *Grable* involved a state law quiet title action in which the plaintiff asserted an I.R.S. lien against property was invalid:

> Darue removed the case to Federal District Court as presenting a federal question, because the claim of title depended on the interpretation of the notice statute in the federal tax law. The District Court declined to remand the case at Grable's behest after finding that the "claim does pose a significant question of federal law," and ruling that Grable's lack of a federal right of action to enforce its claim against Darue did not bar the exercise of federal jurisdiction.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 16 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

125 S.Ct. at 2366 (citation omitted).  The Supreme Court granted certiorari to resolve a split among the Courts of Appeals on whether *Merrell Dow* "always requires a federal cause of action as a condition for exercising federal-question jurisdiction."  *Id.*

The Court in *Grable* held a federal cause of action was *not* required for removal, noting that the "arising under" doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.* at 2367 (citation omitted).  The Court explained that "[T]he question is, [1] does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, [2] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state jurisdictional responsibilities."  *Id.* at 2368.  Courts may disregard the state-law facade of a complaint, and bring the federal claims lying beneath to the surface, "'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Franchise Tax Bd. of State of Cal.  v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9 1983 (internal citations omitted).

**A.1.1 Grable [1]: Significant disputed federal issues.**  There can be no doubt that plaintiffs' claims necessarily raise significant, disputed federal issues.  Plaintiffs challenge the CHAP Certification Board's authority to certify dental health care providers to Alaska Natives and American Indians under the Snyder Act, 25 U.S.C. § 13 *et seq.* (authorizing programs "for the relief of distress and conservation of health" to benefit Indian people), as directed by the IHCIA, 25 U.S.C. § 1601 *et seq.* ("[f]ederal health services to maintain and

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 17 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

improve the health of the Indians are … required by the Federal Government's historical and unique legal relationship with, and resulting responsibility to, the American Indian people") and in accordance with ANTHC's Funding Agreement with the Secretary under ISDEAA, 25 U.S.C. § 450 *et seq.*, Pub. L. No. 93-638, as amended.

Congress has "plenary" authority in Indian matters. *United States v. Lara*, 541 U.S. 193, 200 (2004); *Morton v. Mancari*, 417 U.S. 535, 551-552 (1974) ("[t]he plenary power of Congress to deal with the special problems of Indians is drawn both explicitly and implicitly from the Constitution itself."). Congress has given the Indian Health Service the responsibility to foster the "major national goal . . . to provide the quantity and quality of health services which will permit the health status of Indians to be raised to the highest possible level." 25 U.S.C. § 1601(b). Congress has expressly recognized the Indian Health Service Community Health Aide Program's important role in this statute, has mandated its continuation, and has established the CHAP Certification Board expressly to provide and improve health care for Alaska Natives, 25 U.S.C. § 1616*l*, Section 121 of Pub. L. No. 94-437, including meeting the specific dental health care goals of 25 U.S.C. § 1602(b)(20) – (26). The CHAP Certification Board's adoption of the *Standards and Procedures* and its certification of dental health aide therapists directly further these important Congressional goals. Dkt. 1, Ex. B; Inf. Op. Alaska Att'y Gen. (Sept. 8, 2005).

**A.1.1.1 Counts 3 and 4.** Counts 3 and 4 of the *Complaint* squarely present questions of federal law. Dkt. 1, Ex. A, *Complaint*. As plaintiffs concede, these counts explicitly allege, on their face, that the CHAP Certification Board's dental health initiative "fall[s] outside the scope of the Congressional objectives … allegedly authorized by federal

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 18 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

law." Dkt. 14, at 5. Indeed, plaintiffs' Count 3 quotes 25 U.S.C. § 1602(b)(20) – (26) in its entirety, and allege that the dental health aide therapists' practice "fall[s] outside the scope" of this federal statute. Dkt. 1, Ex. A, *Complaint* at 19 – 20. Plaintiffs are not "merely referencing a federal statute," Dkt. 14, at 9, rather, a "'substantial and disputed question of federal law is a necessary element'" of plaintiffs' claims. *People of the State of Cal.  v. Powerlex Corp.*, Civ-S-05-01216 DFL DAD, 2006 WL 997717 at *2 (E.D. Cal. Apr. 14, 2006) (denying remand where interpretation of federal law was required to decide a state law claim) (quoting, *Grable*, 125 S.Ct. 2363).

        Deciding Counts 3 and 4 will require interpretation of the Indian Health Care Improvement Act against, ANTHC submits, the backdrop of the Snyder Act, the Indian Self-Determination and Education Assistance Act, the Constitution's delegation of "plenary authority" over Indian matters to Congress and the two century-old federal obligation to provide health services to Alaska Natives and American Indians:

> Federal health services to maintain and improve the health of the Indians are consonant with and required by the Federal Government's historical and unique legal relationship with, and resulting responsibility to, the American Indian people.

25 U.S.C. § 1601(a); *see also* S. Rep. No. 100-274, at 2 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2620, 2621; *accord, Fairbanks North Star Borough v. Dená Nená Henash*, 88 P.3d 124, 134 (Alaska 2004) (providing health care services to American Indians and Alaska Natives is a "uniquely federal obligation"). The first *Grable* factor is therefore satisfied. *Powerlex,* 2006

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                Page 19 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

WL 997717; *accord, Broder v. Cablevision Sy. Corp.*, 418 F.3d 187 (2nd Cir. 2005) (denying remand under *Grable* where plaintiff's claim for declaratory relief alleged that a federal cable television statute had been breached in contract dispute) (discussed *infra*.); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227 (10th Cir. 2006) (denying remand under *Grable* in right of way dispute where "considerable federal interests" were involved in right of way grant to railroad); *County of Santa Clara v. Astra USA, Inc.*, 401 F.Supp.2d 1022 (N.D.Cal.,2005) (denying remand under *Grable* where claim alleged sale of pharmaceuticals at prices in excess of a federal statute and claim involved federal contract) (*citing Boyle v. United Techs. Corp.,* 487 U.S. 500, 504, (1988)).

> **A.1.1.2  Counts 1 and 2.**  Plaintiffs' Counts 1 and 2 are not as explicit, alleging that "[n]o person providing dental health services within the state … including [dental health aide therapists] certified under the Alaska Community Health Aide Program, can do so unless properly qualified and licensed as dentists under Alaska licensing laws," and that federally-certified dental health aide therapists "[are] engaging in the unlicensed practice of dentistry" and "violating Alaska's Dental Practice Act."   Dkt. 1, Ex. A, *Complaint* at 17-19.

