Thomas V. Van Flein
CLAPP, PETERSON, VAN FLEIN
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
Tel:  (907)  272-9272
Fax:  (907)  272-9586
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA DENTAL SOCIETY, THE AMERICAN DENTAL ASSOCIATION, DR. T. HOWARD JONES, DR. MICHALE BOOTHE, DR. PETE HIGGINS AND DR. GEORGE SHAFFER, <br><br> Plaintiffs, <br><br> vs. <br><br> THE ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and DOES 1 through 8, <br><br> Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>NO:3:06-CV-00039-TMB |

**AFFIDAVIT OF DR. MICHALE BOOTHE**

STATE OF ALASKA         )
                        ) ss.
THIRD JUDICIAL DISTRICT )

I, Michale Boothe, being first duly sworn, state the following:

1. I am dentist duly licensed to practice dentistry in the state of Alaska, and I am a member of the Alaska Dental Society and the American Dental Association. I have

been practicing dentistry in Alaska since July 1983. I am also a named plaintiff in this case.

2. It is my opinion that there is an unacceptably high risk for injury and harm to the public and especially to children who may be treated by DHATs who lack the training and credentialing that is required for irreversible dentistry.

3. Under state law, as a state licensed dentist, I must abide by the ADA Principles of Ethics and Code of Professional Conduct. Within that code of conduct, and Section 3, I, as well as my fellow licensed dentists, are obligated, and "have a duty to act for the benefit of others." Further, under this principle, I, and other dentists, have a "primary obligation [of] service to the patient **and the public-at-large.**" Accordingly, I believe I am ethically duty bound, a duty imposed as a matter of state law, to act to protect the public at large when I see issues that threaten the dental health of the public.

4. Pursuant to my state mandated obligation to protect the public relative to dental care, I have joined in this suit as a plaintiff since I believe that the DHAT's are practicing dentistry without a license and are in violation of state law, and threaten the health of the public at large, particularly the rural residents for

whom they purport to serve. In addition, I filed a complaint in December 2005 with the State, Office of Children's Services, regarding a propaganda film produced by the Defendant ANTHC, in which it was revealed, to my shock, that a five year old child needed $10,000 worth of dental treatment and a 13 year old child needed dentures. I am attaching a copy of my report as Exhibit 1 to this Affidavit and the state's response as Exhibit 2. This report was compelled by my duty to act to protect the public just like my participation in this suit.

5. Section 3.A of the ADA Code of Conduct states that dentists "have an obligation to use their skills . . . for the improvement of the dental health of the public . . . ." This is another reference to what I consider to be our obligation to take actions to protect and improve "the dental health of the public." The current lawsuit is intended to do just that by having only trained, educated, licensed and regulated dentists providing irreversible dental care.

6. Also, Section 4 of the ADA Code of Conduct provides that dentists have a duty "to treat people fairly." Part of this duty, the code explains, is to deal with people justly and to deliver "dental care without prejudice." Further, dentists are obligated, under Section 4.A, to

provide dental services irrespective "of the patient's race, creed, color, sex or national origin." In my opinion, allowing the unlicensed practice of dentistry on bush residents, most of whom are supposed to be Alaska Natives, is unfair to Alaska Natives as it subjects them to second class dentistry and does so based on their race. This is contrary not just to state law, but contrary to good morals.

7. The unlicensed practice of dentistry by the DHATs will, and there are reports that they have already, cause harm to patients, and require licensed dentists to step into the breach and fix the problems caused by the unlicensed dentists.

8. The rigorous educational standards and licensing requirements for dentists carries with it substantial costs. There are substantial economic costs to obtaining an undergraduate and post-graduate education. I am informed that in-state tuition at the University of Washington Dental School approaches $70,000. Private schools are more. A licensed dentist must invest in expensive equipment, staff and physical office space. The unlicensed DHATs do not have to incur these costs. The provision of dental services by unlicensed DHATs therefore poses an economic risk to the dental market by unfairly providing services

without having to expend the time and resources required of licensed dentists.

Further your affiant sayeth naught.

DATED this 28TH day of April 2006, at Anchorage, Alaska.

By: _____
Michale Boothe

SUBSCRIBED AND SWORN to before me, a Notary Public in and for the State of Alaska, this ____ day of April, 2006, at Anchorage, Alaska.

