SONOSKY, CHAMBERS, SACHSE
  MILLER & MUNSON LLP
Myra M. Munson
Richard D. Monkman
dick@sonoskyjuneau.com
Aaron M. Schutt
318 Fourth Street
Juneau, Alaska 99801
Tel: 907-586-5880
Fax: 907-586-5883
Counsel for Defendant
Alaska Native Tribal Health Consortium

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| THE ALASKA DENTAL SOCIETY, THE AMERICAN DENTAL ASSOCIATION, DR. T. HOWARD JONES, DR. MICHALE BOOTHE, DR. PETE HIGGINS and DR. GEORGE SHAFFER, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:06-CV-0039 (TMB) |
| v. | ) ) | Filed Electronically |
| THE ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and DOES 1 through 8, | ) ) ) ) | |
| Defendants. | ) ) | |

**ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (STANDING)**

**INTRODUCTION**

Defendant Alaska Native Tribal Health Consortium (ANTHC) moved to dismiss based on plaintiffs' lack of standing. *Def's Mot. to Dismiss (Standing)*, Dkt. 12; *Def's Memo in Supp. of Mot. to Dismiss (Standing)*, Dkt. 13. Plaintiffs oppose, arguing that the individual dentists and the dental associations have "individual, third-party, and associational standing" to bring this action. *ADS Opp'n*, Dkt. 45, at 1. They are incorrect.

## ARGUMENT

**A.    Standing Principles**. Plaintiffs do not dispute that to maintain this action, they must meet the "bedrock" Article III standing requirements of:

(1)    injury ("'an injury in fact' that is … concrete and particularized, and … actual or imminent");

(2)    causation ("that the injury is fairly traceable to the challenged action of defendant"); and

(3)    redressibility ("it is likely, as opposed to merely speculative, that the injury will be 'redressed by a favorable decision'").

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Covington v. Jefferson County*, 358 F.3d 626, 637-638 (9th Cir. 2004). Plaintiffs must also meet "prudential" requirements of federal standing jurisprudence, including that "plaintiff must assert his own rights" and "cannot rest his claim to relief on the legal rights or interests of third parties."[1] Plaintiffs do not dispute these

---

[1]    *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Coalition of Clergy, Lawyers, & Professors v. Bush,* 310

elements, and further do not dispute that standing is a jurisdictional prerequisite for plaintiffs to maintain this action. *ADA Opp'n*, Dkt. 39 at 5-6 (ADA and Jones); *ADS Opp'n*, Dkt. 45 at 12-13, 17-18; *see generally ANTHC's Memo*, Dkt. 13 at 6-8; *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 517-518 (1975); *McMichael v. Napa County*, 709 F.2d 1268 (9th Cir. 1983).

      **B.    Plaintiffs Have Failed to Allege or Prove Injury in Fact**. The first element of standing is "injury in fact." ANTHC's *Motion* pointed out that plaintiffs' *Complaint* does not allege that they have suffered any injury whatsoever, let alone the required "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *ANTHC's Memo*, Dkt. 13 at 6; *Lujan*, 504 U.S. at 560. Nor do they show injury in fact now.

      **(1) No Direct Injury.** Plaintiffs do not show—nor can they—that any

---

F.3d 1153, 1163 (9th Cir. 2002), *cert. denied*, 538 U.S. 1031 (2003); *Allen v. Wright*, 468 U.S. 737, 751 (1984). Additional prudential standing requirements are: "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III," *Valley Forge*, 454 U.S. at 760, the plaintiff's injury must not be "shared in substantially equal measure by all or a large class of citizens," for, if so, it represents a "generalized grievance" not normally appropriate for a judicial resolution. *Warth*, 422 U.S. at 499. "The relation between the constitutional and prudential aspects of standing has been described as follows: Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.' In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself,' that is likely to be redressed if the requested relief is granted." *McMichael v. Napa County*, 709 F.2d 1268, 1270 (9th Cir. 1983), quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).

DEF'S REPLY IN SUPPORT OF MOTION TO DISMISS (STANDING)        Page 3
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al.*;
Case No. 3:06-CV-0039 (TMB)

person, including the individual plaintiffs or any member of the professional associations, has been

directly injured by ANTHC or a dental health aide therapist.   Neither of plaintiffs' affiants attests

that they have ever lived in or practiced in rural Alaska.   Neither affiant avers they personally, nor

any of their patients, have been treated (or injured) by a dental health aide therapist, nor does the

*Complaint* allege that any member of either dental association has been so treated (or injured).

Neither affiant claims to have met a dental health aide therapist, to have visited ANTHC or a village

clinic, or to be familiar with dental health conditions in rural Alaska villages.   Neither has seen a

dental health aide therapist's patient.   Neither has reviewed any dental health aide therapist's work.

Neither affiant admits to accepting Medicaid-eligible Alaska Native patients.   Neither affiant has

been injured, been threatened with injury, nor has any personal knowledge of any injury to any

person caused by ANTHC or by the "John Doe" defendant dental health aide therapists.   Nor does

the *Complaint* allege otherwise.   Dkt.1, Ex. A.

        Nonetheless, plaintiffs' affiants make sweeping and unsupported assertions about

"dangerous and illegal" practices occurring in rural Alaska, by which ANTHC assumes they mean

the dental health aide therapists.   Affs. of Dr. T. Howard Jones, Dkt. 40, ¶ 4 ("dangerous and

illegal"), and Dr. Michale Boothe, Dkt. 43, ¶ 4 ("threaten the health of the public at large").   There is

no foundation for the affiants' statements.   Plaintiffs' affiants have no personal knowledge of dental

health aide therapists, and do not aver otherwise.   *Id*.   By contrast, Dr. Mark Kelso of Nome, a long-

time Alaska dentist—and a member of both the American Dental Association (ADA) and the Alaska

Dental Society (ADS)—avers:

> Dental health therapists perform a limited range of relatively simple but very important dental procedures. They are able to remove diseased material from teeth and extract hopeless teeth. In my view, based upon my direct observation of their performance of hundreds of procedures, the dental health therapists are able to perform these procedures as safely and as competently as licensed dentists.[2]

To the extent the Court considers plaintiffs' dire descriptions of "dangerous, illegal, and second class treatment," it should recognize that plaintiffs' assertions are entirely speculation relating to unknown, and unidentified and almost assuredly non-existent third parties—not the required "concrete," "particularized," and "actual" injury to plaintiffs that is required for Article III standing. *Lujan*, 504 U.S. 555; *Gillam v. Barton*, 353 F. Supp. 2d 1068, 1070 (D. Alaska 2005).

