DAVID W. MÁRQUEZ
ATTORNEY GENERAL
Paul R. Lyle
Michael G. Hotchkin
Sr. Assistant Attorneys General
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5234
Fax: (907) 279-2834
Paul_Lyle@law.state.ak.us
Michael_Hotchkin@law.state.ak.us

Attorney for the State of Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA DENTAL SOCIETY, THE AMERICAN DENTAL ASSOCIATION, DR. T. HOWARD JONES, DR. MICHALE BOOTHE, DR. PETE HIGGINS and DR. GEORGE SHAFFER, Plaintiffs<br><br>v.<br><br>THE ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and DOES 1 through 8, Defendants<br><br>STATE OF ALASKA, Intervener | *State's Motion to Deny Plaintiffs' Standing Based on an Implied State Law Private Right of Action to Enforce the Alaska Dentistry Act (AS 08.36)*<br><br>Case No. 3:06-CV-0039 (TMB) |

The Court should reject the plaintiffs' argument predicating Article III standing upon an implied state law private right of action to enforce Alaska's dental licensure statute. While the state takes no position as to whether the plaintiffs otherwise have standing to bring this action, Alaska does not recognize an implied private right of action to enforce state occupational licensing laws. The plaintiffs' assertion of standing

based on an implied private right of action would, if accepted by this Court, usurp the enforcement power vested exclusively in state officials under Alaska law.

## I.     Introduction

### 1.     Background

One section of the Indian Health Care Improvement Act (25 U.S.C. § 1616*l*), applicable only in Alaska, mandates the creation of the Community Health Aide Program (CHAP) Certification Board and requires the board, *inter alia*, to adopt standards for training, certifying and monitoring health aides for deployment in rural Alaska villages.  Under the CHAP program, dental health aide therapists are to provide dental care within the scope of the goals set by Congress for American Indians and Alaska Natives set out in the IHCIA at 25 U.S.C. § 1602.  The CHAP Board certifies and authorizes dental therapists to perform certain procedures while employed by Native health clinics under the Community Health Aide Program.

In a 2005 informal opinion, the state Office of the Attorney General concluded that enforcement of state dental licensure laws would obstruct the accomplishment of the congressional objectives of 25 U.S.C. § 1616*l*.    2005 *Inf. Op. Att'y Gen.* (Sep 5; 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), 2005 WL 2300398 (Alaska A.G. 2005).  Under the doctrine of "conflict preemption," the state determined that state dental licensure laws are preempted as applied to dental health aide therapists who provide dental services within the scope of the Community Health Aide Program and their federal certifications.  *Id.* at 12-15, 2005 WL 2300398 at *6-*7.  Therefore, dental health aide therapists employed under the Community Health Aide Program and acting within its

scope are not required to obtain state dentist licenses in order to engage in the activities for which they have been federally certified by the CHAP Certification Board.

The plaintiffs' complaint (Dkt. 1, Exhibit A at 18) seeks a declaration that dental health aide therapists and the Alaska Native Tribal Health Consortium are violating AS 08.36.100, which provides: "Except as provided in AS 08.36.238, a person may not practice, or attempt to practice, dentistry without a license and a current certificate of registration."[1]  The violation of this law is a Class B misdemeanor.[2]  AS 08.36.340.  The plaintiffs seek a declaration that federally-certified dental health aide therapists and the Consortium are violating AS 08.36.100. They also seek an order enjoining the therapists from engaging in the practice of dentistry until they obtain state licenses and enjoining the Consortium from employing the unlicensed therapists. *Complaint*, ¶¶ 51, 53, 54, Dkt. 1, Exhibit A at 18-19.[3]

---

[1]  The exception in §.238 is for full-time students of accredited schools of dentistry practicing under the direct supervision of a state-licensed member of the faculty in a clinical program approved by the state dental board.  Dental health aides do not fall within this exception.

[2]  The Alaska Dental Society's opposition to the motion to dismiss twice alleges that the Consortium is violating the state's criminal laws.  *ADS Opposition to Motion to Dismiss*, Dkt. 45 at 3, 4.  The plaintiffs' complaint (which was filed on behalf of all plaintiffs in this action) alleges that the conduct of the Consortium and dental health aide therapists constitutes a crime. *Complaint*, ¶ 22, Dkt. 1, Exhibit A at p.11.

