Thomas V. Van Flein, Esq.
CLAPP, PETERSON, VAN FLEIN
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
Tel: (907) 272-9272
Fax: (907) 272-9586
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA DENTAL SOCIETY, THE AMERICAN DENTAL ASSOCIATION, DR. T. HOWARD JONES, DR. MICHALE BOOTHE, DR. PETE HIGGINS AND DR. GEORGE SHAFFER, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| THE ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and DOES 1 through 8, | ) ) ) |
| Defendants. | )**CASE NO:3:06-CV-00039-TMB** )Filed Electronically |

## CONDITIONAL OPPOSITION TO MOTION TO INTERVENE

Plaintiffs, The Alaska Dental Society, Dr. Boothe, Dr. Higgins and Dr. Shaffer (collectively Plaintiffs), through Counsel, submits their Conditional Opposition to the State of Alaska's Motion to Intervene (Docket 56, hereafter "Motion").

## I.    DISCUSSION

### A.    Intervention Is Premature—The Court Should Determine Its Jurisdiction First

The ADS joins in the ADA Opposition relative to the prematurity of the State's Motion to Intervene.  The Court should determine whether there is federal court jurisdiction first before ruling on whether the State can intervene.

### B.    Amicus Status

If the Court determines it has jurisdiction, the ADS has no opposition to the State obtaining *amicus curiae* status.

### C.    State Must Unequivocally Waive All 11th Amendment Immunity to Obtain Intervenor Status

If the Court determines it has jurisdiction, as part of the decision on intervention, if intervention is granted, it must be established that the State cannot limit its appearance.    It is either a party, with all rights, obligations, duties and responsibilities of a party, or it is not.  There should be no middle ground for the State if it does obtain intervenor status. In general, intervenors of right "assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted." *District of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 132 (D.C.Cir.1985).

CONDITIONAL OPPOSITION TO MOTION TO INTERVENE
*The Alaska Dental Society et al. v. The Alaska Native Tribal Health Consortium, et al.,* Case No. 3:06-cv-00039-TMB
Page 2 of 14

Unless expressly limited by the court, intervenors achieve full status as parties. *See Wheeler v. American Home Products Corp.,* 582 F.2d 891, 896 (5th Cir. 1977) ("once intervention has been allowed, the original parties may not stipulate away the rights of the intervenor.").[1]

Further, intervenors are treated as full fledged parties, including the obligation to pay or seek an award of attorney's fees as a prevailing party.[2] *See King v. Illinois State Bd. of Elections,* 410 F.3d 404 (7th Cir. 2005) (attorneys fees awarded to intervenors who prevailed in voting rights act litigation); *Comm'r's Court of Medina County v. United States,* 683 F.2d 435, 440 & n. 5 (D.C.Cir.1982) ("[N]either [the party's] status as intervenors nor as defendants precludes an award of fees under the Voting Rights Act . . . Having voluntarily entered the suit, a defendant-intervenor's position can more readily be analogized to that of a plaintiff.").

---

[1] Similarly, an intervenor can independently appeal orders or take any other action a party can take. "Since an intervenor is bound by future orders, it may appeal from an appealable order unless the intervention has been specifically limited to forbid it." *Matter of First Colonial Corp.,* 544 F.2d 1291, 1298 (5th Cir.1977).

[2] And under Alaska law, the liability for attorney's fees if they are not the prevailing parties.

Intervenor status should also be expressly conditioned upon a complete waiver of Eleventh Amendment immunity.[3]  The Eleventh Amendment bars suits by private citizens against a state in federal court, irrespective of the nature of the relief requested.[4] *See Hutto v. Finney*, 437 U.S. 678, 700, 98 S.Ct. 2565 (1978).  Although in *Ex parte Young*, 209 U.S. 123, 157(1908), the Court determined that the Eleventh Amendment did not bar a federal court injunction against the enforcement of the state statute if the order was directed at an individual officer of the state,[5] here intervention is being sought by the State itself, not just an officer of the State. Such a federal court action is per se barred by the

---

[3] The Eleventh Amendment was adopted in 1798 in direct response to the Supreme Court's decision in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793), which had held that the State of Georgia could properly be called to defend itself in federal court against a citizen's suit.