Counts 1 and 2 nevertheless affirmatively implicate the Supremacy Clause, U.S. Const. Art. VI, cl. 2, not as a defense – as plaintiffs argue – but because plaintiffs contend that the State of Alaska's "police power" over health care licensing somehow pre-empts federal authority to certify dental health aide therapists.  This theory is apparent in their motion.  *See Motion to Remand*, Dkt. 14, at 11–12 (arguing "[t]he States' interest in regulating the practice of medicine is not an economic endeavor of the type that the Commerce Clause or Indian Clause

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 20 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

envision") *and, Id.* at 13 (arguing "direct control of medical practice in the States is beyond the power of the federal government") (*quoting Linder v. U.S.*, 268 U.S. 5, 18 (1925)), *but see*, *e.g.*, *U.S. v. Singh*, 390 F.3d 168; 189-190 (2nd Cir. 2004) (rejecting *Linder*; holding federal government has authority to regulate dispensing of controlled substances by state-licensed physicians).

        Counts 1 and 2 of plaintiffs' *Complaint*, "artfully pleaded" as state law claims, are a *de facto* challenge to the Alaska Attorney General's opinion that the Alaska Dentistry Act is preempted by federal law with respect to activities of dental health aides certified by the CHAP Certification Board. Inf. Op. Alaska Att'y Gen. (Sept. 8, 2005). Plaintiffs raise state law preemption of federal law as a sword, not as a shield.[8] Here, as in *Verizon Md., Inc., v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002), "the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. . . .(citation omitted)"[9] These Counts, thinly disguised as state causes of action, pose federal questions.

---

[8] The Court may re-characterize these counts as if they had been correctly pleaded. *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir.1988); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir.1987).

[9] The 9th Circuit held in *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1079 – 80 (9th Cir. 2003), that a federal court had subject matter jurisdiction over a suit where a plaintiff sought to quiet title to property a county deeded to the defendant in a tax sale held in violation of the federal Bankruptcy Code. The Ninth Circuit explained that "[w]here the plaintiff seeks coercive relief under state law, as in a quiet title action, a well pleaded complaint presents a federal question if the plaintiff's right to such relief 'necessarily turn[s] on some construction of federal law.'" (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 807 (9th Cir. 1992) (quoting *Franchise Tax Bd v. Const. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)).

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 21 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

Thus, substantial, disputed questions of federal law are presented in plaintiffs' Counts 1 and 2.  Substantial, disputed questions of federal law are central issues, and are expressed unequivocally, in plaintiffs' Counts 3 and 4.

**A.1.2.  Grable [2]: State/Federal Balance**.  The second *Grable* factor is whether "a federal forum may entertain [the action] without disturbing any congressionally approved balance of federal and state judicial responsibilities."   125 S.Ct. at 2368.    The Court in *Grable* distinguished *Merrell Dow,* explaining that state law claims that tangentially involve federal laws – for example, tort actions in which one element of the alleged negligence is the violation of a federal regulation, as in *Merrell Dow* – ought to remain in state court, for fear of wholesale removal of a large category of state cases into the federal courts.  *Id.*, at 2370 – 71 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.").[10]   In matters where federal issues are significant, however, and where assuming federal jurisdiction "would not materially affect, or threaten to affect, the normal currents of litigation … there is no good reason to shirk from federal jurisdiction over the

---

[10]  Most cases that cite *Grable* and grant remand involve "garden variety" state law claims for breach of contract, fraud, professional negligence and breach of fiduciary duty, *see Baker v. Seidman*, 390 F.Supp.2d 919 (N.D. Cal., 2005), *Acker v. AIG Int'l., Inc*., 398 F.Supp.2d 1239 (S.d. Fla. 2005); *Ling v. Deutsche Bank AG*, No. 4:05CY345, 2005 WL 3158040-(E.D. Tex. Nov. 28, 2005); *Snook v. Deutsche Bank AG*, 410 F.Supp.2d 519 (S.D. Tex. 2006); *Samuel Trading, LLC v. Diversified Group, Inc*., No. 05C5513, 2006 WL 560311 (N.D. Ill. Mar 01, 2006); *McCormick v. Excel Corp*., 413 F.Supp.2d 967 (E.D. Wis. 2006); *Harmon v. Maury County, TN,* 2005 WL 2133697 (M.D. Tenn., Aug. 31, 2005); *Sarantino v. American Airlines, Inc*., No. 4:05MD1702JCH No. 1:05cv0026, 2005 WL 2406024 (E.D. Mo. Sept. 29, 2005).

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                     Page 22 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

dispositive and contested federal issue at the heart of the state-law … claim," and removal is proper. 125 S.Ct. at 2371.

This is not a typical state tort claim where, for example, a dentist's expired DEA registration is one element of a malpractice claim. This is a unique and rare case, in which the "dispositive and central issue" is whether federally-certified dental health aide therapists authorized by a federal agency to provide dental health services to Alaska Natives in federally-funded dental health care programs need state dental licenses. Plaintiffs request a declaration that the services provided are outside the scope of 25 U.S.C. § 1616*l*. Dkt. 1, Ex. A., *Complaint*. The Indian Health Care Improvement Act is a statute rarely, if ever, construed in state court declaratory relief actions.

The Second Circuit recently applied *Grable* to deny a request for remand in a declaratory judgment action. *Broder,* 418 F.3d 187 (2nd Cir. 2005), involved a putative class action alleging state law claims for breach of contract, common-law fraud, deceptive business practices, and unjust enrichment. *Id*., at 192–3. Plaintiff requested a declaratory judgment that the *Cablevision's* pricing scheme, *inter alia*, violated federal law, and sought an injunction. *Id.* at 193. The Second Circuit denied remand: "It is clear that *Broder* cannot obtain the declaratory judgment he seeks, stating in part that *Cablevision* violated [federal law], without prevailing on the issue of whether *Cablevision* in fact violated [federal law]." *Id.* at 195. That is the case here, as well.

**A.2.0   Conclusion: Federal Question.**   Federal issues are inseparable and significant elements of plaintiffs' claims for relief. "As in this case again, 'it is plain that a

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 23 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

controversy respecting the construction and effect of the [federal] laws is involved and is sufficiently real and substantial.'" *Grable*, 125 S.Ct. at 2369 (citation omitted).  Regardless of how the Court rules on the merits, consideration of this matter will require analysis and construction of the federal laws and federal authority discussed above.

> **B.    State Police Power**

Plaintiffs next argue that the State of Alaska has broad police powers entitling it to regulate the medical professions, including dentistry.  Dkt. 14, at 11-13.  This argument is entirely irrelevant to removal analysis under 28 U.S.C. §§ 1441(a) or 1442(a).  Plaintiffs do not link this argument with the jurisdictional issues involved in the motion at bar.

Plaintiffs remarkably assert a reverse preemption: *i.e.*, that state laws relating to the health professions somehow completely preempt all federal authority.  *But see*, U.S. Const. Art. VI, cl. 2 (Supremacy Clause).  This argument turns the normal presumption of federal supremacy over state law on its head.  Medical professionals are in fact closely regulated by federal law and federal authorities.  *See, e.g.,* 21 U.S.C. § 801 *et seq.* (Controlled Substance Act); 42 U.S.C. § 1395nn (Stark Laws), 42 U.S.C. § 1320a-7b(b)  (Antikickback Statute); 42 CFR Part 164 (HIPAA); and 42 U.S.C. § 11112 (Health Care Quality Improvement Act).