_____
Notary Public in and for Alaska
My Commission Expires:_____

## Certificate of Service

I hereby certify that on April 28, 2006, a copy of the foregoing document was served electronically on Douglas Serdahely, Richard D. Monkman, Myra M. Munson, and Aaron M. Schutt.

**Douglas Serdahely**
dserdahely@pattonboggs.com

**Aaron M. Schutt**
aaron@sonosky.net

**Myra M. Munson**
myra@sonoskyjuneau.com

**Richard D. Monkman**
dick@sonoskyjuneau.com

s/ Barbara Pauli



Many Alaska Native youth suffer extensive tooth decay.

*Permission is granted to use this image in media coverage of the American Dental Association's position on Dental Health Aide Therapists.*
*January 2006*



# Michale L. Boothe, D.D.S.

Dec. 13, 2005

State of Alaska
Office of Children's Services
550 W. 8th Ave. Suite 304
Anchorage, AK 99501

To Whom it May Concern:

Watching Rhonda McBride's television series **Toothaches and Heartache** caused me great distress. A written version published by KTUU is submitted for your evaluation. I come to seek your help as a father.

Ten thousand dollars worth of dental treatment for a five year old is parental neglect by any reasonable standard. So are dentures being necessary for any thirteen year old. Repeat cases of neglect are the definition of active abuse. The Kaitlin in this story has been abused. The Brendan in this story has been abused.

Failure to report extreme neglect has led to abuse. Dental personnel are mandated reporters. Were any reports received? If not, why not? Are the federal service and ANTHC health care providers held to a lower standard than those of us who live in urban areas?

Someone needs to watch over the children of Alaska, all of the children of all of Alaska.

Sincerely,

[signature]

cc: Rep. Coghill
Sen. Huggins
Rep. Stoltze
Occ. License / Dental Examiners

EXHIBIT ___1___
PAGE ___1___ OF ___1___

121 WEST FIREWEED, SUITE 200    ANCHORAGE, ALASKA 99503    TELEPHONE (907) 276-5522

# STATE OF ALASKA

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**

*OFFICE OF CHILDREN'S SERVICES*

FRANK H. MURKOWSKI, GOVERNOR

P.O. BOX 110630
JUNEAU, ALASKA 99811-0630
PHONE:   (907) 465-3170

January 5, 2006

Michale L. Boothe, D.D.S.
121 West Fireweed, Ste 200
Anchorage, Alaska  99503

Dear Dr. Boothe:

The Anchorage Office of Children's Services (OCS) has forwarded your December 13, 2005, letter regarding the reporting of medical (dental) neglect in rural Alaska to me for review and response.  Your points-of-view and your questions are well taken.

State law protects the anonymity of children and families under the jurisdiction of the OCS.  I am not able to respond to your question about the children specifically highlighted in the *Toothaches and Heartaches* television series.  However, I can tell you that there is no distinction in state law between urban and rural health care providers – the law holds them to equal mandated reporter standards.

For a more informed exchange of information related to dental care services for the children of rural Alaska, please be encouraged to contact the Division of Health Care Services (DHCS).  The DHCS contact information is:

> Division of Health Care Services
> Alaska Office Building
> PO Box 110660
> Juneau, AK  99811
> 907.465.3355

I wish the decision of reporting a parent for medical neglect were a black and white issue.  I believe the decision to report must be balanced against personal knowledge of a particular family and the medical resources available to them in each specific case.  Ultimately, the OCS can only investigate those concerns that get reported to our offices.

Thank you for bringing your concerns to my attention.

Sincerely,

*Tammy Sandoval* /jg
Tammy Sandoval
Deputy Commissioner

EXHIBIT __2__
PAGE __1__ OF __2__



# Michale L. Boothe, D.D.S.

January 25, 2006

Tammy Sandoval
Deputy Commissioner
HSS / OCS
P. O. Box 110630
Juneau, AK 99811

Dear Ms. Sandoval,

In your response (dated January 5, 2006) to my letter of Dec. 13, 2005 you state that the law makes no distinction between urban and rural standards for reporting neglect and abuse. Will you provide me with statistics as to the actual reporting in the last three calendar years? The law makes no distinction but the enforcement of the law may.