**(2)    No Economic Injury.**  Plaintiffs' alleged economic injury is equally conjectural. The ADA asserts that it has suffered "injury in fact" because it has chosen to expend funds lobbying against dental health aide therapists and has chosen to bring this action. Dkt. 39 at 8. Such "injury," if it is that, is entirely self-inflicted. If the costs of litigation were a cognizable injury

---

[2]    Ex. E, Aff. of Mark E. Kelso, D.D.S., at ¶ 13. Plaintiffs filed the affidavits of two individual dentist plaintiffs in support of their *Oppositions*. *See* Affs. of Dr. T. Howard Jones, Dkt. 40, and Dr. Michale Boothe, Dkt. 43. Since plaintiffs have presented "matters outside the pleadings," ANTHC incorporates all exhibits filed in support of its *Opposition to Motion for Remand*, Dkt. 42, by reference in support of the motion at bar, and for the ease of court and counsel re-files the three affidavits specifically referenced in this memorandum. *N.b.*, in a standing motion, the Court is "not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of [subject matter] jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)); *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).

for Article III standing purposes, every litigant would, *ipso facto*, have standing, an absurd result. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself. An 'interest in attorney's fees is … insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'") (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990)); *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001) ("a plaintiff cannot establish standing simply by filing its own lawsuit").[3]

Plaintiffs' economic argument, in essence, is that their monopoly status as dental health providers in Alaska is threatened by federally certified dental health aide therapists. *E.g.*, Dkt. 45 at 14 ("the unlicensed practice of dentistry has the potential to cause economic harm to the Plaintiffs"), 18 ("the unlicensed practice of dentistry deprives [plaintiffs] of a valuable economic right—their lawfully obtained license to practice dentistry"). Plaintiffs' claim to have been "deprived" of their dental licenses is obvious hyperbole—there is no evidence whatsoever that any

---

[3]     ADA cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), in support of its assertion of standing based on the expenditure of funds to advocate on this issue. The Court in *Havens* held that an organization must allege "concrete and demonstrable injury to the organization's activities–with the consequent drain on the organization's resources . . . ." *Id.* Finding that the Fair Housing Act established "an enforceable right to truthful information concerning the availability of housing," the Court held that the defendant's alleged misrepresentations about the availability of housing affected the organization's ability to provide counseling and referral services, a right protected by the Act. *Id.* at 373, 379. *Havens* did not involve litigation or other advocacy costs.

dentist in Alaska has lost his or her license to practice as a result of anything ANTHC or the "John Doe" defendants have done—but their candidly expressed concern over potential loss of monopoly profits highlights the discovery issues discussed with the Court at the status conference on April 4, 2006.[4]

    For standing purposes, however, plaintiffs must show "concrete," "particularized" or "actual" injury, *Lujan*, 504 U.S. at 560, not mere speculation and conjecture about the possible loss of a monopoly.   They do not meet this burden.   Neither of plaintiffs' affiants avers that their income has suffered, their business has dropped, nor that they have suffered any other type of tangible economic injury caused by ANTHC or the "John Doe" dental health aide therapists.   Affs. of Dr. T. Howard Jones, Dkt. 40, and Dr. Michale Boothe, Dkt. 43.   The individual plaintiffs do not produce tax returns establishing that they have lost income as a result of dental health aide therapists; do not compare their income levels to those of the medical and nursing professions, where mid-level practitioners are common; and do not otherwise establish that they have suffered any economic harm whatsoever.   Dkt. 45.

    Plaintiffs' claimed injury most closely resembles the contractors' association's

---

[4]     Plaintiffs are not strangers to the Sherman Act and the FTC Act.   *E.g., Boddicker v. Ariz. State Dental Ass'n*, 549 F.2d 626 (9th Cir. 1977), *cert. denied sub nom. Ariz. State Dental Ass'n v. Boddicker*, 434 U.S. 825 (1977); *Cal. Dental Ass'n v. Fed. Trade Comm'n*, 526 U.S. 756 (1999); *Fed. Trade Comm'n v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986); *United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206 (9th Cir. 1992).

interest in enforcing state law electrician apprenticeship requirements due to asserted concerns about "competitive advantage to contractors … who employ unlicensed, untrained, and unsupervised individuals," which the Sixth Circuit rejected in *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994), on the ground that the association lacked standing to have state law enforced.

The dental associations likewise do not show that they have lost a single member, suffered any drop in revenues, or incurred any other type of economic harm as a proximate result of any action by ANTHC or the "John Doe" dental health aide therapists.   Plaintiff ADA vaguely alleges that "[n]o doubt many dentists will … be less inclined to view ADA membership as an important commitment of resources, monetary or otherwise." Dkt. 39 at 8.  This is pure speculation, as is its conjecture that its position as the principal accreditation body for dentistry schools is somehow in jeopardy.  The ADA's hypothetical events do not meet the required standard: "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent,' not 'conjectural or hypothetical,'" *Lujan*, 504 U.S. at 560.  None of these even hypothetical "economic injuries" are alleged in plaintiffs' *Complaint*.  Dkt. 1, Ex. A.