[3]  Alternatively, the plaintiffs seek a declaration that the therapists and the Consortium are acting outside of the scope of the congressional dental health objectives of the Community Health Aide Program and seek an order enjoining them from doing so.  *Complaint*, ¶¶ 58, 60, 61, Dkt. 1, Exh. A at pp. 20-21.

### 2. The Consortium's Motion to Dismiss and the Plaintiffs' Oppositions

The Consortium removed the case to this Court and filed a motion to dismiss claiming that the dental associations and the individual dentists lack standing to bring the action. Dkt. 12 and Dkt. 13. The dentists and their respective professional associations oppose. Dkt. 39 and Dkt. 45.

In their opposition, the American Dental Association ("ADA") and Dr. Jones assert (among other grounds) that they have standing to bring this action because they have an implied right of action under Alaska law to enforce AS 08.36.100. *ADA Opposition to Motion to Dismiss*, Dkt. 39, at 13-16. The Alaska Dental Society ("ADS") and Drs. Boothe, Higgins and Shaffer, Alaska state-licensed dentists, oppose the Consortium's motion to dismiss by alleging, in part, that they "have statutory standing under Alaska law" to enforce AS 08.36.100. They claim that a provision of the American Dental Association's Principles of Ethics, adopted by the state dental board, creates an implied right of private action to enforce the Dentistry Act against those who practice dentistry in Alaska without a license. *ADS Opposition to Motion to Dismiss*, Dkt. 45 at 8-11, 21-30.

The State of Alaska has moved to intervene and opposes the plaintiffs' claims that Alaska law recognizes an implied private right of action to enforce AS 08.36.100 or that state law otherwise creates "statutory standing" for private enforcement of the state's dental licensing laws. State law grants the state exclusive authority to enforce dental licensure laws.

## II. Argument

The state agrees with the plaintiffs that the underlying purpose of the Dentistry Act is to protect the public. *Complaint*, ¶11, Dkt. 1, Exh. A at p. 8 ("Licensure is necessary to protect the public health . . . ."); *Complaint*, ¶26, Dkt. 1, Exh. A at p. 13 (State law dentistry education and training "standards are necessary to protect the public health."); *Motion for Remand and/or Abstention*, Dkt 14, at 12 (noting that the state's police power to license professionals "is grounded in the notion" of protecting its citizens and "to protect the[ir] welfare."); *see also Vick v. Board of Electrical Examiners*, 626 P.2d 90, 93 (Alaska 1981) (recognizing that in administering the state's occupational licensing statutes the Department of Commerce, Division of Occupational Licensing "functions to protect the public in general."); and *Turek v. St. Elizabeth Community Health Center*, 488 N.W.2d 567, 571 (Neb. 1992) ("Most licensing statutes, such as those applicable to automobile drivers or physicians, have been construed as intended only for the protection of the public against injury at the hands of incompetents … .") (citation and inner quotation marks omitted).[4]

Because the purpose of the Dentistry Act is to protect public health and safety, a private right to enforce it does not exist in the absence of an *explicit* statutory provision permitting such action. *Reed v. Municipality of Anchorage*, 782 P.2d 1155,

---

[4] A necessary counterpoint to this rule is that occupational licensing statutes do not exist to protect licensees' financial interests or to provide a mechanism to mediate their private disputes. *Vick*, 626 P.2d at 93 (The agency administering the state's occupational licensing statutes "functions to protect the public," not to provide "a forum for the determination of private disputes."); *Turek*, 488 N.W. 2d at 571 (occupational licensing statutes are designed to protect the public from "injury at the hands of incompetents and to create no liability where the actor is in fact competent but unlicensed.").

1157 (Alaska 1989) ("Courts uniformly hold that health and safety legislation such as [Alaska's OSHA] does not create a private cause of action *in the absence of explicit language to that effect.*") (emphasis in original, footnote omitted). As explained below, *Vick* earlier applied the same rule to deny a private right to enforce Alaska's occupational licensing laws, of which the Dentistry Act is a part. *Vick*, 626 P.2d at 94 (requiring an express statutory authorization for private, third-party initiation of professional disciplinary proceedings).