[4] In *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2246 (1999), the Court stated that "as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratifications of the Constitution, and which they retain today." Further, it is "a settled doctrinal understanding, consistent with the leading advocates of the Constitution's ratification, that sovereign immunity derives not [just] from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden v. Maine*, 527 U.S. at 728.

Eleventh Amendment unless expressly and unconditionally waived by the State.  In order to make sure any order from this Court is enforceable, valid, and not subject to appeal by the State on Eleventh Amendment grounds, this Court should order the State to file an unconditional waiver of all Eleventh Amendment immunity in this suit as a pre-condition to intervenor status.

D.  **Intervenor Status Should Be Conditioned on Being A Plaintiff, Not A Defendant**

The ADS does not contest that the State has an interest in upholding the laws of this State.  Moreover, the ADS has previously urged the State to enforce its laws against the unlicensed practice of dentistry.  The State of Alaska has demonstrated the importance of protecting the public from the unlicensed practice of dentistry by criminalizing this misconduct.  *See* AS 08.36.340 ("A person who violates any provision of this chapter or regulations adopted under this chapter for which no specific penalty is provided is guilty of a class B misdemeanor").  The State Dental Practice Act, specifically AS 08.36.100, prohibits the unlicensed practice

---

[5]  The Court held that Mr. Young, as attorney general of a state, could properly be enjoined in federal court from enforcing unconstitutional state penalties against a railroad.

CONDITIONAL OPPOSITION TO MOTION TO INTERVENE
*The Alaska Dental Society et al. v. The Alaska Native Tribal Health Consortium, et al.,* Case No. 3:06-cv-00039-TMB
Page 5 of 14

of dentistry, and provides that "a person may not practice, or attempt to practice, dentistry without a license and a current certificate of registration." The practice of dentistry includes extraction of teeth, pulpotomies, restorations, and therapeutic treatments. Sections of the Dental Practice Act, AS 08.36.360(a) (b), (c) & (f), prohibit extraction of teeth and other procedures without a license—some of the very procedures the Defendant admits it is having unlicensed dentists do.  The Defendant, through its DHATs, claims the right to practice dentistry without a license.

By supervising these dental activities, the ANTHC is violating the state Dental Practice Act by "exercise[ing] control over professional dental matters or the operation of dental equipment in a facility where the acts and things described in [the Dental Practice Act] are performed or done." Further, the Alaska State Dental Board determined that DHATs and the services they provided constituted the unlawful practice of dentistry.  Normally, the State would assist the Dental Board and prosecute such malfeasors. Doing so here would require the State to intervene as a plaintiff, not a defendant. It is literally unprecedented (we could not find a

case where any state was arguing ***against*** the enforcement of its own validly enacted statutes.)

The reason there is no precedent for this unorthodox posture is that it is ***contrary to the law*** — which is why the ADS is asking this Court to condition any intervenor status on the State actually complying with the law by joining as a plaintiff seeking to uphold the law or not joining at all. State law mandates that the State Attorney General "prosecute all cases involving violation of state law . . . ." AS 44.23.020(b)(4).[6]  The courts have ruled that "the attorney general has the power ***and duty*** under AS 44.23.020(b)(3) and (b)(7) to ensure that state law violations are investigated and prosecuted." *State v. Breeze,* 873 P.2d 627, 633 (Alaska App. 1994).  Allowing intervenor status as a defendant, with

---

[6] Pursuant to AS 44.23.020(b):

The attorney general shall:

(1) defend the Constitution of the State of Alaska and the Constitution of the United States of America; * * *

(4) ***prosecute all cases involving violation of state law***, and file informations and prosecute all offenses against the revenue laws and other state laws where there is no other provision for their prosecution.

(Emphasis added).

the goal of circumventing state law, is itself unlawful and a violation of the Attorney General's mandatory duty to the people of Alaska "to ensure that state law violations are investigated and prosecuted."

Nothing in this statute allows the State to ignore state law, and those who violate state law, because of the possibility—yet untested—of implied preemption.[7] (*See* Motion to Intervene, pp. 8-9).[8] Nothing in state law allows the Attorney General to overlook criminal activity and blatant violation of state law because of an affiliation with a Native corporation. Nothing in State law allows the Attorney General to look the other way when criminal activity is afoot simply because those involved in the activity may be funded through Federal tax money.