To the extent plaintiffs' "state supremacy" argument is relevant to removal at all, plaintiffs' affirmative contention that state law preempts federal law supports ANTHC's position that this case "turn[s] on substantial questions of federal law, and thus justif[ies] resort to the

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 24 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."

*Grable*, 125 S.Ct at 236.  Plaintiffs' cases do not hold otherwise.[11]

---

[11]  Plaintiffs cite to *Bigelow v. Virginia*, 421 U.S. 809, 827 (1975), a First Amendment case that does not address preemption or supply any support to their argument that state licensing laws apply to federal contractors.  Plaintiffs cite *Barsky v. Board of Regents*, 347 U.S. 442 (1954), for the proposition that a state, under its plenary power, has the right to establish regulations to license and monitor health care professionals.  *Id.* at 449-451.  *Barsky* like wise does not address "state preemption of federal law" at all. Plaintiffs cite *Dent v. West Virginia*, 129 U.S. 114 (1889), for the general proposition that that states have the police power to regulate health professionals, a point neither in dispute nor relevant to removal.

Plaintiffs cite *Crane v. Johnson*, 242 U.S. 339 (1917), for the proposition that the "States have plenary power to regulate the practice of medicine."  *Crane* does not remotely support that conclusion.  It was an equal protection case brought by a "drugless practitioner" who objected to obtaining a state medical license when Christian Scientist practitioners were not required to do so. *Lambert v. Yellowley,* 272 U.S. 581 (1926), determined the National Prohibition Act's restriction on the amount of "spirituous liquors" that could be prescribed by a physician was constitutional under the 18th Amendment. *Id*. at 595. *Lambert* is contrary to plaintiffs' position: the Court found that when the "United States exerts any of the powers conferred upon it by the Constitution, no valid objection can be based upon the fact that such exercise may be attended by some or all of the incidents which attend the exercise by a state of its police power," and that it would "be strange if Congress lacked the power to determine that the necessities of the liquor problem require a limitation of permissible prescriptions … which will minimize the temptation to resort to prescriptions as pretext for obtaining liquor for beverage use." *Id*. at 595, 597.

Plaintiffs cite *Great Atlantic & Pacific Tea Co., Inc. v. Cottrell*, 424 U.S. 366 (1976) for the proposition that the states retain "broad power" to legislate protection for their citizens in matters of local concern such as public health.  *Great Atlantic* is a Commerce Clause case that found that Mississippi could not deny Louisiana the right to sell milk in Mississippi because Louisiana declined to sign a reciprocity agreement as required by Mississippi law.   The Court did recognize that "under our constitutional scheme, the states retain 'broad power' to legislate protection for their citizens in matter of local concern such as public health." *Id.* at 371.  The Court simply found that "in areas where activities of legitimate local concern overlap with" national interests such as those governed by the Commerce Clause, the Court, if not given guidance by Congress, "is called upon to make delicate adjustment of the conflicting state and federal claims." *Id.*   This case has no relevance to the issue of removal.  Finally, plaintiffs cite *Linder v. United States*, 268 U.S. 5 (1925), where the issue in *Linder* was whether a federal tax statute could be applied to indirectly control the distribution of drugs by a physician.  The Court held the statute "must be reasonably applied with the primary view of enforcing the special tax. We find no facts alleged in the indictment sufficient to show that petitioner had done anything falling within definite inhibitions or sufficient materially to imperil orderly collection of revenue from sales."  *Id.* at 22. Congress has since passed the Controlled Substance Act, 21 U.S.C. § 801, which has been upheld against a *Linder* challenge.  *U.S. v. Singh*, 390 F.3d 168 (2nd Cir. 2004).

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 25 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

### C.    Federal Officer Removal

ANTHC is independently entitled to removal pursuant to 28 U.S.C. §1442(a), which provides for removal of actions against federal officers or a person acting under the direction of a federal officer or agency:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442 (a) (emphasis added).  ANTHC asserted in its *Notice of Removal* that federal officer removal was proper, *inter alia*, because "it is in the nature of a civil action brought against an officer of the United States or a person acting under the direction of a federal official or agency," "ANTHC has acted under color of federal authority and under the direction of federal officers in all matters relating to the CHAP dental health initiative," and ANTHC is "'operating federal programs and carrying out federal responsibilities' under … 25 U.S.C. § 450 et seq." Dkt. 1, ¶¶ 5 – 9.

To remove under this provision, as the Ninth Circuit recently noted, a non-federal defendant must demonstrate: "(a) it is a 'person' within the meaning of the statute, (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin, Corp.*,

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 26 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

No. 04-15243, 2006 WL1084340, *3 (9th Cir. Apr. 26, 2006).[12]   The Supreme Court has instructed that the federal officer removal statute is "not narrow or limited" and "should not be frustrated by a narrow, grudging interpretation."   *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).   In *Durham*, the Ninth Circuit held that "[b]ecause it's so important to the federal government to protect federal officers, removal rights under section 1442 are much broader than those under section 1441."   *Durham,* at *4-5.   Judge Kozinski reviewed the history of the statute closely and concluded, "We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."   *Id*., at *4.

Plaintiffs ignore the proper elements of the § 1442 standard, instead asserting that: (1) §1442(a) requires that a defendant must be an actual employee of the United States; (2) §1442(a) and 25 U.S.C. § 450f(d) require that the U.S. Attorney certify that the defendants were acting within their scope of employment; and (3) the federal government has no direct or detailed control over defendants, Dkt. 14, at 13-18.   Plaintiffs' assertions are simply incorrect.

**C.1.    Person "Acting Under" Federal Officer or Agency.**   Plaintiffs' first point, that only federal employees can remove under § 1442, is incorrect, although the individuals at ANTHC who would be subject to plaintiffs' requested injunction and declaratory relief are, in fact, mostly federal employees.   *See e.g.*, Ex. F, Affidavit of Dr. Ron Nagel, ¶ 1, and discussion *infra*.   The plain language of the statute does not require that a removing defendant be

---

[12]   Accord, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Lia. Litig.*, 342 F.Supp.2d 147, 154 (S.D.N.Y. 2004); *Watson v. Philip Morris Cos., Inc.,* 420 F.3d 852, 855, 863 (8th Cir. 2005); *McMahon v. Presidential Airways, Inc.*, 410 F.Supp.2d 1189, 1196 (M.D. Fla. 2006); *Fung v. Abex Corp.*, 816 F.Supp. 569, 571-72 (N.D. Cal. 1992).

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 27 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

a government employee, but instead provides that removal is available to a "person acting under [a federal] officer" or agency.