I agree with you that, in some cases, reporting a parent may be a difficult decision. I have struggled with that myself. In the cases I'm citing here the numbers speak for them themselves. Ten thousand dollars worth of dentistry on a five year old is a massive amount of work. To repeat the process a few years later begs for intervention for the sake of the child. The problems here will not be fixed with more medical or dental resources. That is improper thinking. Prevention and education should have made this a non-issue. Dental disease in children is almost entirely preventable in 2006. It was almost entirely preventable in 1976. The parents of the children need to be held accountable for their lapses in the provision of a proper diet, lack of sanitation and prompt attention to health care needs. The "Brendan" and "Kaitlin" highlighted in the film deserve equal protection under the law, not cultural relativity.

As to only investigating those cases that get reported to your office: That is precisely what I was doing in my letter. I am a mandated reporter. I, in good faith, reported what was publicly broadcast in the interest of all of the minor children cited in the broadcast. I have done my part, now do yours.

Sincerely,

cc: Division of Health Care Services
   Alaska Office Building
   P. O. Box 110660
   Juneau, AK 99811

   Rep. Coghill

EXHIBIT 2
PAGE 2 OF 2

121 WEST FIREWEED, SUITE 200   ANCHORAGE, ALASKA 99503   TELEPHONE (907) 276-5522

# 2005 - 2006

## Membership Directory & Resource Guide

The Alaska Dental Society is a non-profit professional organization open to Alaskan dentists and others in the oral health professions who are committed to the mission of the Alaska Dental Society.

> **The Alaska Dental Society**
> **Pursuing policies that enhance the dental profession**
> **and the well being of Alaskans.**

The Alaska Dental Society is a constituent of the American Dental Association. It is comprised of seven component societies representing the geographical diversity of the nation's geographically largest state. Membership is open to dentists, all dental staff members and auxiliary support personnel.

The Alaska Dental Society is governed by an 18-member executive council composed of component society representatives, elected officers and committee chairmen appointed by the president of the society. Executive council meetings are held three times yearly with one additional annual session/general membership meeting. This organization recognizes and adheres to the American Dental Association's **Principles of Ethics and Code of Professional Conduct.**

E-mail: akdental@alaska.net

**Distribution:** Each ADS member dentist receives **TWO** complimentary copies. Retired, student and allied members receive one copy.

Additional copies are available to non-members and the public at $75 per book.

EXHIBIT 3
PAGE 1 OF 1



# DIVISION OF OCCUPATIONAL LICENSING

*Frank H. Murkowski, Governor*

February 7, 2005

Gregg D. Renkes, Attorney General
Department of Law
P.O. Box 110300
Juneau, Alaska 99811-0300

Dear Mr. Renkes:

I am writing to alert you to the fact that there are people in rural Alaska practicing dentistry illegally. They are being allowed to practice dentistry without possessing the Alaskan license to do so.

At our December 3, 2004, meeting, the Board of Dental Examiners was informed that recently trained Dental Health Aid Therapists (DHAT) were going to begin their work in the villages of rural Alaska. At several of its meetings this past year, the Board has received formal presentations and frequently discussed the pros and cons of the work that DHAT's will be doing as they relate to the statutes and laws of our state, and the Board's mission to protect the public.

AS 08.36.360 defines the "Practice of Dentistry" as: a person engages in the practice of dentistry who
(1) performs or holds out to the public as being able to perform dental operations;
(2) diagnoses, treats, operates on, corrects, attempts to correct, or prescribes for a disease, lesion, pain, injury, deficiency, deformity, or physical condition, malocclusion or malposition of the human teeth, alveolar process, gingiva, maxilla, mandible, or adjacent tissues; * * *
(6) extracts or attempts to extract human teeth;
(7) exercises control over professional dental matters or the operation of dental equipment in a facility where the acts and things described in this section are performed or done;
(8) evaluates, diagnoses, treats, or performs preventive procedures related to diseases, disorders, or conditions of the oral cavity, maxillofacial area, or adjacent and associated structures; a dentist whose practice includes the services described in this paragraph may only perform the services if they are within the scope of the dentist's education, training, and experience and in accord with the generally recognized ethical precepts of the dental profession; nothing in this paragraph requires a person licensed under AS 08.64 to be licensed under this chapter.