Similarly, plaintiffs' suppositions regarding dentists' perceptions about ADA's effectiveness are pure conjecture.  As the Supreme Court has explained, "pleadings must be something more than an ingenious academic exercise in the conceivable." *Warth*, 422 U.S. at 509 (quoting *U.S. v. Students Challenging Regulatory Agency Procedures ("SCRAP")*, 412 U.S. 669,

688 (1973)).  With respect to claims of future impacts, the Ninth Circuit has explained that a plaintiff

must demonstrate that such claims are a "very significant possibility," and that the "'mere physical

or theoretical possibility'" of a challenged action again affecting the plaintiff is not sufficient."

*Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990) (quoting *Murphy v. Hunt*, 455 U.S. 478,

482 (1982)).  The ADA's asserted impacts on its future organizational effectiveness and ability to

recruit are no more than "an extended chain of highly speculative contingencies, all of which would

have to be fulfilled in order to have the threat of [the kind which the Ninth Circuit has rejected]

become manifest." *Id.*

      **(3)**    **Associational Injury.**  Plaintiffs' political interest as dental associations in

halting the practice of dental health aide therapists is similarly insufficient for standing.  *Vt. Agency*

*of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) ("An interest unrelated to injury in fact is

insufficient to give a plaintiff standing. … The interest must consist of obtaining compensation for,

or preventing, the violation of a legally protected right.").  Plaintiffs cite *Hunt v. Washington State*

*Apple Advertising Comm'n*, 432 U.S. 333 (1977) and *Oregon Advocacy Center v. Mink*, 322 F.3d

1101 (9th Cir. 2003) for the proposition that "an organization whose own legal rights and interests

may not have been injured may seek redress on behalf of its members."  Dkt. 39 at 10.  *Hunt*

requires, however, that the organization's members have standing to sue on their own before the

organization may sue on their behalf.  432 U.S. at 342-343 ("The association must allege that its

members, or any one of them, are suffering immediate or threatened injury as a result of the

DEF'S REPLY IN SUPPORT OF MOTION TO DISMISS (STANDING)               Page 9
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al.*;
Case No. 3:06-CV-0039 (TMB)

challenged action of the sort that would make out a justiciable case had the members themselves brought suit. … So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.") (quoting *Warth*, 442 U.S. at 511).

Plaintiffs claim their members' individual interests in promoting dental health and "uphold[ing] the highest level of professional standards through … national accreditation and educational functions" suffices to establish "immediate or threatened injury" for standing purposes. Dkt. 39 at 11.  Plaintiffs' theory is far too attenuated.  The abstract interest of the dental associations' members in upholding the dignity of their profession is insufficient to establish that the individual members are or will suffer the "concrete," "particularized" and "actual" injury needed for Article III standing.  In *Sierra Club v. Morton*, 405 U.S. 727 (1972), the Supreme Court held that an association lacked standing to challenge a proposed ski resort where the association's pleadings and affidavits "[n]owhere … state that its members use" the area where the resort would be established "for any purpose."  *Id.* at 735.  The Court determined that "a mere 'interest in a problem,' no matter how long standing the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient" to meet the injury in fact requirement of standing.  *Id*. at 739.  *Accord Lujan*, 504 U.S. at 566 (standing denied where association members used lands "in the vicinity" of a project); *see also Consejo de Desarrollo Economico de Mexicali, AC v. U.S.*, 417 F. Supp. 2d 1176,

1186-1187 (D. Nev. 2006) (alleged impacts of diversion of water recharging aquifer on organizations' educational and planning purposes are based only on "generalized interests" insufficient to confer standing).[5]  Similarly, the individual plaintiffs do not practice in rural Alaska nor have they suffered any injury at all—to their pocketbooks, to themselves nor to their patients— from ANTHC or from the "John Doe" dental health aide therapist defendants.   And, it is questionable whether the ADA's and ADS's aspirational goals for "upholding the profession" and improving "the public's oral health" are served by their attack on the only dental health care delivery system that holds any promise of improving dental health for rural Alaska Natives:

> The bottom line is that we cannot rely on dentists to improve dental health in the [Yukon-Kuskokwim] Region.  We need people in the villages.  We need dental practitioners who are part of the community—people that have the trust of the community and that understand the cultural norms of that community.  This takes time—contact time with a patient and with the patient's parents and family.  The Dental Health Aides and Therapist program addresses the dental needs of the YK Region: building community trust, cultural familiarity, and the prevention of and intervention in the transmission of an infectious disease. … [T]he CHAP Certification Board's dental health aide program is the best solution that has been developed.[6]

Implicitly recognizing the weakness of their "professional values" argument,

---

[5]  Plaintiff ADA's assertion that the federal program for dental health assistants will result in the perception that the ADA is less able to fulfill its mission of upholding the profession does not establish standing under *Havens*, as plaintiffs suggest.  The Court in *Havens* indicated that the alleged injury must go beyond "a setback to the organization's abstract social interests." 455 U.S. at 379 (citing *Sierra Club*, 405 U.S. at 739).  ADA's predictions that federal licensure of mid-level practitioners will degrade dentists' perception of the ADA's effectiveness and result in recruitment problems is mere unsupported speculation and involves nothing more than abstract interests.  ADA makes no allegation that the federal program interferes with any referral and counseling services as in *Havens*.

[6]      Ex. G, Aff. of Dr. Edwin Allgair, D.D.S., ¶¶ 6 – 8.

plaintiffs cite *Association of Data Processing Service v. Camp*, 397 U.S. 150, 154 (1970) and *SCRAP*, 412 U.S. at 686, for the proposition that abstract "harm to the 'aesthetic and environmental well being' has constituted a sufficient 'injury' if the party seeking review is among the injured." Dkt. 39 at 6. Those cases are readily distinguishable. In *SCRAP*, the association's members actually used the area that would be impacted. Both *SCRAP* and *Data Processing Service* involved challenges brought *against federal agencies* under provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, or the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.*, both statutes that allow judicial review of administrative agency action. Plaintiffs here have avoided litigating against the federal agency that authorizes dental health aide therapists' practice—the Indian Health Service's Community Health Aide Certification Board.[7] And, even with APA or NEPA authority to obtain judicial review, prospective plaintiffs are required to show "concrete injury" arising from a federal agency decision to have Article III standing. *Sierra Club*, 405 U.S. 727; *Defenders of Wildlife v. United States*, 420 F.3d 946 (9th Cir. 2005).[8]

---

[7]      *See Def. ANTHC's Memo in Supp. of Mot. to Remand*, Dkt. 42.