The State Dentistry Act is codified in Title 8, Chapter 36 of the Alaska Statutes (AS 08.36.010 -- AS 08.36.370). AS 08.36.100 prohibits a person from practicing dentistry without a license. This prohibition may be enforced by a criminal prosecution or through a civil action. AS 08.36.340; AS 08.01.087. In either case, the decision as to (1) whether AS 08.36.100 is being violated, (2) whether to enforce the Act against a violator and (3) the manner of enforcement are all vested solely in government officials. The legislature has enacted a comprehensive government-initiated and government-controlled enforcement regime for the violation of AS 08.36.100. The plaintiffs present no evidence that the legislature intended to authorize a private party to enforce the Dentistry Act.

### 1. Criminal Law Enforcement

AS 08.36.340 provides: "A person who violates any provision of this chapter or regulations adopted under this chapter for which no specific penalty is provided is guilty of a class B misdemeanor." AS 08.36 does not provide a specific

penalty for practicing dentistry without a license.[5]  Thus, the unlicensed practice of dentistry is a class B misdemeanor under section .340.

In Alaska, the attorney general is vested with sole discretion to initiate a criminal prosecution for an alleged violation of state law.  In *Public Defender Agency v. Superior Court, Third Judicial District*, 534 P.2d 947 (Alaska 1975), the Alaska Supreme Court, relying on AS 44.23.020(b)(3) [now AS 44.23.020(b)(4)], held that the attorney general is vested with "discretionary control over the legal business of the state, *both civil and criminal*, includ[ing] the *initiation*, prosecution and disposition of cases."  (emphasis added).  *Id.* at 950.

---

[5]  Contrary to the ADA's and Dr. Jones' assertion, AS 08.36.070(a)(4) does not grant the Board of Dental Examiners authority to initiate hearings against unlicensed individuals allegedly practicing dentistry or to impose sanctions upon them.  , Dkt. 39 at 13 and footnote 9.

Although AS 08.36.070(a)(4) and (a)(6) authorize the dental board to "hold hearings and order the disciplinary sanction of a person who violates this chapter," and to enforce Chapter 36, the board's hearing authority is limited to matters concerning state-*licensed* dentists, including those with suspended or lapsed licenses.  AS 08.36.315 (limiting the dental board's hearing power under §.070(a)(4) to disciplinary hearings concerning licensed dentists); *see also State v. Smith*, 593 P.2d 625, 629 (Alaska 1979) ("The function of AS 08.36.310 [now AS 36.30.315] is to detail the scope of the power . . . given to the Board of Dental Examiners by AS 08.36.070(5) [now AS 08.36.070(4)]."); *and see* AS 08.36.317 (authorizing the board to impose a civil fine "in a *disciplinary* action.") (emphasis added).  The dental board is also authorized to hold hearings on appeals from licensure denials under the state's Administrative Procedure Act, made applicable to the board by AS 08.36.080.  However, the dental board has no authority to hold hearings concerning, to impose sanctions on, or to take any other action against an *unlicensed* person.

The dental board wrote a letter to the Alaska Attorney General relating its concern that dental health aide therapists would be practicing dentistry without a license and asking the Department of Law to "take appropriate action that it would normally take against a person who is practicing a profession without a license." Feb. 7, 2005 letter to Attorney General Renkes, Dkt 43, Exhibit 4, page 2.  The August 2005 informal opinion described above was the Department of Law's response to this letter.  The Department of Law found that the state dental licensing statutes were preempted.

> When an act is committed to executive discretion, the exercise of that discretion within constitutional bounds is not subject to the control or review of the courts. To interfere with that discretion would be a violation of the separation of powers.

*Id*. The Court went on to hold "that the Attorney General cannot be controlled in either his decision of whether to proceed, or in his disposition of the proceeding," noting that "the discretion of the Attorney General is plenary" and the exercise of that discretion is "beyond the control of any other officer or department of the state."[6] *Id.* at 950-51 (citations and inner quotation marks omitted).

The attorney general's plenary discretion over prosecutorial decisions preempts not only the actions of other state agencies and the courts but private parties as well. The Alaska Court of Appeals recently held that the victim of a crime has no standing to challenge prosecutorial decisions. *Cooper v. District Court*, --- P.3d ---, 2006 WL 976894 (Alaska App. Apr. 14, 2006). In reviewing the history of criminal law from its roots in England to the modern era, the court held: "[b]y the twentieth century, it was firmly established 'in American jurisprudence . . ., [that] a private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another . . . .'" *Cooper*, *id.* at *6 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) (ellipses in original, first bracketed word added, second bracketed word in original). The court underscored the "societal benefits of having an objective government official, as opposed to a person whose personal interests were at stake,

---

[6] While *Public Defender* addressed the attorney general's authority in the context of a civil contempt proceeding, its holding applies equally in criminal proceedings. *State v. Carlson*, 555 P.2d 269, 271-72 (Alaska 1976); *see also*, *State v. District Court*, 53 P.3d 629, 631 (Alaska App. 2002) (Collecting "Alaska cases [that] have reaffirmed that the executive branch has broad discretion to decide whether to initiate criminal charges and, if so, what charges to bring.") (citations omitted).