---

[7] The Supreme Court has stated that conflict preemption and field preemption should not be viewed as "rigidly distinct" categories. Rather, the Court has noted that "field preemption may be understood as a species of conflict preemption," because a State law that is operating within a preempted field may, in some circumstances, conflict with Congress's intent to exclude State regulation. *English v. General Elec. Co.,* 496 U.S. 72, 79 & n. 5 (1990).

[8] Implied preemption is the most difficult form of preemption to be recognized, as the courts narrowly construe even express preemption, see *Cipollone v Liggett Group,* 505 US 504 (1992), but even more narrowly construe conflict or implied preemption.

CONDITIONAL OPPOSITION TO MOTION TO INTERVENE
*The Alaska Dental Society et al. v. The Alaska Native Tribal Health Consortium, et al.,* Case No. 3:06-cv-00039-TMB
Page 8 of 14

To the contrary, the State Attorney General is required by law to uphold and enforce state law.  In this case, upholding and enforcing state law means intervening as a plaintiff.  Accordingly, the State should be denied intervenor status as a defendant since doing so would place the State in the untenable position of seeking a court order invalidating state law or prohibiting the enforcement of state criminal law.

This is not a case where the Attorney General has exercised discretion in not prosecuting a crime.  Rather, the Attorney General has given up the fight to enforce state law under the belief—perhaps mistaken—that he cannot act because of implied preemption.  That is a far different scenario than recognizing a crime may have been committed, but deciding not to prosecute because of time, lack of resources or witness credibility, etc., and related discretionary factors.  But implied preemption is not a given, as assumed by the State and the Defendant. It has been stated that federal preemption is "jurispathic" – in that it kills off state regulatory authority in the areas where it occurs. *See* Candice Hoke,

---

*See Silkwood v. Kerr-McGee,* 464 U.S. 238 (1984); *American Insurance Association v. Garamendi*, 539 US 396(2003).

CONDITIONAL OPPOSITION TO MOTION TO INTERVENE
*The Alaska Dental Society et al. v. The Alaska Native Tribal Health Consortium, et al.,* Case No. 3:06-cv-00039-TMB
Page 9 of 14

*Preemption Pathologies and Civic Republican Values*, 71 B.U. L. REV. 685, 694 (1991) (using this term from Robert M. Cover, *The Supreme Court, 1982 Term: Foreword – Nomos and Narrative*, 97 HARV. L. REV. 4, 40 (1983)). Further, there is a long recognized "presumption against preemption." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947). The traditional *Rice* presumption – that federal statutes should not be read to preempt state law unless Congress has indicated a "clear and manifest" purpose to do so, has been glossed over by the State in its rush to abandon the enforcement of a state criminal statute.

The most difficult form of preemption to find is implied preemption where state law is seen as a complete obstacle to achievement of a federal purpose. *See, e.g., Hillsborough Cty. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713 (1985). Accordingly, it is not found easily or lightly. The ADS contends it should not be found here, but until it is, State law requires the State of Alaska to defend and uphold the statutes at issue,[9] not run from them.

---

[9]  Indeed, the Attorney General takes an oath to do so. *See* Alaska Constitution, Article 12, Section 5:

§ 5. Oath of Office

CONDITIONAL OPPOSITION TO MOTION TO INTERVENE
*The Alaska Dental Society et al. v. The Alaska Native Tribal Health Consortium, et al.,* Case No. 3:06-cv-00039-TMB
Page 10 of 14

The informal opinion which appears to be guiding the Attorney General's posture at this juncture now poses a conflict for the Attorney General.  State law mandates that the Attorney General prosecute violations of law; but the Attorney General is elevating an informal opinion over the mandate of the statute.  But state law compels action, not abeyance, and but for the conflict now created by an informal opinion, the Attorney General would have to act to vindicate state law. *See State v. Breeze,* 873 P.2d 627, 632 (Alaska App. 1994) ("we find that the Attorney General had a continuing obligation to ensure that **_all_** violations of law would be prosecuted as required under AS 44.23.020(b)(3)." (Emphasis added).  In *Breeze*, the court discussed the obligation of the State Attorney General to prosecute all violations of state law, and where a conflict exists, the Attorney General is then obligated to step aside and appoint