**C.1.1 "Person."** ANTHC is a "person" for purposes of § 1442(a). The federal courts have held that corporate entities of all types, if they otherwise satisfy the requirements of § 1442(a), are entitled to remove actions to federal court pursuant to that section.[13] Any of the individual federal employees, ANTHC officers and employees, and the "Does 1 to 8" dental health aide therapists, all of who would be subject to plaintiffs' proposed injunction and declared to be criminals under plaintiffs' proposed declaratory relief, are, of course, natural "persons."

**C.1.2 "Acting Under."** ANTHC performs the conduct challenged in this action on behalf and under the direction of the Indian Health Service CHAP Certification Board. As alleged in the *Complaint*, ¶ 10, ANTHC's Community Health Aide Program/Rural Health Office provides office staff and administrative support at the CHAP Certification Board's direction: preparing application files, checking credentials, organizing its meetings and keeping its records. Ex. G, Affidavit of Victorie Heart, ¶¶ 2 – 3.[14] As alleged in the *Complaint*, ¶ 8,

---

[13] *See Watson,* 420 F.3d at 863 (corporate cigarette manufacturer is a person for purposes of Section 1442)*; Fuieigh v. Sewerage & Water Bd. of New Orleans*, No. Civ. A04-1374, 2004 WL 1794524, at *2 (E.D. La. Aug. 10, 2004) (general contractor on flood control project). *E.g. McMahon*, 410 F.Supp.2d 1189 (private air transport corporation contracted to transport military personnel); *Kuenstler v. Occidental Life Ins. Co.*, 292 F.Supp. 532, 535 (C.D. Cal. 1968) (life insurance company administering Medicare benefits under contract with federal government); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); and *In re "Agent Orange" Prod. Lia. Litig. v. Dow Chem. Co.,* 304 F. Supp. 2d 442, 447 (E.D.N.Y. 2004).

[14] Ex. A, ¶ 3.1.3.6 ("Community Health Aide/Practitioner Certification. Provides support for the operations of the Community Health Aide Program Certification Board.").

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 28 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

ANTHC's Dental, Clinical and Preventative Support Center provides technical support for the Board, including research on current dental practice standards, training for dental health aides and dental health therapists, community outreach concerning the dental health aide therapists, and other support for Alaska Native dental health programs. Ex. F, Affidavit of Dr. Ron Nagel, ¶ 1. The challenged conduct is performed pursuant to ANTHC's Funding Agreement.[15]

C.1.2.1    **Federal Direction and Control.**  The Board's *Standards and Procedures* are detailed and explicit, as are ANTHC's obligations under the Compact and its Funding Agreement. Ex. B. ANTHC does not have, nor can it exercise, any discretion in the certification, re-certification or certificate revocation of dental health aides and dental health aide therapists.  Those are performed by the CHAP Certification Board in accordance with the *Standards and Procedures* and 25 U.S.C. § 1616*l*.  The CHAP Certification Board itself, not ANTHC, reviews the dental health aide therapist applications, approves certifications, develops education requirements and training curricula, approves training programs, revokes or suspends certificates, and updates the *Standards and Procedures*.  Ex. B; Ex. D, Affidavit of Dorothy Hight, ¶ 2; Ex. G, Affidavit of Victorie Heart, ¶ 2.

The CHAP Certification Board's control and direction over the certification process and the Indian Health Service's re-assumption authority, 25 U.S.C. § 450n, satisfies the "acting under" requirement for § 1442(a) removal.  Exs. A and B; Dkt. 1, Ex. A, *Complaint* ¶¶

---

[15]  Ex. A, ¶ 3.1.3.2 ("Dental Consultation.  Provides technical assistance, continuing education services, and training for [Alaska Native Medical Center] and other tribal dental programs Area-wide, including Dental Health Aide training, supervision and services under the *Standards and Procedures* approved by the CHAP Certification Board; develops dental health promotion programs; assists with dental professional recruitment; and participation [sic] in local, state and national meetings.  . . .").

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 29 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

8, 10, 45, 50, 56, 58; *Thompson v. Cherokee Nation of Oklahoma*, 334 F.3d 1075, 1081 (Fed. Cir. 2003), *aff'd sub nom. Cherokee Nation v. Leavitt*, 543 U.S. 631; 25 U.S.C. § 450 *et seq.*; *Watson*, 420 F.3d 852.  Courts have routinely allowed removal by corporate entities funded or authorized to operate by the federal government and subject to detailed federal control.  *See Texas v. Nat'l Bank of Commerce*, 290 F.2d 229 (5th Cir. 1961) (bank authorized to operate on military facility)*; Gurda Farms, Inc. v. Monroe Cty. Legal Assistance Corp.*, 358 F.Supp. 841, 847 (S.D.N.Y. 1973) (legal assistance corporation funded by federal government).[16]

The Fifth Circuit addressed an analogous situation in a pair of cases involving Medicare fiscal intermediaries in *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975) and *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir. 1975).  There, Blue Cross/Blue Shield "operated the Medicare program as an agent of the United States on a non-profit basis pursuant to a written contract executed under the provisions of 42 U.S.C.A. 1395h and 1395u."  *Weinberger*, 508 F.2d at 48.  Peterson sued Blue Cross, among others, in both federal and state courts.  The defendants removed the state case to federal district court pursuant to § 1442(a).  The Fifth Circuit had no difficulty rejecting Peterson's challenge to the removal, finding that the defendants were "persons acting within the purview of 1442(a)(1) and that the suits were properly removed," and noting that "[t]he federal officer removal statute is not 'narrow' or 'limited.'"  *Peterson,* 508 F.2d at 58.   The Court held: "[S]ince the corporate

---

[16]  Even government informants involved in a federal sting operation have been able to remove a civil suit against them by the target of the sting.  *See Venezia v. Robinson*, 16 F.3d 209, 210 (7th Cir. 1994); *Reiser v. Fitzmaurice*, No. 94 Civ. 7512 (CSH), 1996 WL 54326, at *4 (S.D.N.Y.  Feb. 8, 1996).

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 30 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

defendants were simply Medicare fiscal intermediaries, acting pursuant to a contract with the government," it was "indisputable that [Blue Cross] was either an 'officer of the United States or an agency thereof, or persons acting under him' and that their actions were 'under color of such office'," and that removal was proper under § 1442(a)(1).  *Id.* at 57-58 (quoting 28 U.S.C. § 1442(a)).  In *Weinberger*, the Court characterized the relationship between Blue Cross and the United States as follows:

> The[] [corporate defendants] . . . are Medicare fiscal intermediaries who act as agents at the sole direction of the Secretary of Health, Education and Welfare pursuant to 42 U.S.C.A. 1395h and 1395u.  In this situation the United States is the real party in interest. …
>
> Under regulations promulgated by the Department it is provided that 'In the performance of their contractual undertakings, the carriers act on behalf of the Secretary, carrying on for him the administrative responsibilities imposed by the law. The Secretary, however, is the real party in interest in the administration of the program . . . .