As you can see from the enclosed copy of an article from Anchorage's local paper, DHAT's are and will be practicing dentistry without a license by performing "basic dental practices" and returning to Alaska to "hang a shingle." We have been advised that they will also be doing fillings, pulpotomies (root canals on baby teeth), and tooth extractions. These are all invasive and irreversible dental procedures and according to Alaska statute, the exclusive duties of a licensed dentist. Additionally, the Board has been told by Dr. Nagle, that the DHAT's will be able to provide care to anyone in the village that the village tribal elders or corporation officers authorize them to provide care for. We can only assume from this that the DHAT's care will not be limited to village native residents.

EXHIBIT 4
PAGE 1 OF 2

FEB-18-2005 FRI 09:23 AM OCC LICENSING ANCH　　　FAX NO. 9072698195　　P. 03
FEB-17-2005 THU 01:07 PM OCC LIC STATION C　　　FAX NO. 907 465 2844　　P. 03

Case 3:06-cv-00039-JWS　　Document 45-2　　Filed 05/01/2006　　Page 13 of 16

Gregg Renkes, Attorney General　　　　　Page 2　　　　　　　　February 7, 2005

At it's December meeting, the Board of Dental Examiners unanimously directed the Board's president to write you this letter and request that the Department of Law take appropriate action that it would normally take against a person who is practicing a profession without a license. Also, the dentists authorizing this care are in violation of AS 08.36.315(6) and (10).

AS 08.36.315, Grounds for discipline, suspension, or revocation of license. The board may revoke or suspend the license of a dentist, may reprimand, censure, or discipline a dentist, or both, if the board finds after a hearing that the dentist
(6) ... permitted the performance of patient care by persons under the dentist's supervision, that does not conform to minimum professional standards of dentistry regardless of whether actual injury to the patient occurred; •••
(10) permitted a dental hygienist or dental assistant who is employed by the dentist or working under the dentist's supervision to perform a dental procedure in violation of AS 08.32.110 or AS 08.36.070(a)(10)....

Please, kindly respond as soon as possible. The Board is concerned that we are putting our rural citizens at risk by allowing high school graduates who have attended a non-accredited dental program in a foreign country to practice dentistry in our state.

Please feel free to contact me by phone at my office in Anchorage, 274-7691.

Sincerely,

Robert E. Warren, DDS
Alaska Board of Dental Examiners
President

EXHIBIT 4
PAGE 2 OF 2

American Dental Association

PRINCIPLES OF

# Ethics

AND

CODE OF

# Professional Conduct

*With official advisory opinions revised to January 2004.*

EXHIBIT 5
PAGE 1 OF 3

should monitor the aforementioned disease or impairment and make additional limitations to the activities of the dentist's practice, as indicated.

### 2.E. POSTEXPOSURE, BLOODBORNE PATHOGENS.

All dentists, regardless of their bloodborne pathogen status, have an ethical obligation to immediately inform any patient who may have been exposed to blood or other potentially infectious material in the dental office of the need for postexposure evaluation and follow-up and to immediately refer the patient to a qualified health care practitioner who can pro-vide postexposure services. The dentist's ethical obligation in the event of an exposure incident extends to providing information concerning the dentist's own bloodborne pathogen status to the evaluating health care practitioner, if the dentist is the source individual, and to submitting to testing that will assist in the evaluation of the patient. If a staff member or other third person is the source individual, the dentist should encourage that person to cooperate as needed for the patient's evaluation.

### 2.F. PATIENT ABANDONMENT.

Once a dentist has undertaken a course of treatment, the dentist should not discontinue that treatment without giving the patient adequate notice and the opportunity to obtain the services of another dentist. Care should be taken that the patient's oral health is not jeopardized in the process.

### 2.G. PERSONAL RELATIONSHIPS WITH PATIENTS.

Dentists should avoid interpersonal relationships that could impair their professional judgment or risk the possibility of exploiting the confidence placed in them by a patient.