[8]      Environmental lawsuits use a standing analysis derived from statutory intent. In *Defenders of Wildlife*, for example, plaintiffs established an injury-in-fact by showing that they (1) "observed or worked" with the endangered species at issue; (2) alleged an injury to the endangered species and their habitat; and (3) asserted an aesthetic or recreational interest in particular endangered species which defendant's conduct is impairing. *Id.* 420 F.3d at 957. *See also Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1109 (9th Cir. 2000) (holding that injury-in-fact could be established through "recreation and nature appreciation" on land directly affected by challenged agency action.) "Those allegations meet the criteria for demonstrating an adequate injury in an environmental case." *Defenders of Wildlife*, 420 F.3d at 957. Here, plaintiffs do not claim to be challenging agency action; do not live or work in rural Alaska; do not provide services to rural Alaska residents; and generally have demonstrated no "concrete" connection with, or affect from, the

---

(4)  **Third Party Injury.**  Plaintiffs make the claim that they have "a close relationship" with rural Alaska Natives, and that "the relationship between the [dental associations] and [rural Alaska Natives is] such that the former is fully, or very nearly as effective a proponent of the right as the latter." Dkt. 45 at 31.  They assert, without any basis in fact--and they are perilously close, if not entirely over the line, of Rule 11--that "it has been reported that licensed dentists have had to repair probable DHAT errors," Dkt. 45 at 18, that "the Plaintiffs here, will likely encounter *more* patients in the future that require follow-up work directly due to the inadequate work performed by DHATs," Dkt. 45 at 19 (emphasis added), and that "it goes without saying that the continual injuries that the Defendants impose is imminent." *Id*.

Plaintiffs' assertions that they are the protectors of Alaska Native dental care interests are entirely baseless.  Plaintiffs' affiants offer no support for these claims whatsoever.  They do not live in rural Alaska and do not practice there. Indeed, private dentists do not practice in Alaska's predominately Alaska Native villages except on the most irregular and infrequent basis, and generally refuse to treat the Medicaid-eligible, who make up most of the rural patient base.  *See* Affs. of Dr. Kelso, Ex. E, Dr. Allgair, Ex. H and Dr. Nagel, Ex. F.  If there were any "reports" of patient injuries due to dental health aide therapists' actions, plaintiffs would have assuredly brought witnesses and details forward.  If any individual plaintiffs have ever "encountered" any patients that "require follow-up work" because of dental health aide therapists' "inadequate work," plaintiffs

---

Community Health Aide Program's dental health aide therapists. *See* Affs. of Drs. Kelso, Allgair and Nagel,

would have produced supporting evidence.  They did not.

Plaintiffs' unsupported factual allegations here show why "[f]ederal courts have traditionally been reluctant to grant third-party standing." *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987).  When they do, the courts require that three criteria be met: "The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) (internal citations omitted).  In addition, the Ninth Circuit has stated that a plaintiff asserting third-party standing "must be able to convince the court that it would be as effective a proponent of its customers' rights as they would be." *Hong Kong*, 830 F.2d at 1081.

Plaintiffs cannot meet any one of these three criteria.  They cannot show an injury in fact.  They claim that they are injured by "Defendants' undermining Plaintiffs' ability to provide quality health care," Dkt. 45 at 31, but do not explain how they are injured by a program designed to provide dental care where little or none existed before.  *See* Ex. H, Aff. of Dr. Allgair, and Ex. E, Aff. of Dr. Kelso.

Plaintiffs have equally failed to demonstrate *any* actual dentist-patient relationship with the patients whose rights they purport to champion.  Plaintiffs have not identified a single

---

Exs. E, H and F.

patient allegedly injured by the dental health aide therapists, much less a patient of any of the individual plaintiffs. Instead, plaintiffs cite an inapplicable "zone of interests test," Dkt. 45 at 32, a test applicable to APA cases, but not third party standing, discussed *supra*, p. 12; and recite several cases finding third party standing in physician-patient settings. *Id.* at 32-33 (citing *Singleton v. Wulff*, 428 U.S. 106 (1976); *Pennsylvania Psychiatric Soc. v. Green Springs Health Servs., Inc.*, 280 F.3d 278 (3d Cir. 2002)). In those cases, the physicians had an actual patient relationship with one or more of the patients whose rights they were advocating. *Singleton*, 428 U.S. at 109 ("Each plaintiff avers . . . that he 'has provided, and anticipates providing abortions to welfare patients who are eligible for Medicaid payments.'"); *Pennsylvania Psychiatric*, 280 F.3d at 281 (Plaintiff "filed suit on behalf of its member psychiatrists and their patients."). Without such a relationship, third party standing is inappropriate. *See Coalition of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1164 (9th Cir. 2002) ("Because neither the Coalition nor any of its members has a relationship with the detainees, it cannot assert third-party standing on their behalf.").