*decide whether a citizen should be charged with a crime . . . ." Id.* (emphasis added). Those affected by an alleged crime are not permitted to obtain retribution through criminal prosecutions.

> Rather, criminal conduct is seen as an injury to the community. Criminal prosecutions are undertaken in the name of the community, and *the executive branch of government* (as the representative of the community) *has the sole responsibility and authority* to initiate and litigate criminal cases . . . .

*Cooper*, *id.* at *20 (emphasis added).

Criminal enforcement against alleged violators of AS 08.36.100 is vested solely with the attorney general.[7] There is no private right of action to enforce the state's criminal laws.

### 2. Civil Law Enforcement

Under AS 08.01.087(b)(2), an order enjoining a violation of a state occupational licensing statute may be obtained only at the behest of the Commissioner of the Department of Commerce, with the concurrence of the affected professional board, acting through the attorney general, who, by virtue of AS 44.23.020(a)(3) and (a)(5), controls all legal advice to state agencies and all litigation brought in the name of the state.

AS 08.01.050(a) vests Title 8 inspection, enforcement and investigative authority in the Commerce Department. AS 08.01.050(a)(19). The Commerce

---

[7] The Commissioner of the Department of Commerce, Community, and Economic Development may issue a citation for violation of a license requirement. AS 08.01.102. However, the citation must be filed in court and can thereafter be disposed of only by trial or the official action of a judge, magistrate or prosecutor. AS 08.01.103(d). Thus, the attorney general exercises prosecutorial discretion under the citation procedure as well.

Department's power to investigate includes determining "whether a person has violated . . . a provision of" Title 8. AS 08.01.087(a)(1). Thus, AS 08.01.087(a) grants *sole* authority to *the department* to investigate whether a person is engaged in the unlicensed practice of a Title 8 occupation. By contrast, the dental board may only hold hearings concerning licensees and those denied licenses, as explained at footnote 5, *supra.* The board is limited to *requesting* the Commerce Department to investigate alleged violations of its laws and regulations by unlicensed persons. AS 08.01.070(4). The dental board has no authority to investigate, to initiate hearings concerning, or to sanction an unlicensed person acting in violation of AS 08.36.100.

Civil enforcement actions following a Title 8 investigation are addressed in AS 08.01.087(b). This statute vests enforcement discretion in the Commerce Department commissioner by providing, in relevant part:

> If it appears to the commissioner that a person has engaged in or is about to engage in an act or practice in violation of . . . a provision of this title . . . the commissioner *may, if the commissioner considers it in the public interest*, and after notification . . . to all board members, . . . unless a majority of the members of the board object within 10 days,
> (1) issue [a cease and desist order] . . .;
> (2) bring an action in superior court to enjoin the acts or practices and to enforce compliance with . . . a provision of this title . . . .

(emphasis added).

The Alaska Supreme Court has construed section .087's discretionary enforcement authority to preclude initiation of a private enforcement action. *Vick v. Board of Electrical Examiners*, 626 P.2d 90 (1981). In that case, Vick filed an accusation against a licensed electrical administrator. The division of occupational licensing reviewed the accusation but refused to take action, citing a board decision not

Motion to Deny Private Standing                                                                 Page 10 of 19
*Alaska Dental Society, American Dental Association & Dr. Jones, Dr. Boothe
Dr. Higgins & Dr. Shaffer v. The Alaska Native Health Consortium & Does
1 thru 8,* 3:06-CV-0039 (TMB)

to apply new experience requirements retroactively, legal advice from the Department of Law, and the division's determination that discrepancies in the respondent's license application were insufficient to warrant a disciplinary proceeding. *Id.* at 91-92. The division of occupational licensing also concluded that only the agency could commence and prosecute a disciplinary proceeding. *Id.* at 92. The supreme court affirmed the division's decision to forego enforcement, equating the division's discretionary enforcement authority under AS 08.01.087 to that of a public prosecutor and holding that its enforcement decisions were not reviewable by the courts:

> In matters of occupational licensure the decision to initiate proceedings for the revocation or suspension is comparable to the function of a public prosecutor in deciding whether to file a complaint.[*] Questions of law and fact, of policy, of practicality, and of the allocation of an agency's resources all come into play in making such a decision. The weighing of these elements is the very essence of what is meant when one speaks of an agency exercising its discretion.
>
> _____
>
> [*] Prosecuting power includes not only criminal prosecution, but also civil proceedings such as license suspension and revocation. . . . .