All public officers, before entering upon the duties of their offices, shall take and subscribe to the following oath or affirmation: "I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of Alaska, and that I will faithfully discharge my duties as . . . to the best of my ability." The legislature may prescribe further oaths or affirmations.

a special prosecutor who does not have any conflict hindering

a vigorous prosecution:

> contrary application of AS 44.23.020(b)(3) and (b)(7) would lead to an illogical result: if an attorney general who is disqualified from prosecuting a particular case were also unable to appoint a special prosecutor, a case that would otherwise be appropriate for investigation and possible prosecution would not be subject to any prosecution. The attorney general in such a situation would be left with the untenable choice of (1) violating the duty specifically imposed by AS 44.23.020(b)(3) by not prosecuting a violation of state law (and possibly being faulted for not pursuing prosecution because of a prior association with the accused), or (2) prosecuting the individual with the risk of being charged with an unethical conflict of interest.

> A fair reading of AS 44.23.020 does not require placing an attorney general in such an untenable dilemma: the attorney general is obligated under the statute to investigate and prosecute law violations, and if the attorney general and Department of Law are disqualified from doing so, the attorney general is nevertheless "required by law" to ensure that the investigation and prosecution are conducted by someone who is qualified, whether that person is denominated as special counsel, special prosecutor, or by some other title.

*State v. Breeze,* 873 P.2d at 632 & n. 6. If the informal

opinion now poses a conflict (not a true conflict of interest

in the classic sense, but a conflict between upholding state

law enacted by the Legislature versus upholding the opinion

of one assistant attorney general who wrote a memo) then a special prosecutor should be appointed in order to allow the State to uphold the public interest.   Upholding the public interest in this case means, if anything, intervention as a plaintiff.

Accordingly, if intervention is granted to the State, it should be conditioned upon its participation as a plaintiff in seeking to uphold and enforce state law. Any other status runs afoul of state law and the legislative directive to the Attorney General to enforce state law. As Senator Leahy recently observed, relative to the U.S. Attorney General:

> Ultimately, ***the Attorney General's duty is to uphold the Constitution and the rule of law — not labor to circumvent it.*** Both the President and the nation are best served by an Attorney General who gives sound legal advice and takes responsible action, without regard to political considerations — not develop legalistic loopholes to serve the ends of a particular President or Administration.

(Comments of Senator Leahy accessible at http://leahy.senate.gov/press/200502/020305b.html) (emphasis added). For these reasons the ADS requests that if intervenor status is granted to the State, then it should be in accord with the State's statutory obligation to uphold and defend

1  state law, which means it should be granted intervenor status
2  as a plaintiff if at all.

## II.  CONCLUSION

3
4     For the foregoing reasons, the Court needs to determine
5  its jurisdiction first.   If jurisdiction is assumed, then
6  intervention may be granted to the state condition upon (1)
7  its waiver of all Eleventh Amendment immunities and (2) its
8  participation as a plaintiff seeking to uphold and enforce
9  state law.
10     DATED at Anchorage, Alaska, this 1st day of June,
11   2006.

12

13                              s/   Thomas V. Van Flein
14                              CLAPP, PETERSON, VAN FLEIN
                                TIEMESSEN & THORSNESS, LLC
15                              Attorneys for Plaintiffs
                                711 H Street, Suite 620
16                              Anchorage, Alaska 99501-3454
                                Tel: (907) 272-9272
17                              Fax: (907) 272-9586
                                (907) 272-9272
18                              usdc-anch-ntc@cplawak.com
                                Attorneys for Plaintiffs
19

20
                      Certificate of Service
21  I hereby certify that on June 1, 2006 a copy of the foregoing
    document was served electronically on Richard D. Monkman,
22  Myra M. Munson, Douglas Serdahely, and Aaron M. Schutt.

23
                           s/ Betty Tutt
24

25
    CONDITIONAL OPPOSITION TO MOTION TO INTERVENE
26  *The Alaska Dental Society et al. v. The Alaska Native Tribal Health
    Consortium, et al.,* Case No. 3:06-cv-00039-TMB
    Page 14 of 14