*Weinberger*, 508 F.2d at 51 and 51 n. 7. [17]  ANTHC, similarly, is acting "under the direction … of the United States or an agency thereof" when it provides training, administrative support and technical support to the CHAP Certification Board.

        **C.1.2.2**      **Federal Employees.**  The dental health initiative is, in point of fact, largely directed and managed by federal employees who are assigned to work at ANTHC under 5 U.S.C. §§ 3371 – 3373, 42 U.S.C. § 2004b or 42 U.S.C. § 4762, or who are directly employed by ANTHC under 25 U.S.C. § 450i, which provides that the employees' federal benefits continue and that the employee may return to federal career status following

---

[17] ANTHC believes that the United States is similarly the real party in interest in this matter, and may be an indispensable party to this lawsuit.  ANTHC reserves those points for future motions.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 31 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

their stint at ANTHC.   "An employee assigned either on detail or on leave without pay remains

an employee of his agency."   5 U.S.C. 3373(a).   Dr. Ron Nagel, Director of ANTHC's Dental,

Clinical and Preventative Support Center, which provides technical support for the CHAP

Certification Board, the Dental Academic Review Board and Alaska tribal dental programs, is a

Commissioned Corps Officer in the United States Public Health Service.  Ex. F, Affidavit of Dr.

Ron Nagel, ¶ 1.   The Indian Health Service has provided nearly $2 million in grants to support

the Dental Center.  *Id.*  Dorothy Hight, F.N.P., Chair of the CHAP Certification Board and also a

faculty member with the Community Health Aide Training Program, is a career Indian Health

Service employee.  Ex. D, Affidavit of Dorothy Hight, ¶ 1.  Victorie Heart, R.N, M.A., Director

of ANTHC's Community Health Aide Program/Rural Health Office, which provides staff and

administrative support to the CHAP Certification Board, is a career Indian Health Service

employee.  Ex. G, Affidavit of Victorie Heart, ¶ 1.

These federal employees are among the individuals who would be enjoined from

performing their federal functions if plaintiffs' proposed injunctive relief were granted.  These

federal employees would be declared misdemeanants under Alaska state law if plaintiffs'

requested declaratory relief were granted.  Simply put, plaintiffs seek to enjoin these federal

employees from performing their federal duties and to have them declared criminals.  *Complaint*,

Dkt. 1, Ex. A, at 11.  These federal employees are entitled under 28 U.S.C. § 1442(a) to removal

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 32 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

and "to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 125 S.Ct. 2363*; Durham v. Lockheed Martin, supra;* slip op. at 4789 - 4790. [18]

**C.2. Causal nexus.** The second element of § 1442 removal is whether there is a "causal nexus" between the federal direction and the conduct in question. *Durham*, No. 04-15243, 2006 WL 1084340, at *3. This element is not in serious dispute. The Community Health Aide Program is a federal program authorized by the Indian Health Care Improvement Act, 25 U.S.C. § 1601. The CHAP Certification Board's certification of dental health aide therapists is directed specifically at achieving the Congressional goals of improving dental health among Alaska Natives and American Indians in 25 U.S.C. § 1616*l*(20)-(26). *See generally*, Ex. B (*Standards and Procedures*) and Exs. C, D, F and G, Affidavits of Paul Sherry, Dorothy Hight, Dr. Ron Nagel, D.D.S., and Victorie Heart. ANTHC was established pursuant to the specific invitation of Congress in Section 325 of Pub. L. No. 105-83 to enter into agreements with the Indian Health Service to operate – on a state-wide-basis – "programs, functions, services or activities [of] the Department of Health and Human Services. ANTHC's conduct challenged in this matter is among the "programs, functions or services" it is directed to perform by its Funding Agreement and by the CHAP Certification Board's *Standards and Procedures*. That is the conduct challenged by plaintiffs' claims. The causal nexus is indisputable. *See* Dkt. 1, Ex. A, *Complaint*

---

[18] Plaintiffs assert, without citation, that the United States Attorney must certify that ANTHC was acting within the scope of its ISDEAA contract in order to secure *removal* to this Court based on 28 U.S.C. § 1442(a). Dkt. 14 at 16. But there is no such requirement in § 1442(a), Title 25, or the case law. ANTHC believes plaintiffs are confusing the certification required for tort defense and indemnity under 25 U.S.C. § 450f(d) with the removal provisions of 28 U.S.C. § 1442(a).

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 33 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

¶¶ 8, 10, 45, 50, 56, 58; *cf. Mesa v. California*, 489 U.S. 121 (1989) and *Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631 (2005).

 **C.3.  Federal Defenses.**  The third element of § 1442(a) removal is whether ANTHC has colorable federal defenses to plaintiffs' claims. *Durham*, No. 04-15243, 2006 WL 1084340, at *3.  This element is not seriously in dispute.  Plaintiffs acknowledge that ANTHC has raised the defenses of federal preemption, federal contractor and federal officer.  *Answer*, Dkt. 6, at 8.  Dkt. 14, at 2–3 (preemption), 15–17 (federal officer or agency) and 18 (federal contractor).  Indeed, this action appears to have been prompted by plaintiffs' disagreement with the Alaska Attorney General's opinion that the federal preemption defense does apply, and the Alaska Dentistry Act does *not* apply, to CHAP Certification Board certified dental health aides in the circumstances presented in this matter:

> We conclude that, so long as they are employed by Native Health clinics and treat patients authorized to receive care in those clinics, individuals certified as dental health aides by the federal Community Health Aide Certification Board do not have to comply with state dental licensure laws.
>
> The state dental licensure laws stand as an obstacle to Congress' objective to provide dental treatment to Alaska Natives by using non-dentist, non-hygienist paraprofessionals. Therefore, the federal statute that mandates the development of the dental health aide standards and the certification of dental health aides displaces (or preempts) the state's dental licensure law and renders it unenforceable against federally-certified dental health aides.

 Inf. Op. Alaska Att'y Gen., file no. 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, at p. 1 (Sept. 8, 2005).

 As noted above, questions of federal law – including preemption – are central to plaintiffs' claims in this action.  Federal preemption concomitantly provides a defense for ANTHC, in particular as regards plaintiffs' Counts 1 and 2.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND Page 34 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

C.4.    **Conclusion: federal officer removal**.    ANTHC is a federally-created Tribal health organization, performing federal functions and operating federal programs under the direction of the Indian Health Service CHAP Certification Board for all conduct it is alleged to have been done in plaintiffs' *Complaint*.    ANTHC has federal defenses to plaintiffs' claims. There is a direct and irrefutable causal nexus between plaintiffs' claims and ANTHC's performance of its Funding Agreement with the United States.    Removal is proper under 28 U.S.C. § 1442(a).