### Section 3 PRINCIPLE: BENEFICENCE ("do good"). The dentist has a duty to promote the patient's welfare.

*This principle expresses the concept that professionals have a duty to act for the benefit of others. Under this principle, the dentist's primary obligation is service to the patient and the public-at-large. The most important aspect of this obligation is the competent and timely delivery of dental care within the bounds of clinical circumstances presented by the patient, with due consideration being given to the needs, desires and values of the patient. The same ethical considerations apply whether the dentist engages in fee-for-service, managed care or some other practice arrangement. Dentists may choose to enter into contracts governing the provision of care to a group of patients; however, contract obligations do not excuse dentists from their ethical duty to put the patient's welfare first.*

### CODE OF PROFESSIONAL CONDUCT

### 3.A. COMMUNITY SERVICE.

Since dentists have an obligation to use their skills, knowledge and experience for the improvement of the dental health of the public and are encouraged to be leaders in their community, dentists in such service shall conduct themselves in such a manner as to maintain or elevate the esteem of the profession.

### 3.B. GOVERNMENT OF A PROFESSION.

Every profession owes society the responsibility to regulate itself. Such regulation is achieved largely through the influence of the professional societies. All dentists, therefore, have the dual obligation of making themselves a part of a professional society and of observing its rules of ethics.

### 3.C. RESEARCH AND DEVELOPMENT.

Dentists have the obligation of making the results and benefits of their investigative efforts available to all when they are useful in safeguarding or promoting the health of the public.

### 3.D. PATENTS AND COPYRIGHTS.

Patents and copyrights may be secured by dentists provided that such patents and copyrights shall not be used to restrict research or practice.

**3.E. ABUSE AND NEGLECT.**
Dentists shall be obliged to become familiar with the signs of abuse and neglect and to report suspected cases to the proper authorities, consistent with state laws.

ADVISORY OPINION

**3.E.1. REPORTING ABUSE AND NEGLECT.**
The public and the profession are best served by dentists who are familiar with identifying the signs of abuse and neglect and knowledgeable about the appropriate intervention resources for all populations.

A dentist's ethical obligation to identify and report the signs of abuse and neglect is, at a minimum, to be consistent with a dentist's legal obligation in the jurisdiction where the dentist practices. Dentists, therefore, are ethically obliged to identify and report suspected cases of abuse and neglect to the same extent as they are legally obliged to do so in the jurisdiction where they practice. Dentists have a concurrent ethical obligation to respect an adult patient's right to self-determination and confidentiality and to promote the welfare of all patients. Care should be exercised to respect the wishes of an adult patient who asks that a suspected case of abuse and/or neglect not be reported, where such a report is not mandated by law. With the patient's permission, other possible solutions may be sought.

Dentists should be aware that jurisdictional laws vary in their definitions of abuse and neglect, in their reporting requirements and the extent to which immunity is granted to good faith reporters. The variances may raise potential legal and other risks that should be considered, while keeping in mind the duty to put the welfare of the patient first. Therefore a dentist's ethical obligation to identify and report suspected cases of abuse and neglect can vary from one jurisdiction to another.

Dentists are ethically obligated to keep current their knowledge of both identifying abuse and neglect and reporting it in the jurisdiction(s) where they practice.

**Section 4 PRINCIPLE: JUSTICE** ("fairness"). The dentist has a duty to treat people fairly.

*This principle expresses the concept that professionals have a duty to be fair in their dealings with patients, colleagues and society. Under this principle, the dentist's primary obligations include dealing with people justly and delivering dental care without prejudice. In its broadest sense, this principle expresses the concept that the dental profession should actively seek allies throughout society on specific activities that will help improve access to care for all.*

**CODE OF PROFESSIONAL CONDUCT**

**4.A. PATIENT SELECTION.**
While dentists, in serving the public, may exercise reasonable discretion in selecting patients for their practices, dentists shall not refuse to accept patients into their practice or deny dental service to patients because of the patient's race, creed, color, sex or national origin.

ADVISORY OPINION

**4.A.1. HIV POSITIVE PATIENTS.**
A dentist has the general obligation to provide care to those in need. A decision not to provide treatment to an individual because the individual has AIDS or is HIV seropositive, based solely on that fact, is unethical. Decisions with regard to the type of dental treatment provided or referrals made or suggested, in such instances should be made on the same basis as they are made with other patients, that is, whether the individual dentist believes he or she has need of another's skills, knowledge, equipment or experience and whether the dentist

5

EXHIBIT 5
PAGE 3 OF 3