Last, the plaintiffs also have not made an adequate showing that Alaska Natives lack the ability or incentives to protect their own legal interests. Plaintiffs' patronizing claim that they may assert the interests of Alaska Native patients regarding dental health aide therapists because those patients are hindered from bringing suit to protect their own interests by "cultural and geographic barriers which make the court system inaccessible to them," Dkt. 45 at 34, is astonishingly uninformed and empirically incorrect. Alaska Natives have repeatedly brought suits

in federal and state courts when they have considered their interests threatened.[9]   Alaska Natives

hardly need plaintiffs as their self-appointed protectors, and are unlikely to seek them out, especially

given recent comments by the Alaska Dental Society's president, Dr. Eichler:

> The most effective action we could take could be to remove all special
> federal assistance for all American Indians and Alaskan and Hawaiian
> Natives to allow their integration into American society as dignified citizens.
> In other words, rescind the legalized racial segregation that keeps them in
> bondage. Sadly the likelihood of this soon happening is zero to less than nil.
> There are far too many leeches in society benefiting financially from the
> current system. They could receive care by private dentists in the cities and
> town[s] similar to VA care in Fairbanks and limit PHS to village work. … As
> far as therapeutics, get over the culture garbage. Rampant decay is child
> abuse in any culture. Don't fall for the catch that they don't like to deprive
> their children. In a nomadic life failure to obey could be lethal. It still has
> consequences. Any culture that allows such disease will soon disappear and
> rightfully so.[10]

---

[9]      *E.g.*, *Alyeska Pipeline Serv. Co. v. Kluti Kaah Native Vill. of Copper Ctr.*, 101 F.3d 610 (9th Cir. 1996); *Native Vill. of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548 (9th Cir. 1991); *Runyon ex rel. B.R. v. Ass'n of Vill. Council Presidents*, 84 P.3d 437 (Alaska 2004); *State v. Kenaitze Indian Tribe*, 83 P.3d 1060 (Alaska 2004); *In re C.R.H.*, 29 P.3d 849 (Alaska 2001); *John v. Baker*, 982 P.2d 738 (Alaska 1999); *Bd. of Equalization for Borough of Ketchikan v. Alaska Native Brotherhood & Sisterhood, Camp No. 14*, 666 P.2d 1015 (Alaska 1983).

[10]      ADA Discussion Group, posted Mar. 1, 2006.  Eichler subsequently apologized, but did not disavow his comments.  *See* A. deMarban, *Dentist Has Natives Gnashing Teeth*, Anchorage Daily News*,* Apr. 14, 2006 at A1.  The introduction to the Alaska Dental Society's Opposition, Dkt 45, at 2-7, removes any doubt concerning plaintiffs' suitability as a representative for Alaska Native interests.  Plaintiffs raise entirely irrelevant arguments about "tribal sovereignty," "Indian Country" and the Alaska Native Claims Settlement Act.  None of these "issues" are part of any claim ANTHC has made and thus are not before the Court. Plaintiffs' description of events and characterization of the law display a deep antagonism towards Alaska Native interests.  They are also largely and inexplicably incorrect–*e.g.*, plaintiffs' cite to *Native Vill. of Stevens v. Alaska Mgmt. & Planning*, 757 P.2d 32 (Alaska 1988), Dkt. 45 at 6, without citing to the Alaska Supreme Court's subsequent direct, controlling, and adverse decision in *John v. Baker*, 982 P.2d 738 (Alaska 1999).

Finally, the plaintiffs' true motivations for bringing this case are analogous to the situation in *Hong Kong Supermarket* and bar third party standing.  There, the plaintiff sought to enjoin the Women, Infants and Children food subsidy program because it allegedly discriminated against Southeast Asians by limiting subsidies to certain foods based on a "conventional American diet, without taking into account the diverse cultural eating habits and lactose intolerance of [Southeast Asians]."  830 F.3d at 1080.  Hong Kong brought suit on behalf of its customers and argued it had third party standing to do so.  The district court and the Ninth Circuit noted that plaintiffs' "alleged objective . . . can be achieved by much less drastic measures than bringing the entire program to a halt" and rejected plaintiff's standing claim reasoning that its "willingness to enjoin the . . . program was probative of a conflict, rather than a congruence, of interests, thereby undermining [plaintiff's] claim to be a suitable champion of its customers' rights."  *Hong Kong*, 830 F.2d at 1082.

Here, plaintiffs, for their own supposed but unproven economic gain, *see* Dkt. 45 at 14 (citing "economic risk to the dental market"), seek to enjoin the provision of dental services to patients in rural Alaska; critically needed services that previously were non-existent.  With interests diametrically opposed to the Alaska Native patients whose rights they purport to champion, the plaintiffs do not have third party standing.

### C.    Plaintiffs Have Failed to Establish Causation.

Plaintiffs continue to recite factual errors, and little else, in support of their argument

that their injuries are caused by Defendant ANTHC's conduct.  They claim that "Defendant ANTHC

helped develop and implement the Dental Health Aide Program," and that "ANTHC is assisting in

the violation of State law."   Dkt. 45 at 20; Dkt. 39 at 9.   But it is undisputed that the CHAP

Certification Board, a federal agency, certifies DHATs, Dkt. 39 at 5 ("The facts in this case are

largely undisputed."), 6 (the CHAP Board "certifies community health aides including DHATs.");

Ex. B at 8, 11, Community Health Aide Program Certification Board Standards & Procedures;[11] and

that Federal standards are in place allowing DHATs to practice if certified, Ex. B, at 17-30.

Moreover, Defendant ANTHC does not employ the DHATs. Answer, Dkt. 6 at ¶¶ 6, 21,

       Plaintiffs' incorrect factual assertions are not enough to carry their burden of proving

causation: a plaintiff must establish that the alleged injury "fairly can be traced to the challenged

action of the defendant, and injury that results from the independent action of some third party not

before the court." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976).   "[A]n

organization's abstract concern with a subject that could be affected by an adjudication does not

substitute for the concrete injury required by Art. III."   *Id.* at 40.  Here, the conduct complained of is

attributable principally to the U.S. Department of Health and Human Services' Community Health

Program Certification Board, and not to Defendants.