*Id.* 93 and n.4 (citation in footnote omitted).

Significantly for the present case, the court explained that the "agency functions to protect the public," not to "provid[e] a forum for the determination of private disputes," *id.* at 93, and went on to decide that Vick could not, as a private citizen, compel the agency to investigate or initiate a disciplinary proceeding: "Most courts hold that unless the statute governing the particular agency *expressly* permits third parties to initiate disciplinary proceedings, such authority is not implied." *Id.* at 94 (emphasis added, citations omitted). In the absence of arbitrary and capricious conduct

by an agency, the court held that it had no authority to review an agency decision not to enforce and concluded that there was no implied "legal power of a private citizen to compel agency action by the filing of an accusation."[8] *Id.* at 95.

The commissioner and the attorney general are vested with sole discretion to investigate and initiate civil suits seeking to enjoin the actions of unlicensed persons who violate AS 08.36.100.

### (a) Standing cannot be premised on an implied right of action under a state regulation.

The ADS and Drs. Boothe, Higgins and Schaffer separately assert "statutory standing" to bring this action under state law that "at a minimum create[s] an implied right of action." *ADS's Opposition to Motion to Dismiss*, Dkt. 45 at 8-9, 21-30. They base their claim of an implied private right to enforce the Dentistry Act on a dental board regulation that adopted the ADA Principles of Ethics and Code of

---

[8] The court noted that there may be "extreme situations where an agency withholds action so unreasonably that it amounts to arbitrary and capricious behavior, requiring judicial intervention." *Vick*, 626 P.2d at 95. The refusal of the state to enforce the licensing law in *Vick* was not an extreme situation requiring judicial intervention because the agency had "acted within its jurisdictional boundaries and . . . exercised the discretion which was committed to it by the legislature." *Id.* Earlier in its opinion, the court observed that the state had plausible reasons for not enforcing the statute at issue, including legal advice from the attorney general. *Id.* at 91, 92. Because the state had considered the disciplinary request and had exercised its discretion, its action was not arbitrary, and thus not reviewable.

In the case of dental health aide therapists, the state carefully considered the actions of the therapists and the Consortium and the legal context under which they operate. The state determined, in a published informal opinion of the attorney general, that federal law preempted the state's Dentistry Act, rendering state licensing standards inapplicable to the Consortium and the therapists when acting within the scope of 25 U.S.C. § 1616*l*. The state's forbearance based on that opinion is reasonable and does not "amount[] to arbitrary and capricious behavior, requiring judicial intervention." *Vick*, 626 P.2d at 95.

Professional Conduct. The code includes a "beneficence" principle indicating that dentists should serve their patients and the public at large.

Whether there is an implied private right of action in a statute is a question of the *legislature's* intent. *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1374 (Alaska 1993) (citing *Universities Research Ass'n. v. Coutu*, 450 U.S. 754, 770 (1981)). An implied private right of action to enforce a statute cannot be premised on a regulation. This point is illustrated in *Loffredo v. Center for Addictive Behaviors*, 689 N.E.2d 799 (Mass. 1998).

In *Loffredo*, the court underscored the elementary principle that "[t]he rulemaking power granted to an administrative agency charged with administration of a federal statute is not the power to make law [but] [r]ather the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Id.* at 802. The court concluded that inferring a private cause of action solely from a regulation "requires a twofold stretch: the judiciary infers a cause of action not to supplement a statute enacted by the Legislature, but to supplement a rule enacted by the executive, which itself supplements the statute." *Id.* The court refused to imply a right of action based solely on a regulation because doing so would "run the risk of [the court] joining with the executive to revise and substantially go beyond the will of the Legislature." *Id.* at 803.