D.    **Abstention.**

Plaintiffs request that even if this Court determines it has jurisdiction of this case, it should abstain in favor of remanding the case to state court under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), and *Louisiana Power and Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). (Dkt. 14, at 20, 25).  Abstention is not warranted here under either of these cases for two reasons. First, there is no complex state administrative or special judicial scheme that could be disrupted by exercise of this court's jurisdiction.    Second, as discussed above, the basis for this Court's jurisdiction is federal question, not diversity,[19] and the Dentistry Act is preempted by federal law as to federally certified dental aides carrying out federal programs under compacts between ANTHC and the IHS – as the State of Alaska's Attorney General has opined.

D.1.    **Abstention Generally.**    A federal court's obligation to adjudicate claims within its jurisdiction is "'virtually unflagging.'" *New Orleans Public Serv., Inc., v. New Orleans*

---

[19]    Plaintiffs incorrectly assert that there are no federal issues involved in the case.  (Dkt. 14, at 25.) This contention is directly contradicted by plaintiffs' own Complaint which asserts that the services and practices of the dental health initiative "fall outside the scope of Congressional objectives enumerated at 25 U.S.C. § 1602(b)," Complaint ¶¶ 58, 60, clearly a question of federal law.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 35 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

(*NOPSI*), 491 U.S. 350, 359 (1989) (citation omitted); *see also Seneca-Cayuga Tribe v. State ex. rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989).  As the Ninth Circuit has explained, a court's discretion to abstain in a case where it has jurisdiction "must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved," and while "there may be room for discretion in deciding to forego abstention in a case which is otherwise a proper candidate for abstention, . . . there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *C-Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (citations omitted).[20]  As the Ninth Circuit also explained in *Int'l Brotherhood of Elec. Workers v. Public Service Commission*, 614 F.2d 206, 212 n.1 (9th Cir. 1980) ("*IBEW*"), "*Burford* abstention is particularly questionable when the basis of the plaintiff's claim is preemption. . . .  If a preemption claim is well-founded, therefore, *Burford* abstention cannot be appropriate."

### D.2.    Abstention Is Not Appropriate Under *Burford*

The contours of *Burford* abstention are closely tied to the facts of *Burford* itself, for as the Ninth Circuit stated in *IBEW*, 614 F.2d at 211: "*Burford* . . . permits a court to decline to adjudicate an essentially local issue arising out of a complicated state regulatory scheme. . . . This circuit has been careful to avoid extending *Burford*."

*Burford* involved an action in federal court by the *Sun Oil Co*. attacking the validity of an order of the Texas Railroad Commission granting *Burford* a permit to drill four

---

[20]  Plaintiffs' contrary suggestion that the Court has broad discretion, Dkt. 14, at 24, is a misstatement of the rule in *C-Y Development Co.*

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 36 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

wells in an East Texas oil field.  The Court noted that the order under review was part of the

"general regulatory system for the conservation of oil and gas in Texas, an aspect of 'as thorny a

problem as has challenged the ingenuity and wisdom of legislatures.'" 319 U.S. at 318 (citation

omitted).  The Court observed that Texas, along with other oil producing states, had accepted oil

production quotas, that the Railroad Commission, (the state regulatory agency), was charged

with distributing the quotas among each field and for each well, and that "[t]hese judgments are

made with due regard for the factors of full utilization of the oil supply, market demand, and

protection of the individual operators, as well as protection of the public interest." *Id.* at 320-321.

The Commission regulated the spacing of wells in consideration of property rights of surface

owners in the common pool and the need to "restrain waste, whether by excessive production or

by the unwise dissipation of the gas and other geologic factors that cause the oil to flow." *Id.* at

322.  The Commission accomplished this "'by an elaborate system of orders, schedules, and

reports.'" *Id.* (citation omitted).

       The Court in *Burford* found that the interdependency of these factors and the

statewide operations of the oil industry and its impact on the state's economy meant that each

case before the Commission implicated important statewide interests. *Id.* at 324-325.  The Court

also noted that the complexity of the matters required that the Commission be afforded broad

discretion.  *Id.* at 325.  In addition, the Texas Legislature had provided for a unique procedure for

appeals of Commission orders which could be made <u>only</u> to a particular state district court in and

then to a particular branch of the state appellate court and the state supreme court.  *Id.*  In such a

system, the Court found that "Texas courts are working partners with the Railroad Commission

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND     Page 37 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

in the business of creating a regulatory system for the oil industry," as the Commission was charged with fact finding and policy making while the court reviewed – by trial *de novo* – Commission orders based on a "reasonableness" standard. *Id.* at 326. The Court held that the state had provided a "unified method for the formation of policy and determination of cases by the Commission and by the state courts" and that determination by federal courts of questions of state law could likewise cause confusion and harm state policy. *Id.* at 327-329, 333-334. Accordingly, the *Burford* Court held that the federal court should abstain. *Id.* at 334.

In subsequent decisions, the Supreme Court has made it clear that *Burford* is a very narrow category of abstention cases, as has the Ninth Circuit. In *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 725-726 (1996), the Court discussed the very specific nature of cases triggering abstention under *Burford*, noting that in its decision in *Burford* the Court "approved the District Court's dismissal of the complaint on a number of grounds that were unique to that case" and that since *Burford*, it had "revisited the decision only infrequently in the intervening 50 years." The Court also explained that *Burford* allows a federal court to dismiss a case only in "extraordinary circumstances." *Id.* at 726-727 (citations omitted).

In *NOPSI, supra*, the Court held *Burford* abstention was not applicable to a claim that a City rate-making authority's denial of reimbursement for costs related to a nuclear power plant was contrary to and thus preempted by a determination by the Federal Energy Regulatory Commission. Even though the last appeal determined the case involved "a complex regulatory scheme of 'paramount local concern and a matter which demands local administrative expertise,'" *Id.* at 362, the Supreme Court explained that "[w]hile *Burford* is concerned with

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 38 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *Id.* (citation omitted). Instead, the Court in *NOPSI* held that abstention was not required because the case did "not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state-law that must be untangled before the federal case can proceed.'" *Id.* at 361 (citation omitted). These same basic factors are present in this case.

The Ninth Circuit has similarly set out the following restrictive standards for abstention and dismissal under *Burford*:

> (1) ... the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) ... federal review might disrupt state efforts to establish a coherent policy.

*Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (citation omitted). The Ninth Circuit has also recently made it clear that the *Burford* doctrine applies only in instances involving uniquely specialized state regulatory systems, such as that addressed in *Burford*. In *United States v. Morros*, 268 F.3d 695 (9th Cir. 2001), the Ninth Circuit held that *Burford* abstention was inappropriate in a case brought by the United States challenging denial of a state water permit for a study of possible location of a nuclear waste facility in Nevada pursuant to the Nuclear Waste Policy Act. The court held:

> There is no evidence, as there was in *Burford* with respect to the Texas courts, that "[Nevada] courts are working partners with [the State Engineer] in the business of creating a regulatory system for [the issuance of water permits]."