       The ADA's claim that "ANTHC  and Does 1–8 are the direct cause of ADA's present

---

[11] The Alaska Attorney General also recognizes this distinction in his 2005 opinion.  2005 Inf. Op. Alaska
A.G., 2005 WL 2300398, at *1 (Sept. 8, 2005) ("individuals certified as dental health aides *by the federal
Certification Board* do not have to comply with state dental licensure laws.") (emphasis added).

diversion of resources along with consequent negative impacts on membership," Dkt. 39 at 9, is (a) not alleged in Complaint; (b) not supported by any evidence; and (c) ignores that the ADA is entirely the master of its own destiny.  The decision of the ADA to file this lawsuit was its own, *see supra* at 5-6, as was its decision to embark on a lobbying effort against the CHAP dental health initiative.  Any resulting "diversion" of resources was caused by that ADA's own choice, and not by ANTHC or the "John Doe" dental health aide therapists..

The ADS's attempts to link ANTHC to purported damages is derisory:  "the unlicensed practice of dentistry deprives [ADS members] of a valuable economic right–their lawfully obtained license to practice dentistry."  Dkt. 45 at 18.  But ADS has produced no evidence that a single dentist has had any adverse license consequences because of DHATs practicing in villages.  All of the plaintiff dentists still have their licenses and their practices, and will continue to have them regardless of anything ANTHC or the dental health aide therapists have done.

### D.    Plaintiffs Have Failed to Establish Redressibility.

The plaintiffs have failed to establish that the relief they seek will redress their supposed injuries.  An injunction against ANTHC will not affect the CHAP Certification Board and will not change *CHAP Certification Board Standards and Procedures*, nor would it bind the United States Secretary of Health and Human Services or the Board itself.  The Board could obtain staffing services elsewhere, or provide its own, and continue with the training, certification and oversight activities complained of.  Neither the Secretary nor the Board are before the Court.  An injunction

issued against ANTHC would not affect their independent rights—nor their legal obligations under federal law—to continue the CHAP dental health initiative.

Similarly, a declaratory statement that the DHAT program is inconsistent with the state Dentistry Act will have no effect at all upon the federal agency implementing the program because federal law preempts state law on that point, as the Alaska Attorney General has recognized. 2005 Inf. Op. Alaska A.G., 2005 WL 2300398, at *3 (Sept. 8, 2005). A declaration that ANTHC, dental health aide therapists and the federal employees who work on the CHAP dental health initiative are misdemeanants is unprecedented and of no value whatsoever. Such a request is a classic example of an "advisory opinion" outside the jurisdiction of this Court. *Illinois v. Archer Daniels Midland Co.*, 704 F.2d 935, 941-42 (7th Cir. 1983); *cf. Cooper v. District Court*, __ P.3d __, 2006 WL 976894 (Alaska App. Apr. 14, 2006) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

### E.    Plaintiffs Lack Standing to Enforce State or Federal Law (Private Right of Action).

ANTHC pointed out in its opening memo that there is no state or federal private right of action to enforce either the Alaska Dentistry Act or the Indian Health Care Improvement Act. *See ANTHC Memo*, Dkt. 13 at 13-17. In their *Oppositions*, plaintiffs do not assert a federal right of private action, thus abandoning that point. Dkt. 45; Dkt. 39; Local Rule 7.1(d). They do, however, maintain their position that the Alaska Dentistry Act, AS 08.36, provides authority for this Court to

issue an injunction and to declare that ANTHC and the "John Doe" dental health aide therapists are criminals for allegedly practicing dentistry without an Alaska license.[12]  And, for the first time, plaintiffs assert the right to sue ANTHC and the dental health aide therapists in tort based on the alleged violation of the Dentistry Act.  Dkt. 39 at 15-17 ("Without an implied tort remedy here, the violations would likely continue to be unredressed").

> **(1)     Alaska Dentistry Act**.  Plaintiffs allege, *inter alia*, that ANTHC "flouts the State's criminal laws," citing AS 08.36.340 (misdemeanor penalties for "[a] person who violates any provision" of the Dentistry Act), Dkt. 45 at 3; that ANTHC and the "John Doe" dental health aide therapists are "violating state criminal laws," Dkt. 45 at 4; that the Dentistry Act and the Alaska Board of Dental Examiners' regulations "create … express duties upon licensed dentists to protect the public relative to dentistry," Dkt. 45 at 10; and that since the "Alaska State Dental Board has declared that DHATs are engaging in the unlawful practice of dentistry but have [sic] taken no action whatsoever," Dkt 39 at 15, "[i]t appears that only Plaintiffs will seek to protect Alaska Natives and uphold State law," Dkt. 45 at 35.

Plaintiffs have neither a statutory nor a common law basis for their position.  The Alaska Dentistry Act itself does not contain any provision creating a private right of action for its enforcement.  *See* AS 08.36.010-08.36.370.  Under AS 08.36.315 and the Alaska Administrative Procedure Act, AS 44.62.330 *et seq*., the Board of Dental Examiners has a circumscribed role in

---

[12]     *ADA Opp'n*, Dkt. 39, at 13 (asserting standing through private right of action under Alaska law); *ADS*

license actions, and acts in an adjudicative capacity, not as a prosecutor. Charges are brought and license cases are prosecuted by the Department, not by the board, as the combination of prosecutorial and adjudicative functions in the board would violate due process. *In re Robson*, 575 P.2d 771, 774-775 (Alaska 1978); *In re Walton*, 676 P.2d 1078 (Alaska 1984), *appeal dismissed sub nom. Walton v. Alaska Bar Ass'n*, 469 U.S. 801 (1984); *State v. Lundgren Pac. Constr. Co.*, 603 P.2d 889, 895-896 (Alaska 1979). The board's powers are those of a judge—weighing evidence and deciding consequences. AS 08.36.315.[13]

It is well-settled under Alaska common law that private individuals cannot prosecute charges before a licensing agency, *Vick v. Bd. of Elec. Exam'rs*, 626 P.2d 90, 95 (Alaska 1981), and cannot force a licensing agency to open an investigation or pursue a complaint. *Cf. Anderson v. Alaska Bar Ass'n*, 91 P.3d 271, 272 (Alaska 2004). The decision on whether to investigate or file license charges in the Title 08 professions is a matter of prosecutorial discretion left to the Department of Community and Economic Development, not to members of the general public or to professional associations such as plaintiffs:

_____

*Opp'n*, Dkt. 45 at 8 – 11 and 20 (same).