Far longer than the twofold stretch that the court was loathe to make in *Loffredo* is the fivefold stretch the plaintiffs ask this Court to make. They ask the Court to infer a private right to enforce AS 08.36.100 based on (1) an *implied* obligation for

Motion to Deny Private Standing   Page 13 of 19
*Alaska Dental Society, American Dental Association & Dr. Jones, Dr. Boothe*
*Dr. Higgins & Dr. Shaffer v. The Alaska Native Health Consortium & Does*
*1 thru 8,* 3:06-CV-0039 (TMB)

dentists to file lawsuits to enforce dental licensing laws,[9] which, in turn, is (2) drawn from an ADA ethical principle encouraging dentists to serve "the public at large," which, in turn, is (3) adopted by a board regulation[10] covering ethics -- and that is itself silent on private rights of action -- which, in turn, is (4) promulgated under the general regulatory authority granted to the dental board under the Dentistry Act[11] that, in turn, (5) grants *no* authority to the board to investigate or adjudicate the actions of unlicensed individuals.  The ADS and its member-plaintiffs stretch the concept of *legislative* intent well past the breaking point.

The court in *Loffredo* was also loathe to find an implied private right of action where the licensing statute included a comprehensive enforcement scheme and there was no legislative history indicating private enforcement was intended. *Loffredo*, 689 N.E.2d at 803-04; *see also Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. App. 2004) (A licensing statute designed to protect the general public and providing a comprehensive enforcement mechanism that is "placed in the hands of the State" does not give rise to an implied private right of action to enforce the licensing statute).

Like the licensing statute in *Loffredo*, the state Dentistry Act includes a comprehensive enforcement scheme, including criminal enforcement and multi-faceted civil enforcement (AS 08.36.340, AS 08.01.087, AS 08.01.102--.104), to be

---

[9]   The ADA ethical principle the plaintiffs cite, Dkt 43, Exh. 5 at 2-3, (The Beneficence Principle) nowhere states that dentists are ethically obligated to institute lawsuits to enforce alleged violations of occupational licensing laws.

[10]   12 AAC 28.905(b).

[11]   AS 08.36.070(a)(6) (granting authority to dental board to "adopt or amend the regulations necessary to make the provisions of this chapter . . . effective.")

Motion to Deny Private Standing                                                                 Page 14 of 19
*Alaska Dental Society, American Dental Association & Dr. Jones, Dr. Boothe*
*Dr. Higgins & Dr. Shaffer v. The Alaska Native Health Consortium & Does*
*1 thru 8,* 3:06-CV-0039 (TMB)

implemented exclusively at the discretion of state officials under their assessment of the public interest. The plaintiffs offer no evidence that the legislature intended to authorize private citizens to pursue alleged violators of the state's occupational licensing statutes. As *Vick* holds, "unless the statute . . . expressly permits third parties to initiate disciplinary proceedings, such authority is not implied." *Vick*, 626 P.2d at 94 (emphasis added).

In this case, the plaintiffs seek to do indirectly what the court in *Vick* held plaintiffs can not do directly -- enforce a state occupational licensing statute in total disregard of the reasoned, discretionary decision of state officials that the statute does not apply to the facts and circumstances of the case. The plaintiffs' legal action may take a slightly different form than Vick's action by seeking a court injunction rather than enforcement under the provisions of the Administrative Procedures Act, but they seek essentially the same result, private enforcement of the state's occupational licensing scheme. *Vick* held that, even by way of a civil action, pursuit of this essentially prosecutorial function by private citizens is not permitted. *Vick*, 626 P.2d at 93.

Therefore, regardless of whether the plaintiffs may have other grounds for Article III standing, they cannot premise their standing upon a private right to enforce Alaska's occupational licensing laws.

**(b) *Peter v. Schumacher* does not apply.**

The ADA and Dr. Jones argue that a private right of action may be inferred from AS 08.36 under the analysis of *Peter v. Schumacher*, 22 P.3d 481 (Alaska 2001). *Peter* is inapposite for the following reasons.

First, the supreme court's decision in *Vick* directly addressed enforcement of Alaska's occupational licensing statutes and thus controls this issue.[12] *Vick* held that implied private enforcement of the state's occupational licensing laws is not permitted in the absence of explicit statutory authorization. No Alaska statute explicitly authorizes the initiation of proceedings by private individuals against unlicensed persons allegedly violating the Dentistry Act.