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                Page 39 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

*Id.* at 705.[21]

These extraordinary circumstances required for *Burford* abstention are clearly not present here.[22]

### D.2.1   No Concentrated Judicial Review or Specialized and Complex Administrative Scheme.

Plaintiffs characterize the Alaska Dentistry Act as "a state general regulatory system," Dkt. 14 at 23, and contend that the Board of Dental Examiners functions as a specialized court in matters related to the practice of dentistry, noting that the Board may conduct hearings concerning alleged violations of state licensing requirements, and assert that the Board holds special competence with regard to regulation and licensing of dental issues. *Id* However, judicial review of decisions by the Board is <u>not</u> concentrated in a specialized state

---

[21]  *See also Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982) (*Burford* abstention was not appropriate in an antitrust action challenging state milk pricing rules in part based on its finding that "Nevada has not concentrated challenges to the regulations in any particular or specialized court"); *City of Tucson v. U.S. West Communications, Inc.*, 284 F.3d 1128, 1133-1134 Cir. 2002) (*Burford* abstention inappropriate because there was no specialized state procedure or rules related to franchises); *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841-842 (9th Cir. 1979) (no specialized court, federal issues separable, no showing of disruption of state efforts to establish coherent policy).

[22]  Plaintiffs cite a number of abstention cases without explaining their relevance.  (Dkt. 14, at 20 n.2.) Some of these cases involve category abstention which plaintiffs do not assert apply here.  *See Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983) (*Colorado River* abstention); *Martin v. Creasy*, 360 U.S. 219 (1959) (*Pullman* abstention).  Other cases are readily distinguishable on their facts.  *Alabama Public Service Comm'n v. Southern Ry. Co.*, 341 U.S. 341 (1951), involved distinctly local questions of law related to public necessity for intrastate rail service.  *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943), involved federal resolution of challenges to state taxes under the Tax Injunction Act.  Some of plaintiffs' cases actually supporet our argument that abstention is not warranted here. In *Mercury* the Court actually held that abstention was <u>not</u> appropriate and observed that "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction.  460 U.S. at 26; *see also Creasy*, (local issues of road access).  In *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943), the Court found abstention <u>not</u> appropriate merely because of "difficulties of ascertaining what the state courts may hereafter determine the state law to be."

---

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 40 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

court, but is provided in the Superior Court per the Alaska Administrative Procedure Act. AS 08.36.080, AS 44.62.330(a)(2).[23]  Accordingly, there is no single court developing "local expertise" in the matters addressed by the Board.  By contrast, the Court in *NOPSI* observed that *Burford* involved "a centralized system of judicial review of commission orders, which 'permit[ted] the state courts, like the Railroad Commission itself, to acquire a specialized knowledge' of the regulations and industry."  491 U.S. at 360 (quoting *Burford* at 327).

In addition, the State administrative scheme regulating dental practice is the typical administrative process applicable to all AS 08 licensed professions, not a unique or especially complicated scheme.  The Ninth Circuit has held that state health regulations similar to the provisions of the Dental Practice Act are not particularly complex or subject to disruption by federal court jurisdiction.  *E.g.*, *Privitera v. Cal. Bd. of Quality Med. Assurance*, 926 F.2d 890, 895 (9th Cir. 1991) (hearing a doctor's challenges to a medical license revocation procedures in federal court "would not interfere with any similar effort by California to maintain consistency in a complex area of law because California had not established any such system of concentrated judicial review.")  *Hachamovitch v. DeBuono*, 159 F.3d 687, 697-698 (2nd Cir. 1998) (doctor's claim in federal court that a state law prohibition on reopening his medical license disciplinary proceeding to consider new evidence violated due process did not involve

---

[23]  Plaintiffs mischaracterize the test for *Burford* abstention as described in *Poulos, supra.*  Plaintiffs describe the first prong as "the state has created resolution of the issue in a particular court."  Dkt. 14, at 24.  However, *Poulos* requires, consistent with *Burford*, that "the state has <u>concentrated</u> suits involving the local issue in a particular court." 379 F.3d at 671 (citation omitted) (emphasis supplied).  Plaintiffs agree that Alaska APA applies to appeals Board actions, though they incorrectly cite AS 08.36.091 as authority.  Dkt. 14, at 25.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 41 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

meddling in a complex area of state concern).  Similarly, in *England v. Louisiana State Bd. of Med. Exam's*, 375 U.S. 411, 464 n.5 (1964), the Supreme Court found that claims that state medical licensing laws did not apply to certain medical students did not involve the "the possibility of unwarranted disruption of a state administrative process."

### D.2.2   Federal Preemption Issues Predominate, No Significant State Law Issues In Dispute.

Abstention is also warranted under *Burford* only when "the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence." *Poulos*, 379 F.3d at 671.    There is no complicated question of state law at issue in this case.  Indeed, there is no serious state law issue at all.  There is no dispute that dental health aide therapists engage in activities otherwise falling under the Act and that they are not licensed under state law, though they are certified by the federal CHAP Certification Board.[24]   *See Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971) ("[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim"); *DeBuono*, 159 F.3d at 697-698 (no abstention where federal court need not interpret state medical regulatory regime as "there is no provision to interpret."); *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356, 362 (7th Cir. 1998) ("*Burford*

---

[24]   There is dispute whether certain procedures by dental health aide therapists would require licensure under state law but for federal preemption, but there is no dispute that certain other procedures would require licensure.  As the State Attorney General noted, "[i]t is undisputed that dental health aids operating under the federal Community Health Aide Program will be performing dental procedures regulated by AS 08.32 and AS 08.36.  It is also undisputed that federal dental health aides do not receive training from the accredited sources required by state law and are thus ineligible for state licensure as dental hygienists or dentists." Inf. Op. Alaska Att'y Gen., Sept. 5, 2005, at 12.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 42 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

abstention is rarely, if ever, appropriate when 'the state law to be applied appears to be settled.'")

(*quoting Colorado River*, 424 U.S. at 815).

The only questions truly presented here are whether the dental health initiative is consistent with federal law and whether the Dentistry Act is preempted by federal law. The State of Alaska Attorney General has issued an opinion, as chief legal officer for the State, that Alaska law *is* preempted in the situation presented by this case. Inf. Op. Alaska Att'y Gen. (Sept. 5, 2005). Accordingly, this case is controlled by *Morros*, in which the Ninth Circuit concluded:

> Even if there were such a symbiotic relationship between the state courts and the State Engineer, it would hardly be relevant because this case does not revolve around "complex state law issues," such as who is entitled to how much water. Rather, it revolves around whether state law conflicts with federal law, which is plainly not an issue "with respect to which state courts might have special competence." This is a preemption case, and, as we stated in *Knudsen*, "*Burford* abstention is particularly inappropriate when the plaintiff's claim is based on preemption, because abstaining under *Burford* would be an implicit ruling on the merits."