[13]     Plaintiffs make much of a letter sent by the Board of Dental Examiners' chair to the Attorney General on the subject of dental health aide therapists. Dkt. 45, Ex. 4 (letter from Board Chair Warren to Attorney General Renkes, Feb. 7, 2005); Dkt. 45 at 3 ("the Alaska State Dental Board determined that DHATs and the services they intend to provide constituted the unlawful practice of dentistry"); Dkt. 39 at 15 ("the Alaska State Dental Board has declared that DHATs are engaging in the unlawful practice of dentistry"). This letter has no apparent legal significance other than as an expression of the board's (or perhaps the board chair's) views. Those views were <u>considered and squarely rejected</u> by the Alaska Attorney General. 2005 Inf. Op. Alaska A.G., 2005 WL 2300398, at *1(Sept. 8, 2005) ("individuals certified as dental health aides by the

> When an agency functions to protect the public in general, as contrasted with providing a forum for the determination of private disputes, the agency normally exercises its discretion in deciding whether formal proceedings should be commenced. In matters of occupational licensure the decision to initiate proceedings for revocation or suspension is comparable to the function of a public prosecutor in deciding whether to file a complaint. Questions of law and fact, of policy, of practicality, and of the allocation of an agency's resources all come into play in making such a decision.

*Vick*, 626 P.2d at 93.

Additionally, plaintiffs' principal complaint is about what they term the "unlicensed" or "unauthorized practice of dentistry" by dental health aide therapists. *E.g.*, Dkt. 39 at 8. "Unlicensed" activity is not regulated by the Board of Dental Examiners at all, but instead is subject to the regulatory authority and prosecutorial discretion of the Commissioner of the Department of Community and Economic Affairs. AS 08.01.087 (§§ 8 and 97, ch. 163, SLA 2004, eff. July 1, 2005). The Commissioner—not the board—"may, *if the commissioner considers it in the public interest*, … issue an order directing the person to stop the act or practice." AS 08.01.087(b)(1) (emphasis added). The "unlicensed" person is entitled to "reasonable notice of and an opportunity for a hearing" before an order issues, except in emergency situations. *Id*.

The Commissioner's order, if ignored, may be enforced in the Superior Court. AS 08.01.087(b)(2). At that point, the prosecutorial discretion of the Attorney General becomes involved: "if the means of enforcement is litigation in the courts, assessment of the strengths of the

---

federal Certification Board do not have to comply with state dental licensure laws").

case and the decision to litigate itself fall within the exclusive prosecutorial discretion of the attorney general." 1998 Op. Alaska Atty. Gen. 146 (June 4, 1998) (citing *Pub. Defender Agency v. Super. Ct.*, 534 P.2d 947, 950 (Alaska 1973)) (the "attorney general is empowered to bring any action which he thinks necessary to protect the public interest, and he possesses the corollary power to make any disposition of the state's litigation which he thinks best … the exercise of that discretion within constitutional bounds is not subject to the control or review of the courts. To interfere with that discretion would be a violation of the doctrine of separation of powers"). Enforcement of the Dentistry Act is thus left, by statute, to the sound discretion of the Commissioner and the Attorney General. At no point does the Act provide for private enforcement.[14]

Nor does the common law—either state or federal—provide plaintiffs with standing

---

[14] *Vick*, 626 P.2d at 94; *cf. Reed v. Municipality of Anchorage*, 782 P. 2d 1155, 1157 (Alaska 1989) ("Courts uniformly hold that health and safety legislation such as AS 18.60.089 does not create a private cause of action *in the absence of explicit language to that effect*."). Plaintiffs' secondary argument that adoption of the ADA Code of Ethics by reference in the board's regulations requires them to bring this action or face license discipline is without merit. *Cf. Save Our Valley v. Sound Transit*, 335 F.3d 932, 937 (9th Cir. 2003) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. [I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.") (internal citations and emphasis omitted). Similarly, under Alaska law whether there is an implied private right of action in a statute is also a question of the *legislature's* intent. *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1374 (Alaska 1993) (citing *Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 770 (1981)).

---

to bring this action. To the contrary: the Alaska Court of Appeals recently rejected a private litigant's attempt to prosecute a sentence appeal in a domestic matter, relying on the United States Supreme Court's and other States' long-established rejection of private prosecutions. *Cooper v. District Court*, __ P.3d __, 2006 WL 976894 (Alaska App. Apr. 14, 2006) ("By the twentieth century, it was firmly established that 'in American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.").

        **(2) Proposed Tort Remedy.** Plaintiffs also propose that this Court should recognize an "implied tort remedy" under which they can sue ANTHC and the "John Does." Dkt. 39 at 15 ("Without an implied tort remedy here, the violations will likely continue to be unredressed."). It is undisputed that the Alaska Supreme Court has not recognized such a tort. Under the facts of this case, there is no reason to do so. As ANTHC noted in its opening memo, Alaska law has only in limited circumstances implied private causes of action sounding in tort from the violation of professional licensing laws, and only when a specific statute is clearly intended to benefit a private class of individuals and where "there are no other apparent remedies." *Hendsch v. Alaska Bd. of Marine Pilots*, 950 P.2d 98, 105 (Alaska 1997). There is no indication that the Dentistry Act was meant to "benefit a private class" of dentists and dental associations by protecting

DEF'S REPLY IN SUPPORT OF MOTION TO DISMISS (STANDING)        Page 25
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al.*;
Case No. 3:06-CV-0039 (TMB)

their economic monopoly.  *Vick*, 626 P.2d at 90.   The Dentistry Act does have ample remedies to protect the public, including remedies for enforcing the Act against "unlicensed" activities.   AS 08.01.087 (§§ 8 and 97, ch. 163, SLA 2004, eff. July 1, 2005).