Second, *Peter* recognizes an implied private right to file a *tort* action to enforce the s*tatutorily-created duty* of an insurance company to inform an insured of available coverage limits. *Peter,* 22 P.3d at 488. The plaintiffs in this case have not filed a tort claim against the Consortium and the therapists. They do not seek damages. Rather, plaintiffs want a declaration that the therapists and the Consortium are violating AS 08.36.100 and an injunction prohibiting future action that would constitute a violation of that statute. *Motion for Remand and/or Abstention*, Dkt 14, at 2 ("This suit is an action to seek a declaration about, and enforce, state law which prohibits the unlicensed practice of dentistry within the State of Alaska.")

Third, in *Peter*, AS 21.89.020 affirmatively required insurance agents to inform prospective insureds of available coverage limits in the context of a relationship between insurance companies and their insureds. *Id.* AS 08.36.100 does not create a legal relationship between dentists and unlicensed persons nor does it impose upon unlicensed persons a duty toward dentists or dental associations. AS 08.36.100 is an occupational licensing statute that protects the public at large. It is not privately

---

[12] *Peter* involved a statute that regulates the insurance industry, not an occupational licensing statute.

enforceable without an explicit provision allowing third party enforcement. *Vick*, 626 P.2d at 94; *Reed*, 782 P.2d at 1157.

Fourth, as the court in *Peter* observed, recognizing an implied private right of action is not favored where the statutory scheme contains "an elaborate enforcement system" because such a system "giv[es] rise to an implication of exclusivity." *Peter*, 22 P.3d at 488 (citation and inner quotation marks omitted). The legislature has enacted a comprehensive enforcement system for AS 08.36 that expressly vests government officials with broad discretion to decide whether and when to investigate and enforce AS 08.36 against unlicensed persons through criminal prosecutions, citations, cease and desist orders and civil injunctions. By implication, the statutory structure leaves no room for private enforcement.

Finally, *Peter* involved the right of a private plaintiff to recover money damages suffered as a direct result of a regulated entity's failure to comply with state law. The statute, logically construed, existed to protect the insured in an insurer-insured relationship. The enforcement of a licensing statute does not inure to the benefit of any particular individual or organization, but to the general public. The *Vick* court found no private right of action for a plaintiff to revoke the license of an electrician who allegedly violated a licensing statute, even assuming the accusation against him was true. *Vick* 626 P.2d at 91 and 93 (noting that the electrician did not meet recently adopted experience requirements and observing that the agency conceded the discrepancies underlying a fraud claim.)

There is no similarity between the private right of action recognized in *Peter* and the right sought by plaintiffs in this case -- to substitute their judgment for the

judgment of state officials vested with plenary discretion to enforce the state's occupational licensing laws and to enforce a statute that the attorney general has determined is unenforceable under the particular facts and circumstances presented here.

**Conclusion**

The plaintiffs may not predicate Article III standing on a state-law implied private right to enforce AS 08.36.100 because state law recognizes no such private right of action.

DATED this 12th day of May in Anchorage, Alaska.

        DAVID W. MÁRQUEZ
        ATTORNEY GENERAL

By:
    /s/ Paul R. Lyle
    Sr. Assistant Attorney General
    Attorney General's Office
    1031 W. Fourth Avenue, Suite 200
    Anchorage, AK  99501
    (907) 451-2811 (Phone)
    (907) 451-2846 (Fax)
    OPE_ECF@law.state.ak.us
    Alaska Bar No.  8408072


By:
    /s/ Michael G. Hotchkin
    Sr. Assistant Attorney General
    Attorney General's Office
    1031 W. Fourth Avenue, Suite 200
    Anchorage, AK  99501
    (907) 269-5234 (Phone)
    (907) 279-2834 (Fax)
    OPE_ECF@law.state.ak.us
    Alaska Bar No. 8408072

**CERTIFICATE OF SERVICE**

This is to certify that on May 12, 2006, a true and correct copy of the **MOTION TO DENY PRIVATE STANDING** in this proceeding was served electronically on the following:

-Thomas V. Van Flein, usdc-anch-ntc@cplawak.com
-Aaron M. Schutt, aaron@sonosky.net
-Myra M. Munson, myra@sonoskyjuneau.net
-Richard D. Monkman, dick@sonoskyjuneau.net


/s/ Paul R. Lyle
Sr. Assistant Attorney General
Attorney for the State of Alaska
Applicant for Intervention

/s/ Michael G. Hotchkin
Sr. Assistant Attorney General
Attorney for the State of Alaska
Applicant for Intervention