268 F.3d at 705.[25]

### D.2.3  Federal Court Review Would Not Disrupt State Policy.

The third *Burford* requirement is that the Court find that "federal review might disrupt state efforts to

---

[25]  S*ee also Knudsen,* 676 F.2d at 377 ("federal issues involved can easily be separated from the state law questions, which, moreover, are not complex and do not require extensive background in local law"); *City of Tucson v. U.S. West Communications, Inc.*, 284 F.3d 1128 (9th Cir. 2002); *IBEW*, at 212, n1 ("*Burford* abstention particularly questionable when the basis of the plaintiff's claim is preemption. . . if a preemption claim is well-founded, . . . *Burford* abstention cannot be appropriate"); *Hotel Employees Int'l Union v. Nevada Gaming Comm'n*, 984 F.2d 1507, 1512 (9th Cir. 1993) (*Burford* abstention inappropriate because decision to abstain in preemption case concerning state regulatory scheme would constitute implicit ruling on the merits); *Gartrell Constr., Inc. v. Aubry*, 940 F.2d 437, 441-442 (9th Cir. 1991) (abstention inappropriate because state contractor licensing requirement clearly preempted by federal law when contractor undertook a project for federal government); *U.S. v. Composite State Bd of Med. Exam's*, 656 F.2d 131,134-137 (5th Cir. 1981) (no abstention in federal suit to establish federal preemption of state physician licensing laws with respect to National Health Service Corps physician); *DeBuono*, 159 F.3d at 697.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND          Page 43 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

establish coherent policy." *Poulos*, 379 F.3d at 671.   Resolution of plaintiffs' claims in this court presents no possibility of disruption of the state regulatory program related to dentistry.   This case presents federal questions and no substantial state law questions, as it involves dental services provided by the federal government and Tribal health organizations under authority of federal law.   Private, state licensed dentists do not provide dental services in Alaska's villages. *See*, Exs. E and F, Affidavits of Dr. Mark Kelso, D.D.S., and Dr. Ron Nagel, D.D.S.   The State Board of Dental Examiners has not taken any enforcement action that would be disrupted by this Court's review; indeed, it cannot do so, for the Attorney General of Alaska has concluded that state licensure of federally certified dental health aides is preempted in the circumstances presented here.   Alaska courts recognize the status of Indian Self-Determination and Education Assistance Act compactors in interpreting state law.  *See Dená Nená Henash*, 88 P.3d at 134-135 (self-determination compact activities come within state law definition of "charitable purpose").

There will be no disruption to the State licensing scheme by federal judicial review of this matter.  *Burford* abstention is not warranted.

### 3.        Abstention Is Not Appropriate Under *Thibodaux*

Plaintiffs' contention that abstention is warranted under *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959), based on their assertion that this case exclusively involves questions of state law that are of great public importance.  Dkt. 14, at 26. Plaintiffs fail to explain how resolution of any state law issues will affect the Court's

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 44 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

determination concerning preemption, and indeed, as discussed above, the opposite is true; there are no unresolved state law issues here, and federal law questions are dispositive.[26]

        *Thibodaux* abstention is limited to diversity cases, and has nothing to do with cases based on federal question jurisdiction.  Even in diversity cases, the decision's effect has been questioned.  It has been largely confined to cases involving eminent domain. *See* Erwin Chemerinsky*, Federal Jurisdiction,* pp. 750-754 and notes 84 and 85, (3d ed 1999); *Educ. Services, Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 n.9 (4th Cir. 1983) ("*Thibodaux* is generally understood as resting on the special nature of eminent domain as a peculiarly local concern, although by any measure the case is something of an anomaly."); *See* discussion *supra*., at 24 25 (state policy power argument).  The present case, of course, does not involve jurisdiction based on diversity of citizenship or present the unique local issues involved in eminent domain cases.  Furthermore, the Ninth Circuit has made it clear that *Thibodaux* abstention is not appropriate in cases where state law is clear, *U.S. West*, 284 F.3d at 1134, or

---

[26]  The Supreme Court has said that *Thibodaux* rests "loosely on the *Burford* rationale." *Quackenbush*, 517 U.S. at 725; *see also, Hawthorne Savings, F.s.B. v. Reliance Ins., Co.,* 421 F.3d 835 (9th.Cir. 2005) ("Courts and commentators alike are split on whether *Thibodaux* is a separate abstention doctrine, as opposed to a special form of *Burford* abstention"), amended by 433 F.3d 1089 (9th Cir. 2006).  In *Thibodaux*, a city in Louisiana brought an eminent domain proceeding in state court, seeking to condemn for public use certain property owned by a Florida corporation.  After the corporation removed the action to federal court on grounds of diversity of citizenship, the district court decided on its own motion to stay the case, pending a state court's determination whether the city could exercise the power of eminent domain under state law.   The Court held that the issues in the suit were "intimately involved with [the State's] sovereign prerogative," and concluded that "[t]he considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court." *Id.*at 1073.

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND       Page 45 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

where the state court is in no better position than the federal court to decide any state law issues.

*Hawthorne Savings,* 421 F.3d 835, 846 n.9.

## CONCLUSION

For the foregoing reasons, the Alaska Native Tribal Health Consortium respectfully requests that plaintiffs' *Motion to Remand*, Dkt. 14, be denied.  This is a quintessentially federal matter, involving federal statutory questions, federal Indian health care programs, federal officers, agencies and employees and federal regulation.  Removal is proper under 28 U.S.C. §§ 1441 and 1442.

DATED this 28th day of April, 2006.

SONOSKY, CHAMBERS, SACHSE,
 MILLER & MUNSON, LLP

*/S/ Richard D. Monkman*
_____
Myra M. Munson
Alaska Bar No. 8011103
Richard D. Monkman
dick@sonoskyjuneau.com
Alaska Bar No. 8011101
Aaron M. Schutt
Alaska Bar No. 0011084

SONOSKY, CHAMBERS, SACHSE,
 MILLER & MUNSON LLP
318 Fourth Street
Juneau, Alaska 99801
Tel:  907-586-5880
Fax:  907-586-5883
Counsel for Defendant
Alaska Native Tribal Health Consortium

//
//

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 46 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06

Certificate of Service

I hereby certify that on the 28th day of April, 2006, a copy of the foregoing Defendant ANTHC's Opposition to Motion to Remand was served electronically addressed to:

Thomas V. VanFlein
tvf@cplawak.com

Douglas J. Serdahely, Esq.
dserdahely@pattonboggs.com

/s/ *Richard D. Monkman*
_____
Richard D. Monkman

DEFENDANT ANTHC'S OPPOSITION TO MOTION TO REMAND                    Page 47 of 47
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al*;
Case No. 3:06-CV-0039 (TMB)
s/dha litigation/draft pldgs/def ANTHC's opp to motion to remand 04-28-06