   Plaintiffs are dissatisfied with the State of Alaska's "failure" to prosecute ANTHC and the dental health aide therapists.  They conclude, *non sequitur*, that "existing remedies are clearly not adequate" to address violations.  Dkt. 39 at 15.  The first major problem for plaintiffs is that, in this instance, the Dentistry Act does not apply to the conduct they oppose, as the Alaska Attorney General has formally recognized,[15] and thus there is no underlying statutory violation from which to construct a tort.[16]  Even if a violation were shown, a proposed tort must be scrutinized carefully under the six factors identified by the Alaska Supreme Court:

> The Restatement (Second) of Torts lists the factors that help a court to determine whether or not a statute implies a private cause of action. The factors include the nature of the legislative provision, the adequacy of existing remedies, the extent to which a tort action will interfere with existing remedies, the importance of the purpose of the provision, how drastically the new tort will change the law, and the burden the new tort will place on the

---

[15] 2005 Inf. Op. Alaska A.G., 2005 WL 2300398, at *1 (Sept. 8, 2005) ("individuals certified as dental health aides by the federal Certification Board do not have to comply with state dental licensure laws").

[16] Nor can plaintiffs establish the existence of a "special relationship" that might justify a tort cause of action under the Alaska Supreme Court's insurance cases.  Those are distinguishable on the subject matter alone—duties arising in the insured/insurer/agent relationship context are *sui generis* and have no bearing here, where ANTHC and the dental health aide therapists have no contractual, statutory or other "special relationship" with the plaintiffs, *compare Peter v. Schumacher Enters., Inc*., 22 P.3d 481, 487 (Alaska 2001) (tort action may be justified if  "a 'special relationship' exists between the insured and the insurance agent"); *see also O.K. Lumber Co. v. Providence Wash. Ins. Co*., 759 P.2d 523, 526-27 (Alaska 1988); *Doyle v. Peabody*, 781 P.2d 957, 959-60 (Alaska 1990).

DEF'S REPLY IN SUPPORT OF MOTION TO DISMISS (STANDING)     Page 26
*The Alaska Dental Society, et al. v. The Alaska Native Tribal Health Consortium, et al.*;
Case No. 3:06-CV-0039 (TMB)

court system.

*Hendsch*, 950 P.2d at 104-105, citing Restatement (Second) of Torts § 874A cmt. h (1977); *accord Peter*, 22 P.3d at 488.

ANTHC disagrees with plaintiffs' analysis of these factors. (1) The "nature of the legislative provision"—plaintiffs cite to AS 08.36.100, "License Required"—cuts against a tort remedy. Halting "unlicensed activity" is a police power function, and the Act properly places enforcement authority over "unlicensed activity" with the Commissioner and the Attorney General. AS 08.01.087. The present case shows precisely why "private Attorneys General" are a poor idea: private economic and personal interests will be the motivating forces in tort actions, rather than the public interest. (2) The "adequacy of existing remedies" factors is addressed above – the State of Alaska has multiple and strong remedies for violations of the Act. That plaintiffs believe those remedies should be employed here, while the State does not, does not show that the remedies themselves are inadequate. (3) The "extent to which a tort action will interfere with existing remedies" should be self-evident. There are thirty-six professions regulated under Title 08. *See* AS 08.01.010. Delegating the police powers of the State of Alaska to professional associations, to professional rivals or competitors, and to the general public at large will most assuredly interfere with the State's licensing scheme. A host of private Attorneys General enforcing the professional licensing laws as they see fit, through injunctions and tort actions, will lead to chaos and confusion, both for the professionals and the public. (4) The "importance of the purpose of the provision," *i.e.*,

licensing dentists, is self-evident as a general matter.  The benefits of creating a tort remedy so that

state licensed dentists can sue federally-certified dental health aide therapists practicing in Alaska's

villages are not so apparent.  (5)  Recognizing a "new tort" will inescapably  "drastically … change

the law."  Alaska, like most states, has a well-developed and long-established system of licensing

professionals.  AS 08.01.010 *et seq.* (Centralized Licensing); AS 44.62.330 *et seq.* (Administrative

Procedure Act).  Allowing private enforcement of the licensing laws would be a drastic change to

this system, and would require (among other changes) overruling *Vick v. Board of Electrical

Examiners* and *Cooper v. District Court*, *supra*.  Last, (6) "the burden the new tort will place on the

court system," while not precisely quantifiable, would be significant.  Instead of potential

enforcement actions being screened by the Department and the Attorney General, with proceedings

handled in an orderly fashion by the State's administrative law judges, any aggrieved individual

could file suit and ask the Alaska Court System to impose tort damages against a dentist or other

professional for violation of any licensing statute or regulation.  The burden on the courts would be

substantial; the costs of doing business for professionals licensed in the State would be

extraordinary.

       Plaintiffs have not met their burden to justify the creation of an "implied tort

remedy," *Hendsch*, 950 P.2d at 104-105, nor have they raised any significant issues that merit

certification of this issue to the Alaska Supreme Court.

       The absence of a private right of action for both claims asserted by plaintiffs deprives

plaintiffs of standing to bring this suit and further deprives such claims of legal merit.

#### F.    CONCLUSION.

For reasons discussed above and in *ANTHC Memo*, Dkt. 13, the motion to dismiss should be granted.

Dated May 12, 2006, at Anchorage, Alaska.

Respectfully submitted,

/s/ *Aaron M. Schutt*

By: _____

Myra M. Munson
Alaska Bar No. 8011103
Richard D. Monkman
dick@sonoskyjuneau.com
Alaska Bar No. 8011101
Aaron M. Schutt
Alaska Bar No. 0011084

I hereby certify that on the 12th day of May, 2006, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss was served electronically addressed to:

Thomas V. Van Flein.
tvf@cplawak.com

Douglas J. Serdahely, Esq.
dserdahely@pattonboggs.com

/s/ *Aaron M. Schutt*

_____

Aaron M. Schutt